ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rjung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California  94103
Telephone:   (415) 543-1305
Facsimile:    (415) 543-7861

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN,**
  **A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California  95630
Telephone:   (916) 447-0100
Facsimile:    (916) 933-5533

Attorneys for Plaintiff
JOYCE ROBERTS

*KELLER GROVER LLP*
*1965 Market Street, San Francisco, CA  94103*
*Tel. 415.543.1305 | Fax 415.543.7861*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE ROBERTS, individually and on behalf of classes of similarly situated individuals,<br><br>                    Plaintiff,<br><br><br>          v.<br><br><br>WYNDHAM HOTELS AND RESORTS, LLC; and DOES 1 through 10, inclusive,<br><br><br>                    Defendants. | Case No.:  5:12-cv-05083-PSG<br><br>Hon. Magistrate Judge Paul S. Grewal<br><br><br>CLASS ACTION<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF RANDALL A. SNYDER**<br><br>Date:           October 6, 2015<br>Time:          10:00 a.m.<br>Courtroom:   5, 4th Floor<br><br>Complaint Filed:   July 17, 2012<br>FAC Filed:           February 2, 2015 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  RELEVANT BACKGROUND ........................................................................... 3

   A.   Plaintiff proposes two objectively ascertainable classes........................ 3

   B.   Plaintiff's proposed classes are administratively manageable. .............. 5

   C.   Mr. Snyder was asked to opine on two discrete
        topics within his expertise. ..................................................................... 7

III. LEGAL STANDARD FOR EXPERT OPINIONS
     AT CLASS CERTIFICATION ........................................................................... 7

IV.  ARGUMENT ..................................................................................................... 9

   A.   Mr. Snyder's report and testimony support the administrative
        feasibility and manageability of identifying and confirming
        absent class members. ............................................................................. 9

   B.   Mr. Snyder's opinions rest on a reliable foundation. ........................... 11

   C.   Mr. Snyder's opinions are based on sufficient facts and data............. 14

   D.   Mr. Snyder's opinions are based on reliable methods. ........................ 18

   E.   Mr. Snyder's opinions apply to both proposed classes. ....................... 22

   F.   Mr. Snyder did not "delete" any opinions from his report................... 22

   G.   Mr. Snyder's opinions are based on factual analysis,
        not legal conclusions............................................................................. 24

   H.   A *Daubert* hearing is unnecessary. ..................................................... 25

V.   CONCLUSION ................................................................................................ 25

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**KELLER GROVER LLP**
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

## TABLE OF AUTHORITIES

Page

**Federal Cases**

*Abaxis Inc. v. Cepheid*
    2012 U.S. Dist. LEXIS 100530 (N.D. Cal. Jul. 19, 2012) ................................................. 13

*Ades v. Omni Hotels Mgmt. Corp.*
    2014 U.S. Dist. LEXIS 129689 (C.D. Cal. Sept. 8, 2014) .................................................. 3

*Agne v. Papa John's Int'l*
    286 F.R.D. 559 (W.D. Wash. 2012) ........................................................... 10, 15

*Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*
    738 F.3d 960 (9th Cir. 2013)................................................................ 14

*Allen v. Hyland's Inc.*
    300 F.R.D. 643 (C.D. Cal. Aug. 1, 2014) ........................................................ 10

*Birchmeier v. Caribbean Cruise Line, Inc.*
    302 F.R.D. 240 (N.D. Ill. 2014)........................................................... passim

*Blough v. Shea Homes, Inc.*
    2014 U.S. Dist. LEXIS 100600 (W.D. Wash. Jul. 23, 2014) .............................................. 8

*CE Design v. Beaty Const., Inc.*
    2009 U.S. Dist. LEXIS 5842 (N.D. Ill. Jan. 26, 2009) .................................................. 15

*Daubert v. Merrell Dow Pharms.*
    509 U.S. 579 (1993)................................................................... passim

*Dukes v. Wal-Mart Stores, Inc.*
    603 F.3d 571 (9th Cir. 2010)............................................................... 25

*Ellis v. Costco Wholesale Corp.* (*Ellis I*)
    240 F.R.D. 627 (N.D. Cal. 2007)....................................................... 7, 8, 14, 25

*Ellis v. Costco Wholesale Corp.* (*Ellis II*)
    657 F.3d 970 (9th Cir. 2011).......................................................... 7, 8, 12, 25

*Enyart v. Nat'l Conference of Bar Examiners, Inc.*
    823 F.Supp.2d 995 (N.D. Cal. 2011) ..................................................... 8, 12, 13

*Feuerstein v. Home Depot, U.S.A., Inc.*
    2014 U.S. Dist. LEXIS 80024 (D. Ariz. Jun. 12, 2014) ................................................. 2

*Galvan v. KDI Distrib.*
    2011 U.S. Dist. LEXIS 127602 (C.D. Cal. Oct. 25, 2011) ................................................ 5

*Gragg v. Orange Cab Co.*
    2014 U.S. Dist. LEXIS 26313.............................................................. 4

*Guadiana v. State Farm Fire and Cas. Co.*
2010 U.S. Dist. LEXIS 129588 (D. Ariz. Dec. 7, 2010) ................................ 2, 21

*Hangarter v. Provident Life & Accident Ins. Co.*
373 F.3d 998 (9th Cir. 2004).................................................................... passim

*Hovenkotter v. Safeco Ins. Co.*
2010 U.S. Dist. LEXIS 112645 (W.D. Wash. Oct. 11, 2010) .................................... 11, 25

*In re Static Random Access Memory (SRAM) Antitrust Litig.*
264 F.R.D. 603 (N.D. Cal. 2009) ................................................................... 4

*In re Tableware Antitrust Litig.*
241 F.R.D. 644 (N.D. Cal. 2007) .................................................................. 17

*In re Zurn Pex Plumbing Products Liab. Litig.*
644 F.3d 604 (8th Cir. 2011)................................................................... 8, 14

*Keegan v. Am. Honda Motor Co., Inc.*
284 F.R.D. 504 (C.D. Cal. 2012) ................................................................... 5

*Kumho Tire Co. v. Carmichael*
526 U.S. 137 (1999)............................................................................... 7

*Leite v. Crane Co.*
868 F.Supp.2d 1023 (D. Haw. 2012) .............................................................. 12

*Loren Stone v. Howard Johnson International Inc., et al.*
USDC Central District of California, Case No. 2:12-cv-01684-PSG ............................... 3

*Manno v. Healthcare Revenue Recovery Group, LLC*
289 F.R.D. 674 (S.D. Fla. 2013) ................................................................ 10

*McCabe v. Six Continents Hotels, Inc.*
2015 U.S. Dist. LEXIS 85084 (N.D. Cal. Jun. 30, 2015) ................................... passim

*McCrary v. The Elations Co.*
2014 U.S. Dist. LEXIS 8443 (C.D. Cal. Jan. 13, 2014) ........................................... 4

*McDonald v. Bass Pro Outdoor World, LLC*
2014 U.S. Dist. LEXIS 109080 (S.D. Cal. Aug. 5, 2014) ....................................... 5, 6

*Mullins v. Direct Digital, LLC*
2015 U.S. App. LEXIS 13071 (7th Cir. Jul. 28, 2015)......................................... 4, 10

*Oracle America Inc. v. Google Inc.*
2011 U.S. Dist. LEXIS 136172 (N.D. Cal. Nov. 28, 2011)........................................ 16

*Oracle Corp. v. SAP AG*
765 F.3d 1081 (9th Cir. 2014)................................................................... 16

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

*Parkinson v. Hyundai Motor America*
    258 F.R.D. 580 (C.D. Cal. 2008) ........................................................................................ 3

*PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Sing.) Pte. Ltd.*
    2011 U.S. Dist. LEXIS 133502 (N.D. Cal. Oct. 27, 2011).......................................... 8, 18

*Primiano v. Cook*
    598 F.3d 558 (9th Cir. 2010)................................................................................... passim

*Rai v. Santa Clara Valley Transp. Auth.*
    2015 U.S. Dist. LEXIS 22175 (N.D. Cal. Feb. 24, 2015)............................................... 8

*Ralston v. Mortg. Investors Group, Inc.*
    2011 U.S. Dist. LEXIS 138149 (N.D. Cal. Nov. 30, 2011).................................... 2, 14, 21

*Samson Tug and Barge Co., Inc. v. United States*
    2008 U.S. Dist. LEXIS 62750 (D. Ala. Aug. 6, 2008) .................................................. 16

*Siring v. Oregon State Bd. of Higher Educ. ex rel. Eastern Oregon Univ.*
    927 F.Supp.2d 1069 (D. Or. 2013) ......................................................................... passim

*Smith v. Microsoft Corp.*
    2013 U.S. Dist. LEXIS 173204 (S.D. Cal. Dec. 10, 2013)........................................ passim

*Sterk v. Path, Inc.*
    46 F.Supp.3d 813 (N.D. Ill. 2014) ............................................................................... 25

*Tait v. BSH Home Appliances Corp.*
    289 F.R.D. 466 (C.D. Cal. 2012) ............................................................................ 8, 25

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*
    209 F.R.D. 159 (C.D. Cal. 2002) .................................................................................. 19

*Williams v. Bridgeport Music, Inc.*
    2014 U.S. Dist. LEXIS 182240 (C.D. Cal. Oct. 30, 2014) ............................................ 24


**Rules**

Federal Rule of Evidence ("Rule 702")
    702......................................................................................................................... 7
    702(b) ................................................................................................................... 14

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S OPPOSITION TO MOTION
TO EXCLUDE RANDALL SNYDER
    iv
    CASE NO. 5:12-CV-05083-PSG

1

## I.    INTRODUCTION

Randall A. Snyder, a prominent expert in wireless and wireline telecommunications technology, was asked by Plaintiff's counsel to opine on two narrow topics relevant to the manageability of identifying absent class members and confirming class membership.  Based on his relevant knowledge and experience, Mr. Snyder opined that: (i) a list of telephone numbers can be "scrubbed" to determine which numbers are cellular and which are landline; and (ii) telephone subscribers can be reliably identified using only their telephone numbers.[1]  Each of these opinions is relevant and useful in determining the administrative feasibility of identifying those absent class members who cannot otherwise be identified from Defendant's records.  And each of the opinions is relevant to determining the feasibility of further confirming of class membership as an adjunct to class member affidavits and supporting documents.

Defendant spends the bulk of its motion arguing that Mr. Snyder's opinions are unreliable because they fail to touch upon ***every element*** of the class definitions, such as class member location, landline handset type (*i.e.* corded versus cordless) and caller identity.  But Mr. Snyder was ***not asked*** to opine on those matters or on the class definitions generally, and instead was asked to limit his opinion to two focused issues.[2]  Courts have denied similar motions to exclude Mr. Snyder's expert testimony.[3]

Mr. Snyder has established his extensive qualifications.  He has offered a reliable foundation for his proposed methods, grounded in his experience and observations.  He has more than 30 years of experience in telecommunications network and system architecture, engineering,

---

[1] Declaration of Randall A. Snyder In Support of Plaintiff's Motion for Class Certification (Dkt. 73-3) ("Snyder Report") ¶¶8-9, 17-18, 22-26.  For the Court's convenience, a copy of the Snyder Report is filed herewith as Exhibit A to the Declaration of Eric A. Grover in Support of Plaintiff's (i) Opposition to Motion to Exclude Expert Report and Testimony of Randall A. Snyder and (ii) Opposition to Motion to Exclude Expert Report and Testimony of Anya Verkhovskaya ("Grover Decl.").

[2] Grover Decl., Ex. C (Snyder Depo) at 69:12-23 ("Even absent the class definitions and all the data and all the documents I reviewed, my opinions are still the same. Given a list of telephone numbers, can you accurately obtain this information? And my opinion is yes.").

[3] *Smith v. Microsoft Corp.*, 2013 U.S. Dist. LEXIS 173204, at *9-11, 17 (S.D. Cal. Dec. 10, 2013) (***denying*** motion to exclude Mr. Snyder's expert testimony).

**KELLER GROVER LLP**
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

design and technology, has been an expert in more than 95 cases regarding cellular telecommunications technology, and has first-hand professional experience with the methods and processes underlying his opinions.[4]  Thus, Mr. Snyder has far more than "the minimal foundation of knowledge, skill, and expertise required in order to give 'expert' testimony" on these issues.[5]

Mr. Snyder has based his opinions on reasonable assumptions that are supported by his specialized knowledge and experience – for example, his assumption that cellular carriers maintain subscriber records.[6]  Doing so is a permissible basis for expert testimony under Rule 702.[7]  Defendant's assertions to the contrary are simply incorrect.  At most, Defendant's objections to Mr. Snyder's purported assumptions, if they had any validity at all, would "go to the *weight* of the evidence," not its admissibility.[8]

Moreover, Plaintiff has established how Mr. Snyder's proposed methods for "scrubbing" telephone number lists, such as those that can be provided by Defendant, and identifying subscribers by their telephone numbers, will aid the Court in determining class manageability and confirming class membership.[9]  Mr. Snyder's proposed methods "present[] a structure or framework to analyze" Defendant's lists of putative class member telephone numbers once produced.[10]  Those lists of telephone numbers are among the most important facts of this case.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

---

[4] Grover Decl., Ex. A (Snyder Report) ¶¶4-7, 16, 17, 23, 24.

[5] *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004).

[6] *Feuerstein v. Home Depot, U.S.A., Inc.*, 2014 U.S. Dist. LEXIS 80024, at *5-6 (D. Ariz. Jun. 12, 2014) ("The reliability of such non-scientific testimony depends . . . 'on the *knowledge and experience* of the expert.'") (emphasis in original).

[7] *Guadiana v. State Farm Fire and Cas. Co.*, 2010 U.S. Dist. LEXIS 129588, at *18-19 (D. Ariz. Dec. 7, 2010); *Ralston*, 2011 U.S. Dist. LEXIS 138149, at *16 ("Courts frequently accept experience-based, expert opinion testimony on relevant aspects of industry practice . . .").

[8] *Ralston v. Mortg. Investors Group, Inc.*, 2011 U.S. Dist. LEXIS 138149, at *36 (N.D. Cal. Nov. 30, 2011) (Grewal, J.). All emphasis added and internal citations omitted throughout unless otherwise noted.

[9] *See* Plaintiff's Notice of Motion and Motion for Class Certification (Dkt. 72) ("Pltff's Mot.") at 16-17; Grover Decl., Ex. C (Snyder Depo) at 83:20-84:8 (setting forth Mr. Snyder's two relevant opinions).

[10] *Ralston*, 2011 U.S. Dist. LEXIS 138149, at *37.

---

1   Viewed in that light, Defendant's argument that Mr. Snyder fails to apply the facts of this case to

2   his proposed methods makes no sense.[11]

3      Mr. Snyder's opinions are relevant, helpful and reliably based "in the knowledge and

4   experience of the relevant discipline."[12]   Defendant's motion to exclude his expert report and

5   testimony should be denied.

6   **II.     RELEVANT BACKGROUND**

7      **A.     Plaintiff proposes two objectively ascertainable classes.**

8      In her motion for class certification, Plaintiff asks the Court to certify two well-defined

9   classes of individuals whose privacy rights were uniformly violated by Defendant:

10   Cellular Class: All persons who, at any time during the period from March 1, 2011
     through March 23, 2012, inclusive, called one or more of Defendant's toll-free
11   telephone numbers using a cellular telephone with a California area code while
     located within the State of California and whose calls were transferred to call
12   centers in the Philippines and/or India operated by Aegis USA, Inc. ("Aegis") and
     recorded without warning or disclosure at the call outset, except for any calls that
13   were specifically associated with the Howard Johnson brand and are covered by
     the class settlement presented to the Court in *Loren Stone v. Howard Johnson*
14   *International Inc., et al.*, USDC Central District of California, Case No. 2:12-cv-
     01684-PSG; and
15

16   Cordless Class: All persons who, at any time during the period from March 1,
     2011 through March 23, 2012, inclusive, called one or more of Defendant's toll-
17   free telephone numbers using a cordless telephone with a California area code
     while located within the State of California and whose calls were transferred to
18   call centers in the Philippines and/or India operated by Aegis USA, Inc. ("Aegis")
     and recorded without warning or disclosure at the call outset, except for any calls
19   that were specifically associated with the Howard Johnson brand and are covered
     by the class settlement presented to the Court in *Loren Stone v. Howard Johnson*
20   *International Inc., et al.*, USDC Central District of California, Case No. 2:12-cv-
     01684-PSG.
21

22      These class definitions "set forth objective characteristics sufficient to enable prospective

23   class members to ***identify themselves***."[13] The definitions are not vague. They identify a particular

24

25   [11] Def's Mot. at 14-16.

26   [12] *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).

27   [13] *Ades v. Omni Hotels Mgmt. Corp.*, 2014 U.S. Dist. LEXIS 129689, at *21 (C.D. Cal. Sept. 8,
     2014) (finding similar call recording class ascertainable); *see also Parkinson v. Hyundai Motor*
28   *America*, 258 F.R.D. 580, 594 (C.D. Cal. 2008) (class ascertainable where objective criteria allow
     prospective class members "to determine whether they are class members with a potential right to
     *(Cont'd)*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

group of individuals harmed in a particular way during a specific time period in a single state. The class definitions are not based on subjective criteria. Rather, they focus on the act of calling and Defendant's conduct in secretly recording their calls. The definitions also do not create a fail-safe class. If Defendant prevails, *res judicata* will bar class members from re-litigating their claims.[14]

Between Defendant's records and those of its agent, Aegis (collectively, "Defendant's records"), Defendant can identify by date, time and telephone number every call from a California area code to one of its toll-free number(s) during the proposed class period that was routed to its Manila or India call centers and recorded without warning or notice.[15] Defendant's records alone thus identify the entire universe of qualifying calls and potential class members.[16] Defendant now claims that call recording records do not exist for its Manila call center for the months of March and April 2011 or at all for its India call center. Plaintiff addresses her concerns about the accuracy of that claim in her class certification reply brief. But even if Defendant's new claim turns out to be true, Defendant still admits that it has records showing the date, time and telephone number of every one of the hundreds of thousands of calls from California area codes that were recorded without warning or notice by Defendant's Manila call center during the

---

recovery"); *McCrary v. The Elations Co.*, 2014 U.S. Dist. LEXIS 8443, at *24-25 (C.D. Cal. Jan. 13, 2014) ("In this Circuit, it is enough that the class definition describes 'a set of common characteristics sufficient to allow' a prospective plaintiff to '*identify himself or herself* as having a right to recover based on the description.'"); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 608 (N.D. Cal. 2009) (class ascertainable where "absent class members will easily be able to *identify themselves*"); *Mullins v. Direct Digital, LLC*, 2015 U.S. App. LEXIS 13071, at *33 (7th Cir. Jul. 28, 2015) (class member affidavits alone can support class certification).

[14] *Mullins*, 2015 U.S. App. LEXIS 13071, at *9.

[15] *See* Pltff's Mot. at 8, 14-15.

[16] *See Gragg v. Orange Cab Co.*, 2014 U.S. Dist. LEXIS 26313, at *16 (class certified where "[a] review of [the defendant's] data will enable the parties to identify the [putative class member's] telephone number . . . and possibly the name and/or address of the [putative class member]"); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 247-249 (N.D. Ill. 2014) (class "sufficiently ascertainable" where members could be identified "using a combination of phone numbers in Defendants' records, the records of third-party phone carriers and third-party database providers").

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

period from *May* 2011 through March 23, 2012 and call detail records for all calls routed to India, *where 99% of all calls were contractually required to be recorded.*[17]

Because Defendant can pinpoint the date, time and telephone number of each call, absent class members can objectively determine and certify that they used a cellular or cordless telephone and were in California when they called.[18]  Courts in call recording cases consistently have used similar approaches, requiring class members to provide their name, address, and telephone numbers used to call the defendant and verify, under oath, that they (i) spoke with the defendant's representative, (ii) using a cellular or cordless telephone, (iii) while located in California, (iv) during the class period.[19]  Thus, "class notice will further help reveal the class members," who can "identify themselves in order to participate."[20]  Because it is administratively feasible for the Court to determine whether a particular individual is a member using objective criteria, the classes are ascertainable even absent Mr. Snyder's expert opinion.[21]

**B.     Plaintiff's proposed classes are administratively manageable.**

In addition to being ascertainable, Plaintiff's proposed classes are administratively manageable and identifiable, and sufficient notice can be provided to absent class members in a simple, straightforward manner.[22]  Nearly ***all*** potential class members can be identified through

---

[17]  Grover Decl., Ex. E (Tsao Depo II) at 212:18-213:8 (Aegis can produce list of ***all calls*** received by its Manila and India call centers) and 217:13-219:4 (Aegis can produce list of ***all calls recorded*** by its Manila call center from March 2011 through March 2012).

[18]  *See* Pltff's Mot. at 8, 14-15.

[19]   *See* Grover Decl., Ex. F (*McDonald v. Bass Pro Outdoor World LLC*, Notice & Claim Form) at 7; Ex. G (*Marenco v. Visa, Inc.,* Keough Decl.) at 14; Ex. H (*Nader v. Capital Once Bank (USA), N.A.,* Claims Form); Ex. I (*Batmanghelich v. Sirius XM Radio Inc.*, Claims Form); Ex. J (*Nguyen v. Equilon Enterprises LLC*, Claims Form); Ex. K (*Knell v. FIA Card Serv's, N.A.*, Claims Form); Ex. L (*McCabe v. Six Continents Hotels, Inc.*, Hotel Recording Case Settlement Claim Form and Notice).

[20] *Galvan v. KDI Distrib.*, 2011 U.S. Dist. LEXIS 127602, at *12-13 (C.D. Cal. Oct. 25, 2011).

[21] *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 521 (C.D. Cal. 2012).

[22] *See* Pltff's Mot. at 19-20.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

Defendant's records by telephone number.[23]   Defendant also maintains multiple databases containing customer identifying information, such as name, address, and e-mail address, which can be searched using class members' telephone numbers to further identify individual class members.[24]   For the many hundreds of thousands of potential class members identifiable in Defendant's records by address and/or e-mail address, Plaintiff can provide direct notice via U.S. mail or e-mail.  For any others, for whom Defendant has only a telephone number, Plaintiff can conduct an outbound call campaign.[25]   Additional notice can be provided by publication in print and on the Internet, a practicable method commonly used in call recording cases.[26]

Each of these methods can be undertaken successfully without relying on the methods described in Mr. Snyder's expert opinions.  But the notice plan could be improved by using one of the commercial databases proposed by Mr. Snyder to identify the most recent name and mailing address associated with each number.  Defendant offers no legitimate objection to Mr. Snyder's report or testimony regarding information available through the commercial databases.

---

[23] Grover Decl., Ex. E (Tsao Depo II) at 212:18-213:8 (Aegis can produce list of **all calls** received by its Manila and India call centers) and 217:13-219:4 (Aegis can produce list of **all calls recorded** by its Manila call center from March 2011 through March 2012).

[24] Pltff's Mot. at 9-10; Grover Decl., Ex. M (Farley Depo) at 10:14-11:19, 11:24-13:4, 16:12-20:4 (customer name, telephone number, address and e-mail address captured and stored in the Enterprise Data Warehouse and searchable by telephone number).

[25] *See* Pltff's Mot. at 20. Because nearly **all** potential class members are identifiable through Defendant's records by telephone number, an outbound call campaign along with a settlement website and toll-free information hotline would be especially practicable here. *See* Grover Decl., Ex. N (*Nguyen v. Equilon Enterprises LLC,* Cooper Decl.) at ¶5 (providing notice via outbound call campaign in call recording case).

[26] *See* Pltff's Mot. at 20; *Birchmeier*, 302 F.R.D. at 255 (publication notice sufficient for class members not identified through defendants' telephone records); *McDonald v. Bass Pro Outdoor World, LLC*, 2014 U.S. Dist. LEXIS 109080, at *26-27 (S.D. Cal. Aug. 5, 2014) (combination of direct mail and publication notice sufficient in call recording case); *McCabe v. Six Continents Hotels, Inc.*, 2015 U.S. Dist. LEXIS 85084, at *11-12, 33-35 (N.D. Cal. Jun. 30, 2015) (combination of direct mail, e-mail, settlement website, online banner program, newspaper publication and press release notice sufficient in call recording case) (attached to Grover Decl. as Exhibit O).  These types of notice, which can be designed to reach 70% of California adults, will help reach putative class members for whom Defendant claims it does not have records. *Id.* at *32-33; Grover Decl., Ex. P (*McCabe v. Six Continents Hotels, Inc.*, Finegan Decl.).

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

**C.      Mr. Snyder was asked to opine on two discrete topics within his expertise.**

Plaintiff asked Mr. Snyder to opine on two narrow topics to provide further support for the administrative feasibility and manageability of identifying absent class members and confirming class membership: (i) whether it is possible to determine which numbers on a list of telephone numbers are cellular and which are landline numbers; and (ii) whether telephone subscribers can be identified reliably using their telephone numbers.[27]  Mr. Snyder's opinions are based on his decades of experience in telecommunications network and system architecture, engineering, design and technology, and wireline and wireless telecommunications networking technology, as well as his personal experience with the specific methods proposed in his report.[28]  Mr. Snyder's report satisfies the standards for admissibility of expert opinions at class certification.

**III.      LEGAL STANDARD FOR EXPERT OPINIONS AT CLASS CERTIFICATION**

Federal Rule of Evidence 702 ("Rule 702") provides that opinions relating to "scientific, technical, or other specialized knowledge" may be admitted if they will "assist the trier of fact to understand the evidence or to determine a fact in issue."[29]  Expert testimony is admissible if (i) "the testimony is based on sufficient facts or data," (ii) "the testimony is the product of reliable principles and methods," and (iii) "the expert has reliably applied the principles and methods to the facts of the case."[30]  To this end, the trial court must "determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.'"[31]

Plaintiff has no doubt that Mr. Snyder will satisfy the *Daubert* analysis at such time as that is required.  But at class certification, a full *Daubert* analysis "is not required."[32]  In the Ninth

---

[27] Grover Decl., Ex. A (Snyder Report) ¶¶3, 8, 9, 25, 26.

[28] Grover Decl., Ex. A (Snyder Report) ¶¶4, 5-6, 16, 17, 23, 24; Ex. C (Snyder Depo) at 20:2-21:2, 26:13-27:11, 29:12-16, 36:7-11, 41:9-11, 44:13-21.

[29] Fed. R. Evid. 702.

[30] *Id.*

[31] *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 149 (1999) (citing *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579, 592 (1993)).

[32] *Ellis v. Costco Wholesale Corp.*, 240 F.R.D. 627, 635 (N.D. Cal. 2007) (*Ellis I*), *affirmed* on this point by *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (*Ellis II*).

Circuit, courts apply a less-stringent "tailored *Daubert*" approach to expert opinions at class certification.[33]  "[T]he main purpose of *Daubert* exclusion is to protect juries from being swayed by dubious scientific testimony. That interest is not implicated at the class certification stage where the judge is the decision maker."[34]  Thus, "[a]t this early stage, robust gatekeeping of expert evidence ***is not required***; rather, *the court should ask only if expert evidence is 'useful in evaluating whether class certification requirements have been met.*'"[35]  In other words, a district court's "tailored *Daubert* analysis" should analyze "the reliability of the expert testimony in light of the criteria for class certification and the current state of the evidence."[36]  While the "requirements of relevance and reliability set forth in *Daubert* [may] . . . serve as guideposts," the court retains discretion in determining how to test reliability as well as whether the proffered expert testimony is relevant and reliable.[37]

The key inquiry is whether the witness has sufficient skill or knowledge related to his field that his testimony will be of some assistance to the "untrained layman."[38]  Further, "an expert's knowledge may be derived from experience alone, and there is no per se requirement that a[n] . . . expert have any particular training or license in order to testify."[39]  The threshold for qualification is low:  "a minimal foundation of knowledge, skill, and experience suffices."[40]

---

[33] *Rai v. Santa Clara Valley Transp. Auth.,* 2015 U.S. Dist. LEXIS 22175, at *49 (N.D. Cal. Feb. 24, 2015) (Grewal, J.); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 490-495 (C.D. Cal. 2012); *Blough v. Shea Homes, Inc.*, 2014 U.S. Dist. LEXIS 100600, at *10-11 (W.D. Wash. Jul. 23, 2014).

[34] *In re Zurn Pex Plumbing Products Liab. Litig.,* 644 F.3d 604, 613 (8th Cir. 2011).

[35] *Ellis I,* 240 F.R.D. at 635, *affirmed* on this point by *Ellis II*, 657 F.3d at 982.

[36] *Zurn,* 644 F.3d at 614.

[37] *Tait,* 289 F.R.D. at 495; *Ellis I,* 240 F.R.D. at 635-36.

[38] *Enyart v. Nat'l Conference of Bar Examiners, Inc.,* 823 F.Supp.2d 995, 1001 (N.D. Cal. 2011); *Primiano,* 598 F.3d at 567 ("The 'will assist' requirement, under *Daubert*, 'goes primarily to relevance.'").

[39] *Enyart*, 823 F.Supp.2d at 1001.

[40] *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Sing.) Pte. Ltd.,* 2011 U.S. Dist. LEXIS 133502, at *7 (N.D. Cal. Oct. 27, 2011).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

Mr. Snyder's degree in mathematics, his 18 telecommunications-related patents and his numerous awards and other professional achievements and recognition make it clear that he would satisfy a full *Daubert* analysis.[41]  Under the more relaxed standard that actually applies in the class certification context, there is no question that he is qualified.

## IV.   ARGUMENT

### A.   Mr. Snyder's report and testimony support the administrative feasibility and manageability of identifying and confirming absent class members.

Mr. Snyder was asked to opine on two discrete topics relating to discerning cellular and landline telephone numbers and identifying telephone subscribers.[42]  His opinions on these topics will assist the Court to determine that it is administratively manageable to identify absent class members for notice purposes and to confirm class membership.

*First*, Mr. Snyder opines that it is a common and straight-forward process to determine, from a list of dates and telephone numbers, which numbers were cellular numbers and which were landline numbers on any given date.[43]  He describes the ability of several commercially available services to "scrub" telephone number lists such as Defendant's here to segregate cellular and non-cellular numbers by date.[44]  Mr. Snyder has personal and technical experience with many of these companies, including Neustar, A.B. Data, CompliancePoint and Contact Center Compliance, and has first-hand knowledge of and experience with their scrubbing processes.[45] Using Mr. Snyder's proposed methodology, the parties can scrub Defendant's list of potential class member telephone calls to determine, on any given date, which calls fall within the cellular subclass.   That information will assist in the notice process and help to confirm class membership.   It also can be used to cross-check information submitted in class member

---

[41] Grover Decl., Ex. A (Snyder Report) ¶¶5-7, Ex. A.

[42] *Id.* ¶¶3, 8-9, 25-26.

[43] *Id.* ¶¶8, 10-18.

[44] *Id.* ¶18; Grover Decl., Ex. C (Snyder Depo) at 64:25-65:9, 83:20-84:8.

[45] Grover Decl., Ex. A (Snyder Report) ¶¶16-17; Grover Decl., Ex. C (Snyder Depo) at 20:17-24, 35:13-36:8, 42:16-24, 45:13-20.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

affidavits.[46]   Notably, Defendant does not claim that Mr. Snyder's scrubbing methodology is unreliable or unmanageable.  Courts have relied on similar cellular scrubbing to support class certification.[47]

*Second*, while unnecessary for *ascertainability*, which does not require that class members be identified pre-certification,[48] Mr. Snyder opines that class members can be reliably identified solely by their telephone numbers in a manageable and highly effective manner.  As Mr. Snyder explains, third-party information service companies collect and maintain comprehensive databases that can identify telephone subscribers based solely on their telephone numbers, and those companies maintain that data for several years.[49]  Such companies include Neustar, A.B. Data, Ltd., Compliance Point and Contact Center Compliance – all well-known organizations that maintain extensive demographic databases containing telephone subscription information and subscriber identifying data.[50] Those companies update their databases daily to ensure that both past and present telephone subscriber data is reliable and preserved.[51]  Mr. Snyder has personal and technical experience using this process in numerous class actions to identify putative class members using only their telephone numbers.[52]

---

[46] *See, Birchmeier*, 302 F.R.D. at 249-250 (class sufficiently ascertainable and identifiable based on combination of documentary evidence and sworn statements from class members).

[47] *See, e.g., Manno v. Healthcare Revenue Recovery Group, LLC,* 289 F.R.D. 674, 684 n.3 (S.D. Fla. 2013).

[48]   *Agne v. Papa John's Int'l,* 286 F.R.D. 559, 566 (W.D. Wash. 2012) (concerns regarding "*identifying* class members and providing them with notice . . . are more properly addressed ***after*** class certification"); *Smith,* 2013 U.S. Dist. LEXIS 173204, at *9-10 (where, as here, "the class has already been ascertained by reference to objective criteria, . . . the contact information of the persons within that class is only a relevant consideration ***after*** a class has been certified"); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 658 (C.D. Cal. Aug. 1, 2014) ("The ***identity*** of class members need not be known at the time of class certification."); *Mullins*, 2015 U.S. App. LEXIS 13071, at *19 ("***Due process simply does not require*** the ability to identify all members of the class at the certification stage.").

[49] Grover Decl., Ex. A (Snyder Report) ¶24; Ex. C (Snyder Depo) at 35:13-37:11.

[50] *Id.*

[51] Grover Decl., Ex. A (Snyder Report) ¶24.

[52] *Id.*; Grover Decl., Ex. C (Snyder Depo) at 44:13-21, 45:13-20, 57:16-22.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

1    Mr. Snyder further explains that cellular carriers maintain subscriber information,

2    including name, address and subscription period, which can be obtained using only the

3    subscriber's cellular number as the unique identifying piece of data.[53]   While such information

4    may not be available for all subscribers, the primary carriers maintain this data for a minimum of

5    three to five years, and often longer.[54]   Mr. Snyder has considerable professional experience

6    analyzing such data obtained from cellular carriers.[55]   Courts granting class certification have

7    relied on similar proposed methods for using information obtained from cellular carriers to

8    identify absent class members.[56]

9    These two proposed identification methods – engaging a specialized third-party

10   information service and obtaining information from cellular carriers – each can be used to further

11   identify individual class members not otherwise identified based solely on their telephone

12   numbers reflected in Defendant's records. Thus, Mr. Snyder's opinion gives credence to

13   Plaintiff's position that class members can be identified and notified using only information that

14   can be culled from Defendant's databases and supports findings of both manageability and

15   ascertainability.[57]

16   **B.    Mr. Snyder's opinions rest on a reliable foundation.**

17   Expert opinion testimony "is reliable if the knowledge underlying it has a reliable basis in

18   the knowledge and experience of the relevant discipline."[58]   Trial courts have broad latitude, "not

19   _____

20   [53] Grover Decl., Ex. A (Snyder Report) ¶23.

21   [54] *Id.* at Ex. B; Grover Decl., Ex. C (Snyder Depo) at 29:6-16, 75:5-21.

22   [55] Grover Decl., Ex. A (Snyder Report) ¶23; Ex. C (Snyder Depo) at 26:13-27:11, 39:6-16, 70:1-19, 75:5-21.

23   [56] *See, e.g., Birchmeier*, 302 F.R.D. at 254 (class certification granted where, despite varying

24   wireless subscriber retention periods, the plaintiff made a similar showing that "it [wa]s ***possible*** to obtain historical subscriber information from each carrier").

25   [57] *Hovenkotter v. Safeco Ins. Co.*, 2010 U.S. Dist. LEXIS 112645, at *16 (W.D. Wash. Oct. 11,

26   2010) (expert opinion admissible at class certification where it "gives credence to [plaintiff's] position that damages can be apportioned on a class-wide basis using only information that can be

27   culled from [defendant's] database"); *Birchmeier*, 302 F.R.D. at 245-250.

28   [58] *Primiano*, 598 F.3d at 565.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

only in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability."[59]  Contrary to Defendant's suggestion, "[r]eliable expert testimony need only be relevant, and need not establish ***every element*** that the plaintiff must prove, in order to be admissible."[60]

Mr. Snyder's report sets forth his knowledge and extensive experience supporting his opinions.  Mr. Snyder has developed his expertise through more than 30 years of experience in telecommunications network and system architecture, engineering, design and technology.[61]  He is an expert in wireless and wireline telecommunications networking technology, has been an expert in more than 95 cases regarding cellular telecommunications technology for plaintiffs and defendants, and has extensive first-hand experience with the methods and processes described in his report.[62]  Mr. Snyder described the principles and methods supporting his opinions as required by Rule 702 by explaining, in detail, the processes for (i) scrubbing telephone number lists and (ii) identifying telephone subscribers by telephone number.[63]  "Clearly, this lays at least the *minimal foundation* of knowledge, skill and expertise required in order to give 'expert' testimony" on these issues.[64]  Mr. Snyder's extensive experience with these methods and processes provides sufficient basis and foundation for his opinions and "take[s] his testimony outside the realm of unsupported speculation."[65]  Moreover, these methods for determining whether a telephone number is cellular or landline (including cordless) and identifying telephone

---

[59] *Ellis II*, 657 F.3d at 982.

[60] *Primiano*, 598 F.3d at 565; *Siring v. Oregon State Bd. of Higher Educ. ex rel. Eastern Oregon Univ.*, 927 F.Supp.2d 1069, 1078 (D. Or. 2013) ("Expert testimony need not address ***every element*** of a claim, but need only help the [fact finder] understand the evidence or 'a fact in issue.'").  All emphasis is added unless otherwise noted.

[61] Grover Decl., Ex. A (Snyder Report) ¶¶5-7.

[62] *Id.* ¶¶5-7, 16, 17, 23, 24; Ex. C (Snyder Depo) at 26:13-19, 29:12-16, 36:10-37:11, 41:9-11, 44:13-21, 45:13-20, 57:16-22, 70:1-19, 75:5-21.

[63] *Enyart*, 823 F.Supp.2d at 1004; Grover Decl, Ex. A (Snyder Report) ¶¶17-18, 23-24.

[64] *Hangarter*, 373 F.3d at 1016 (emphasis in original).

[65] *Leite v. Crane Co.*, 868 F.Supp.2d 1023, 1036 (D. Haw. 2012).

subscribers are not within the common knowledge of the average layperson.[66]  Accordingly, Mr. Snyder has specialized knowledge that will assist the trier of fact and is qualified to testify as an expert witness on these issues.[67]

Despite Mr. Snyder's considerable experience, Defendant suggests that he is unqualified to opine on the availability and content of cellular carrier records because, as a non-lawyer, he has never actually signed a subpoena for those records.  But Rule 702 imposes no requirement that experts have personal experience in an area to offer admissible testimony relating to that area.[68]  Mr. Snyder has established his knowledge and expertise in analyzing cellular carrier records, including personally reviewing numerous cellular carrier records subpoenaed in other cases.[69]  His knowledge about obtaining such information via subpoena, although indirect, is sufficient to satisfy *Daubert's* minimum threshold of relevance and accuracy.[70]  That is especially so in the class certification context, where there is no jury.  At most, Defendant's "objections to the credibility" of Mr. Snyder's testimony relating to the availability of cellular carrier information go to its weight, not its admissibility.[71]  Mr. Snyder's background, experience and explanation of his opinion leave no room for doubt.   It should be admitted.[72]

---

[66] *Siring,* 927 F.Supp.2d at 1076.

[67] *Enyart,* 823 F.Supp.2d at 1004; *Hangarter,* 373 F.3d at 1016.

[68] *Abaxis Inc. v. Cepheid,* 2012 U.S. Dist. LEXIS 100530, at *8 (N.D. Cal. Jul. 19, 2012).

[69] Grover Decl., Ex. A (Snyder Report) ¶23 ("I have ***personally*** worked with counsel who have obtained such information for me to review in litigation matters where I was retained as an expert."); Ex. C (Snyder Depo) at 26:20-27:11 ("In a lot of the cases I work on, call detail records are provided about a given subscriber . . ."); 29:6-16 ("***I've done this work before*** and have gotten call detail records that go back five or six years and in many cases longer than even what's in here."); 70:1-19 ("I've analyzed call detail records from all the major carriers and some of the minor ones . . . ***I've probably analyzed  tens of millions of CDRs in my career***."); 75:5-21 ("And even if it says they only have records for so many years, we've been able to actually obtain them for longer than that . . . ***[I]n my experience***, . . . you can get data that's even longer than that").

[70] *Abaxis*, 2012 U.S. Dist. LEXIS 100530, at *8.

[71] *Id.*

[72] *Primiano v. Cook*, 598 F.3d at 567.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

**C.      Mr. Snyder's opinions are based on sufficient facts and data.**

Defendant claims that Mr. Snyder's opinions are factually "unsupported" under Rule 702(b) because they "assume:" (1) that Aegis can produce a "list or database of telephone numbers;" (2) that cellular carriers maintain subscriber information; and (3) that Plaintiff used a phone she owned.[73]   At most, however, Defendant's objections to these purported "assumptions" do *not* foreclose the admissibility of Mr. Snyder's opinions at this stage, but rather go to the *weight* of the evidence.[74]   In other words, while Defendant may disagree with the factual basis of Mr. Snyder's opinion, its objections are "better directed to the weight of [Mr. Snyder's testimony] than its admissibility."[75]

Moreover, whether they are directed at admissibility (which they cannot be under the authorities cited above) or weight, Defendant's objections to these "assumptions" lack merit. *First*, Aegis Vice President of Operations Larry Tsao testified that Aegis *can* produce a list of telephone numbers that were routed to its Manila and India call centers and recorded.   Mr. Tsao originally testified that Aegis's Verint system can generate a list showing *every recorded call* from a California area code routed *to the Manila call center* from March 1, 2011 through March 2012 by date, time and caller's telephone number.[76]   He further testified that Aegis's Avaya ACD

---

[73] Def's. Mot. at 5-7.

[74] *Ralston,* 2011 U.S. Dist. LEXIS 138149, at *36.

[75] *Ellis I,* 240 F.R.D. at 649; *see also Hangarter,* 373 F.3d at 1017, n.14 ("the factual basis of an expert opinion goes to the credibility of the testimony, *not the admissibility*"); *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (objections to factual basis of expert opinion "all go to the weight of the testimony and its credibility, *not its admissibility*"); *Zurn,* 644 F.3d at 614 (objections regarding the "validity of . . . [an expert's] inputs" "go to its weight, *not its admissibility*"); *Siring,* 927 F.Supp.2d at 1073 ("It is for the [fact finder] to decide what the facts are in this case, and if the [fact finder] disagrees with [an expert's] interpretation of the facts, that goes to the weight and impeachability of [the expert's] testimony, *not its admissibility*.").

[76] Grover Decl., Ex. E (Tsao Depo. II) at 216:16-219:4 ("Is all that information you just read from the list available through the Verint system back to at least March 1st, 2011?" A: "*That's correct*."). Notably, while Defendant now claims that the list is "incomplete" because the system only started capturing telephone numbers in May 2011, Defendant does *not* dispute that it can produce a list identifying *all calls recorded* by its Manila call center from *May* 2011 through March 2012 – approximately 86% of the calls.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

system can produce a similar list by date and telephone number of *all calls routed to the India call center* from California area codes during the *entire class period*, *99% of which were contractually required to be recorded*.[77]

Even if Aegis has failed to maintain a "complete list" showing every single recorded call, however, this does not render Mr. Snyder's analysis unsupported.  Mr. Snyder opines that *any* list of telephone numbers can be reliably analyzed to determine which numbers are cellular and which are landlines and to identify the subscribers – and that includes those numbers currently maintained by Aegis.[78]  Defendant's inability to produce records for two months at one call center does not alter or undermine that opinion.[79]

*Second,* Defendant claims that Mr. Snyder's opinion improperly "assumes" that cellular carriers maintain subscriber information.[80]  But Mr. Snyder's statement is not an assumption.  Rather, Mr. Snyder explains from his own observation and experience that primary cellular carriers maintain subscriber identifying information for, *at minimum*, three to five years, and would have information relating to any class member who is a current subscriber.[81]  While not an

[77] Grover Decl., Ex. E (Tsao Depo II) at 207:17-208:9, 211:18-213:8 (identifying 83,355 calls routed to the India call center); Ex. Q (Tsao Depo I) at 79:25-80:6 ("So for the Wyndham Rewards calls, the effort is to record *99 percent* of the calls? A. *That is correct*.").  While Aegis claims that it lacks Verint records regarding the exact number of *recorded* calls at the India call center, it was contractually obligated to record *99%* of all Wyndham calls handled by the India call center. *Id.*

[78] Grover Decl., Ex. A (Snyder Report) ¶¶17-18; Ex. C (Snyder Depo) at 69:9-23 ("Given a list of telephone numbers, can you accurately obtain this information? And my opinion is yes.").

[79] *See CE Design v. Beaty Const., Inc.*, 2009 U.S. Dist. LEXIS 5842, at *9 (N.D. Ill. Jan. 26, 2009) (class certification will not be barred "because the defendant has lost or destroyed the list of its alleged victims"); *Agne*, 286 F.R.D. at 566 n.6 ("it would be unfair to deny class certification because of the potential difficulty of identifying the class members where that difficulty is mostly due to the fact that [defendant] destroyed the call lists that it used").

[80] Def's Mot. at 6. While it is unclear from Defendant's brief, this argument does *not* pertain to Mr. Snyder's opinion regarding scrubbing telephone number lists, which can be done with any list of telephone numbers without time limits and does not depend in any way on cellular service provider retention periods.  Telephone numbers' complete histories showing when they were cellular and when they were landline telephones are available in that regard.

[81] Grover Decl., Ex. A (Snyder Report) ¶23, Ex. B; Grover Decl., Ex. C (Snyder Depo) at 29:6-16, 75:5-21.

KELLER GROVER LLP

1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

expert in the subpoena process, Mr. Snyder *is* an expert in analyzing cellular carrier records.  He has demonstrated his knowledge of and experience with that process, including personally analyzing numerous records obtained from carriers in other cases.[82]  Courts have relied on similar proposed methodologies for obtaining subscriber information from cellular carriers in certifying classes.[83]

Further, Mr. Snyder's opinion is not "dependent" on this process.  As his opinion makes clear, subscribers also can be identified using third-party information services, such as Neustar, AB. Data, Ltd., CompliancePoint and Contact Center Compliance, which maintain detailed records for much longer periods.[84]  In other words, "[t]he ability to obtain information associated with the ownership of a telephone number [from a cellular carrier] . . . is simply *one* of the myriad of sources where you can possibly obtain that information."[85]

Further, contrary to Defendant's suggestion, Mr. Snyder's inclusion of a publicly-available Department of Justice document (Grover Decl., Ex. A (Snyder Report) at Ex. B) setting forth the *minimum* retention periods for major cellular service providers does not render his opinion unsupported.  A qualified expert such as Mr. Snyder may rely on information obtained from the Internet in forming his opinions.[86]

---

[82] Grover Decl., Ex. A (Snyder Report) ¶23; Ex. C (Snyder Depo) at 26:11-27:11, 69:24-70:19, 75:5-21.

[83] *See Birchmeier*, 302 F.R.D. at 254 (certifying class where expert opined on varying cellular carrier retention periods).

[84] Grover Decl., Ex. A (Snyder Report) ¶24.

[85] Grover Decl., Ex. C (Snyder Depo) at 25:8-20.

[86] *See Oracle Corp. v. SAP AG*, 765 F.3d 1081,1095 (9th Cir. 2014) (affirming admissibility of expert testimony that "relied on Internet research"); *Oracle America Inc. v. Google Inc.*, 2011 U.S. Dist. LEXIS 136172, at *13 (N.D. Cal. Nov. 28, 2011) ("experts can reasonably rely upon" Internet postings); *Samson Tug and Barge Co., Inc. v. United States*, 2008 U.S. Dist. LEXIS 62750, at *11-13 (D. Ala. Aug. 6, 2008) (expert testimony that relied on "the internet for information" admissible).

KELLER GROVER LLP

1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

Moreover, Mr. Snyder opines, based on his professional experience, that this information is reliable and accurate for the relevant time period.[87]   Defendant's claim that Mr. Snyder's assessment lacks foundation is belied by his extensive experience reviewing this exact type of information subpoenaed from cellular carriers in numerous other cases.[88]   Moreover, it is not necessary that Plaintiff show that her expert's methods will work with certainty at this stage.[89] Plaintiff need only present the Court with common methods for determining manageability and class membership.[90]  Mr. Snyder's report plainly satisfies this standard.

*Third*, Defendant claims that Mr. Snyder's opinion is factually "unsupported" because it assumes that class members were the owners/subscribers of their phone numbers.[91]  But Mr. Snyder's opinion makes no such assumption.  Indeed, while Defendant criticizes Mr. Snyder for failing to "address, or explain, how identifying a *subscriber* would assist in identifying a potential class member," Defendant is well-aware that Mr. Snyder was ***not asked to do so***.[92]   Rather, Mr. Snyder was asked only to opine on whether a list of telephone numbers can be reliably analyzed to determine which numbers are cellular and which are landlines and to identify the subscribers.[93]

---

[87] Grover Decl., Ex. A (Snyder Report) ¶21.

[88] Grover Decl., Ex. A (Snyder Report) ¶23 ("I have personally worked with counsel who have obtained such information for me to review in litigation matters where I was retained as an expert."); Ex. C (Snyder Depo) at 26:11-27:11, 69:24-70:19, 75:5-21.

[89] *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 652 (N.D. Cal. 2007).

[90] *See Smith*, 2013 U.S. Dist. LEXIS 173204, at *9-10 (***rejecting*** similar argument that class could not be ascertained because "only four of the eight primary wireless service providers keep their records for five years"); *Birchmeier*, 302 F.R.D. at 254 (class ascertainable where, according to defendant's expert, wireless carriers maintained historical subscriber data for varying time periods).

[91] Notably, ***half*** of Mr. Snyder's opinion relates only to determining whether a telephone number is associated with a cellular or landline telephone and is wholly unrelated to whether class members owned their telephone numbers.

[92] Def's Mot. at 7; Grover Decl., Ex. C (Snyder Depo) at 69:12-23 ("So whether an individual number is a class member or their behavior, ***I wasn't asked to analyze or look at or opine on or give an opinion on*** or anything.").

[93] Grover Decl., Ex. A (Snyder Report) ¶3.

Nonetheless, as explained further in Plaintiff's reply in support of class certification, identifying and providing notice to *subscribers* of the telephones used to call Defendant (who in general were likely also the *callers*) is an effective method of identifying and notifying class members.[94] Even if a subscriber was not the actual caller, providing notice to the subscriber – who undoubtedly has some relation to the person using his or her telephone – will also effectively provide notice to the caller and allow that person to self-identify based on the objective criteria set forth in the class definitions.[95] Ultimately, however, these are precisely the sorts of considerations that affect only the weight, and not the admissibility, of Mr. Snyder's opinions.[96]

### D.  Mr. Snyder's opinions are based on reliable methods.

Mr. Snyder was asked to opine on two limited issues:  whether a list of telephone numbers can be reliably analyzed to (i) determine whether each number is cellular or landline and (ii) identify each number's subscriber.[97] Mr. Snyder was *not* asked to opine on matters regarding class member location, landline handset type (*i.e.*, cordless versus corded) or caller identity.[98] Accordingly, whether Plaintiff (or any other individual class member) used a cellular or landline phone, was located in California, or owned a particular landline device is irrelevant to Mr.

---

[94] Plaintiff's Reply in Support of Motion for Class Certification (filed concurrently herewith) ("Pltff's Reply") at 8.

[95] *Id.*

[96] *PixArt,* 2011 U.S. Dist. LEXIS 133502, at *13.

[97] Grover Decl., Ex. A (Snyder Report) ¶¶3, 8-9.

[98] Grover Decl., Ex. C (Snyder Depo) at 30:14-21 ("I was simply asked to provide my opinions, given a group or set or a list of telephone numbers, if it was possible to determine whether that telephone number was associated with a wireless or a wireline carrier at some given point of time in the past and other information that you can obtain from that number[] . . ."); 31:9-16 ("Q: But you didn't form any opinion as to the ability of wireless carrier records to determine someone's physical location at the time they made the call? A: Yeah, *that's not what I was asked to opine on here* . . ."); 33:24-34:2 ("Q: Do you have any opinions in this case at all with regard to the ability to ascertain who would be in the cordless class? A: No. *I wasn't asked to opine on that.*"); 48:18-20 ("I was simply asked, if you have a telephone number, what information can you get from it; that's all."); 69:21-23 ("So whether an individual number is a class member or their behavior, *I wasn't asked to analyze or look at or opine on or give an opinion on* . . .").

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

Snyder's analysis.[99]  Viewed in this light, Defendant's claims that Mr. Snyder's methods do not satisfy Rule 702(b) because they do not consider Plaintiff's specific telephone type or call location and that Mr. Snyder's opinion "is not based on any facts or data particular to this case" reveal a fundamental misunderstanding of the limited scope of Mr. Snyder's opinion.[100]

The same defect is present in Defendant's further assertion that Mr. Snyder's proposed methods are "unreliable" because they do not identify whether a class member used a cordless handset or owned the specific telephone number used.  These too are matters on which Mr. Snyder was not asked to opine.[101]

Notably, *Defendant does not challenge the methods for Mr. Snyder's actual opinions*.  For instance, Defendant does not claim that a telephone list cannot be scrubbed to determine which numbers are cellular and which are landlines.  Nor does it assert that subscribers cannot be identified by reliably their telephone numbers.  *Indeed, by its silence on those points, Defendant appears to concede that Mr. Snyder's methods are reliable for those purposes.*  In short, that Mr. Snyder did not analyze extraneous factors irrelevant to his actual analysis does not render his opinion unreliable or inadmissible.[102]

---

[99] Defendant also criticizes Mr. Snyder for not reviewing Plaintiff's deposition transcript and "tak[ing] the allegations in the First Amended Complaint as true." Def's Mot. at 3, 7, 9. However, "[a]t this stage in the proceeding, an expert report should *not* be excluded merely on the basis that it assumes the substantive allegations of the complaint rather than relying upon actual data that may yet to be discovered." *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.,* 209 F.R.D. 159, 163 (C.D. Cal. 2002).  Moreover, there is nothing in Plaintiff's deposition transcript that is relevant to the opinions that Mr. Snyder was asked to provide.

[100] Def's Mot. at 10.

[101] Grover Decl., Ex. C (Snyder Depo) at 33:24-34:2 ("Q. Do you have any opinions in this case at all with regard to the ability to ascertain who would be in the cordless class? A. No. *I wasn't asked to opine on that.*"); 48:6-20 (Mr. Snyder was *not asked to opine* on Plaintiff's location, device or phone ownership); 69:9-23 ("So whether an individual number is a class member or their behavior, *I wasn't asked to analyze or look at or opine on [that].*").

[102] *Primiano*, 598 F.3d at 565 ("[r]eliable expert testimony . . . need not establish *every element* that the plaintiff must prove, in order to be admissible"); *Siring*, 927 F.Supp.2d at 1078 ("Expert testimony need not address *every element* of a claim, but need only help the [fact finder] understand the evidence or 'a fact in issue.'").

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

Defendant next asserts that Mr. Snyder "has *no experience* with his proposed methodology," but simply relies on information possessed by third-party information service companies and cellular carriers.[103]    Put differently, Defendant argues that Mr. Snyder's methodologies are somehow unfounded because, despite his considerable experience with these companies and their processes, he did not "actually perform[]" their analysis.[104]    More broadly, many of Defendant's arguments amount to an assertion that, in order to testify on anything, an expert must have expertise in and testify on everything under the sun that touches the case in any way whatsoever.    In *Smith*, the court rejected the same arguments about Mr. Snyder's testimony. There, as here, the defendant argued that Mr. Snyder "provide[d] no evidence that he independently verified" or "ha[d] personal knowledge of" third-party information company CompliancePoint's analysis of a telephone number list to determine which numbers were cellular and which were landlines.[105]    Relying on Mr. Snyder's background and similar explanations of Neustar's and third-party information services companies' processes and databases, the court found that Mr. Snyder had sufficiently established the reliability of those methodologies and, thus, had made "the proper foundational showing."[106]

Here, as in *Smith*, Mr. Snyder explains that Neustar "owns and operates the most authoritative" real-time database of telephone numbers and that, "[d]ue to the critical nature of this service, the reliability of Neustar's database is, and must be, among the highest in the telecommunications industry."[107]    Mr. Snyder further explains that this database identifies whether a telephone number is wireless or wireline.[108]    He also explains that third-party commercial service companies lease that information from Neustar and maintain complete

---

[103] Def's Mot. at 10.

[104] Def's Mot. at 16.

[105] *Smith*, 2013 U.S. Dist. LEXIS 173204, at *14-15.

[106] *Id.* at *16.

[107] Grover Decl., Ex. A (Snyder Report) ¶¶12, 13; *Smith*, 2013 U.S. Dist. LEXIS 173204, at *15.

[108] Grover Decl., Ex. A (Snyder Report) ¶¶17, 18; *Smith*, 2013 U.S. Dist. LEXIS 173204, at *15.

databases, updated daily, of all telephone numbers and related information used in North America.[109]   Additionally, Mr. Snyder explains that both cellular carriers and third-party information service companies collect and maintain information that can identify subscribers based solely on their telephone numbers, and that the information service databases are updated daily to ensure that subscriber data is always reliable and preserved.[110]   Further, Mr. Snyder establishes that his explanations and analyses are "grounded in his experience and observations."[111]   Accordingly, as in *Smith,* Mr. Snyder, "explains why these [methodologies] are reliable . . . and therefore the proper foundational showing has been made."[112]

Despite Mr. Snyder's detailed explanations of his methods for analyzing telephone number lists, Defendant nonetheless criticizes Mr. Snyder for failing to "opine that he possesses this information [or] that he has requested it."[113]   Mr. Snyder cannot "possess" or analyze information relating to putative class member telephone numbers until Defendant produces those telephone numbers. Even without the telephone numbers, however, it is clear that Mr. Snyder's opinions will assist the Court by demonstrating how, *once they are produced*, those numbers can be analyzed to determine class membership and manageability.   In other words, Mr. Snyder "presents a structure or framework to analyze the actual . . . data eventually provided to plaintiff[]."[114]   That is all that is needed at this point.

---

[109] Grover Decl., Ex. A (Snyder Report) ¶¶16, 17.

[110] *Id.* ¶¶23, 24.

[111] *Guadiana*, 2010 U.S. Dist. LEXIS 129588, at *17; Grover Decl., Ex. A (Snyder Report) ¶17 ("I have personally been involved in contracting with A.B. Data, Ltd., CompliancePoint and Contact Center Compliance to provide telephone number data analysis in class action lawsuits."), ¶23 ("I have personally worked with counsel who have obtained such information for me to review in litigation matters where I was retained as an expert."), ¶24 ("I have been involved in contracting with these organizations to provide such cellular subscriber and identifying data in many class action lawsuits."); Ex. C (Snyder Depo) at 20:2-21:2, 26:11-27:11, 29:6-16, 36:7-37:11, 41:9-11, 44:13-21, 45:13-20, 57:16-22, 69:3-5, 70:1-19, 75:5-21.

[112] *Smith*, 2013 U.S. Dist. LEXIS 173204, at *16.

[113] Def's Mot. at 12.

[114] *Ralston*, 2011 U.S. Dist. LEXIS 138149, at *37-38.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

### E.     Mr. Snyder's opinions apply to both proposed classes.

Ignoring Mr. Snyder's actual opinions, Defendant claims that "Plaintiff did not ask Snyder to opine on identifying landline or cordless telephone numbers" and, therefore, his opinion "does not apply to the cordless class."[115]   Mr. Snyder, however, ***does*** opine on the ability to identify landline telephones from a list of telephone numbers,[116] and cordless phones are a subset of landline telephones.   Moreover, like cellular subscribers, landline subscribers are readily identifiable using methods similar to those proposed by Mr. Snyder.[117]   Accordingly, Mr. Snyder's opinions apply to both proposed classes.

With regard to the cellular class (and ignoring Mr. Snyder's methods for identifying subscribers), Defendant also claims that "[t]he *only* step Snyder's method possibly makes toward *ascertaining* the proposed class is determining whether a telephone number was 'a cellular telephone number on a given date.'"[118]   Here, though, the classes are ***already ascertainable*** based on objective criteria in the class definitions.   Putative class members can easily and reliably identify themselves as callers and confirm their own telephone type, residency and location at the time they made the call that is reflected in Defendant's records.   In short, Mr. Snyder's methods can be used to analyze ***all*** class member telephone numbers.

### F.     Mr. Snyder did not "delete" any opinions from his report.

Defendant further criticizes Mr. Snyder for not including opinions that were part of a report he submitted in an unrelated case, *McCabe, et al. v. Six Continents Hotels, Inc.*, Case No. 12-cv-04818 NC (N.D. Cal.).   But Defendant is well aware that Mr. Snyder was not asked to

---

[115] Def's Mot. at 15.

[116] Grover Decl., Ex. A (Snyder Report) ¶8; Ex. C (Snyder Depo) at 30:14-21. Cordless telephones are a type of landline telephone.

[117] Grover Decl., Ex. C (Snyder Depo) at 35:13-36:24.

[118] Def's Mot. at 13.

opine on those matters in this case.[119]   Because those matters were never included in his report, they could not have been "deleted."

Defendant then takes it a step further, falsely suggesting that, despite ***not*** being asked to do so, "Snyder now [is] not willing to opine that the location of a call can be determined."[120]   But contrary to Defendant's assertion, Mr. Snyder specifically testified in his deposition that "[g]iven the proper data," he "would be happy to analyze that," and while "that's not what [he] was asked to opine on here, . . . generally that's true, that you can determine the location of a party in a call based on call detail information provided by the carriers."[121]

Defendant's conclusion that Mr. Snyder "still reached the same ultimate opinion in this matter as in *McCabe*, but based on far less foundation" is also meritless.[122]   Mr. Snyder provided additional analysis in *McCabe* because he was asked to opine on additional matters not present here.[123]   As Mr. Snyder explained, "[t]he opinions in this case are specific to this case; the opinions [in *McCabe*] are specific to [*McCabe*]. And they have different factual information involved."[124]

In other words, Mr. Snyder did not "elect[] to limit his opinion" or "delete" any statements – he simply opined on relevant matters as requested by Plaintiff's counsel in this case. That his ultimate opinions in this case are consistent with his *McCabe* opinions does render his opinion inadmissible.  If anything, Mr. Snyder's consistency demonstrates the reliability of his opinions.  Moreover, even if there had been any actual inconsistencies, arguments about them

---

[119] Grover Decl., Ex. C (Snyder Depo) at 30:22-33:13 ("Q: But you didn't form any opinion as to the ability of wireless carrier records to determine someone's physical location at the time they made the call? A: Yeah, ***that's not what I was asked to opine on here*** . . .").

[120] Def's Mot. at 8.

[121] Grover Decl., Ex. C (Snyder Depo) at 30:22-31:16.

[122] Def's Mot. at 9.

[123] In *McCabe,* Mr. Snyder was asked to opine on additional matters relating to cell site and call location information.

[124] Grover Decl., Ex. C (Snyder Depo) at 84:9-22.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

would go to the weight of the evidence, not its admissibility.[125]   As set forth above, Mr. Snyder

has established sufficient foundation for his opinions in *this* case.

### G.    Mr. Snyder's opinions are based on factual analysis, not legal conclusions.

Defendant argues that Mr. Snyder's opinion that wireless carriers maintain subscriber

information that can be obtained via subpoena somehow amounts to an improper "legal

conclusion."[126]   Defendant's argument fails because it is well-established that "an expert's

opinion that relies in part on the expert's understanding of . . . [the] law does *not* improperly

usurp the court's role."[127]   "An expert may 'properly be called upon to aid the [trier of fact] in

understanding the facts in evidence even though reference to those facts is couched in legal terms'

and may 'refer to the law in expressing an opinion without that reference rendering the testimony

inadmissible.'"[128]

Here, Mr. Snyder's opinion, which is based on his personal experience and observations,

"does *not* improperly invade the province of the Court."[129]   Indeed, Mr. Snyder never testified

that he had reached a legal conclusion or purported to be a legal expert in the subpoena

process.[130]   Rather, he testified as to the type of information maintained by cellular carriers,

which, based on his considerable experience – including experience reviewing documents that his

then-employing counsel had obtained by subpoena – can be obtained via subpoena.[131]   Whether

or not records ultimately are subpoenaed remains within the province of the parties and the Court.

---

[125] *Williams v. Bridgeport Music, Inc.*, 2014 U.S. Dist. LEXIS 182240, at *54 (C.D. Cal. Oct. 30, 2014) (alleged inconsistencies between expert's report and testimony in prior cases go to the weight of the evidence, not its admissibility).

[126] Def's Mot. at 14.

[127] *Siring*, 927 F.Supp.2d at 1077.

[128] *Id.*; *Hangarter,* 373 F.3d at 1017.

[129] *Siring*, 927 F.Supp.2d at 1077.

[130] *Hangarter*, 373 F.3d at 1016.

[131] Grover Decl., Ex. A (Snyder Report) ¶¶19-21, 23; Ex. C (Snyder Depo) at 28:3-8 ("My job in this case was *not* to discuss how things were obtained or what data was obtained in this case, it was simply to describe what you can do given a telephone number.").

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

In short, Defendant has not "shown that [Mr.] Snyder has overstepped his bounds as an expert witness or that [he] is attempting to instruct the court as to the law as a legal expert."[132]

### H.    A *Daubert* hearing is unnecessary.

On a class certification motion, "[d]istrict courts are ***not*** required to hold a *Daubert* hearing before ruling on the admissibility" of expert evidence.[133]  Defendant has had ample "opportunity to explore the principles and methodologies that underlie Mr. Snyder's conclusions" (Def's Mot. at 16) through both document discovery and deposition testimony.  Mr. Snyder's report and testimony accurately and sufficiently set forth his proposed methodologies and the basis for his opinions.  Accordingly, a full-blown *Daubert* hearing to determine the admissibility of Mr. Snyder's expert opinions at the class certification stage is unnecessary.

## V.    CONCLUSION

Mr. Snyder's opinions are relevant to determining that it is administratively feasible to identify absent class members and confirm class membership. They will aid the Court in determining that the proposed classes are both ascertainable and manageable.  The Court should deny Defendant's motion in its entirety.

Dated:  August 5, 2015                    **KELLER GROVER LLP**

By:

*/s/ Eric A. Grover*
ERIC A. GROVER
RACHAEL G. JUNG

*Counsel for Plaintiff*
JOYCE ROBERTS

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

---

[132] *Sterk v. Path, Inc.,* 46 F.Supp.3d 813, 817 (N.D. Ill. 2014).

[133] *Tait*, 289 F.R.D. at 495 (citing *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 602 n.22 (9th Cir. 2010) *rev'd on other grounds* by 131 S. Ct. 2541 (2011); *Hovenkotter*, 2010 U.S. Dist. LEXIS 112645, at *11 ("the court need ***not*** conduct a full *Daubert* analysis as to the admissibility for trial of the expert's opinions" at class certification); *Ellis I*, 240 F.R.D. at 635 ("[a]n evidentiary hearing on class certification ***is not required***"), *affirmed* on this point by *Ellis II*, 657 F.3d at 982.