NANCY L. STAGG, CA Bar No. 157034
  nstagg@foley.com
NICHOLAS J. FOX, CA Bar No. 279577
  nfox@foley.com
**FOLEY & LARDNER LLP**
3579 VALLEY CENTRE DRIVE, SUITE 300
SAN DIEGO, CA 92130
TELEPHONE: 858.847.6700
FACSIMILE:   858.792.6773

Attorneys for Defendant
WYNDHAM HOTELS AND RESORTS, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE ROBERTS, individually and on behalf of classes of similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>WYNDHAM INTERNATIONAL, INC.; WYNDHAM WORLDWIDE OPERATIONS, INC.; WYNDHAM HOTELS AND RESORTS, LLC; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 12-CV-05083-PSG<br><br>**WYNDHAM HOTELS AND RESORTS, LLC'S REPLY BRIEF IN SUPPORT OF MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF RANDALL A. SNYDER**<br><br>CLASS ACTION<br><br>Date:   October 6, 2015<br>Time:   10:00 a.m.<br>Place:  Courtroom 5<br>Judge:  Hon. Paul S. Grewal<br><br>Complaint Filed:  July 17, 2012<br>FAC Filed:        February 2, 2015 |

# TABLE OF CONTENTS

Page

I.  PLAINTIFF'S EXPERT RANDALL SNYDER'S OPINIONS SHOULD BE STRICKEN ...... 1

II. SNYDER'S EXPERIENCE WITH TCPA CASES DOES NOT QUALIFY HIM TO RENDER OPINIONS IN CIPA CASES ................................................................. 2

III. SNYDER'S OPINIONS AND TESTIMONY ARE UNRELIABLE AND BASED ON INSUFFICIENT FACTS AND DATA ................................................................. 4

    A.  SNYDER'S OPINION AND TESTIMONY ON SUBSCRIBER INFORMATION ARE IRRELEVANT, UNHELPFUL, AND NOT METHODOLOGICALLY SOUND ................................................................. 4

        1.  The Opinion Is Irrelevant, Immaterial, and Not Helpful To The Court ................................................................. 5

        2.  The Opinion Is Not Methodologically Sound ................................................................. 6

    B.  SNYDER'S OPINION AND TESTIMONY ON DEVICE TYPE ARE IRRELEVANT ................................................................. 8

    C.  SNYDER'S OPINION ON TELECOM INFORMATION LACKS FACTUAL BASIS AND IS IRRELEVANT ................................................................. 9

    D.  SNYDER DELETED CERTAIN OPINIONS HE PROVIDED IN SIMILAR CASES ................................................................. 12

IV. PLAINTIFF MISSTATES WHR'S RECORD KEEPING INFORMATION ................................................................. 13

V.  A HEARING IS APPROPRIATE IF THE COURT IS INCLINED TO DENY THE MOTION ................................................................. 14

VI. CONCLUSION ................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Daubert II*,
  43 F.3d at 1319 n.10 ..................................................................................................................14

*Ellis v. Costco Wholesale Corp.*,
  240 F.R.D. 627 (N.D. Cal. 2007), *affirmed at* 657 F.3d 970 (9th Cir. 2011) .........................1

*Hangarter v. Provident Life and Conduct Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004) ....................................................................................................12

*Hataishi v. First Am. Home Buyers Protection Corp.*,
  223 Cal.App.4th 1454 (2014) .....................................................................................................9

*McCabe v. Intercontinental Hotels Group Resources, Inc., et al.*,
  Case No. 3:12-cv-04818-NC (N.D. Cal.), Dkt. No. 80-8 ........................................................12

*McCabe v. Six Continents Hotels, Inc.*,
  Case No. 12-cv-04818-NC (N.D. Cal.)............................................................................ *passim*

*Mullins v. Direct Digital, LLC*,
  2015 U.S. App. 13071 (7th Cir. July 28, 2015) ........................................................................5

*Oracle America Inc. v. Google Inc.*,
  2011 U.S. Dist. LEXIS 136172 (N.D. Cal. Nov. 28, 2011)....................................................11

*Oracle Corp. v. SAP AG*,
  765 F.3d 1081 (9th Cir. 2014) .................................................................................................11

*Pyramid Techs. v. Hartford Case. Ins.*,
  752 F.3d 807 (9th Cir. 2014) .................................................................................................1, 5

*Samson Tug & Barge Co., Inc. v. United States*,
  2008 U.S. Dist. LEXIS 62750 (D. Ala. Aug. 6, 2008) ...........................................................11

*Smith v. Microsoft Corp.*,
  2013 U.S. Dist. LEXIS 173204 (S.D. Cal. Dec. 10, 2013) (*see* Opp., ) ...................................3

**Statutes**

Cal. Pen. Code §632.7............................................................................................................ *passim*

California's Invation of Privacy Act, Cal. Pen. Code §630, et seq................................... *passim*

Privacy Act, Cal. Pen. Code §630, et seq. ..................................................................................1

Telephone Consumer Protection Act, 47 U.S.C. §227 ...................................................... *passim*

**Rules**

FED. R. EVID. 702................................................................................................................1, 5, 6

## I. PLAINTIFF'S EXPERT RANDALL SNYDER'S OPINIONS SHOULD BE STRICKEN

As Plaintiff acknowledges, when a party attempts to introduce expert evidence at the class certification stage, "the court should ask only if expert evidence is 'useful in evaluating *whether class certification requirements have been met*.'" *See* Opp. (D.I. 85), at 8:4-8 (citing *Ellis v. Costco Wholesale Corp.*, 240 F.R.D. 627, 635 (N.D. Cal. 2007) (emphasis added), *affirmed at* 657 F.3d 970, 982 (9th Cir. 2011)). Although a common theme throughout Plaintiff's Opposition is that Snyder was not asked to opine on certain issues, an expert's testimony still must be directed to the pertinent inquiry. *See Pyramid Techs. v. Hartford Case. Ins.*, 752 F.3d 807, 813 (9th Cir. 2014). The pertinent inquiry here is whether class certification requirements have been met. *See Ellis*, 240 F.R.D. at 635. This necessarily includes whether the proposed classes are ascertainable.

Plaintiff's Opposition to the Motion To Strike Randall Snyder fails to address the fatal ascertainability gap in this case: §632.7 protects the privacy interests of the party to the communication, not the subscriber of the telephone number from which the telephone call was made. Section 632.7 imposes liability in relevant part on "[e]very person who, without consent of all *parties to a communication*, intercepts or receives and intentionally records" the communication. *See* Cal. Pen. Code §632.7 (emphasis added). Because §632.7's protection extends to the "parties" to a communication and whether the *parties* gave consent, the critical inquiry is *who actually made the call*. Plaintiff's Opposition spends many pages on an irrelevant inquiry—who is the *subscriber* of a telephone number—but does nothing to address the inquiry that §632.7 commands. As a result, Snyder's testimony is not helpful to the Court in understanding the evidence or determining a fact in issue. *See* FED. R. EVID. 702.

In addition, Snyder's opinion and testimony are not based on sufficient facts or data, are not reliable, and were not reliably applied to the facts of the case. *See id.* Snyder's purported extensive expert experience is related to cases brought under the Telephone Consumer Protection Act ("TCPA"), which has different triggers for liability than California's Invasion of Privacy Act, Cal. Pen. Code §630, et seq. ("CIPA"). Snyder acknowledges his methodology and experience might determine the *subscriber* of a telephone number but not the caller—the party to the communication—a critical distinction under CIPA. Further, Snyder has not tested his methodology in this case, including even on

the readily available telephone numbers Plaintiff used.  Snyder simply speculates that subpoenas to telecom carriers might reveal some information, but bases this conclusion on outdated information or documents that contradict his conclusion.  And in any event, Snyder did not subpoena those records to determine if such information is available in this case.  In effect, Snyder's opinion and testimony are premised on factually unsupported assumptions and hypothetical methodologies that have not been employed in this case.

Thus, although Plaintiff may not have asked Snyder to opine on other statutory requirements for class membership, such as the caller's residency, device type, consent, and geolocation, the topics on which Snyder was asked to opine are irrelevant, unsupported, and unreliable to the core inquiry in this case:  who was the actual caller to Travelodge® or Wyndham Rewards®?

## II. SNYDER'S EXPERIENCE WITH TCPA CASES DOES NOT QUALIFY HIM TO RENDER OPINIONS IN CIPA CASES

As an initial matter, although Plaintiff touts Snyder's years of alleged experience and numerous cases for which Snyder has served as an expert (*see* Opp., at 12:5 – 13:15), Plaintiff conveniently omits that almost all of Snyder's class action experience is related to cases brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227.  With the exception of two cases,[1] *every* case listed in Snyder's Declaration is a TCPA case, and one of those two exceptions is the present case.  *Id.* Plaintiff cannot point to a single CIPA class action where Snyder's testimony has been accepted in granting class certification.

This is where Snyder's prior experience fails and why his opinions must be rejected on their face as applied to a CIPA class action.  The requirements for liability under TCPA are substantially different than under CIPA, and thus the inquiry in ascertaining putative class members under each differs substantially.  The TCPA generally restricts telemarketing and the use of automated dialing systems to telephone numbers on the National Do No Call Registry ("NDNCR").  *See generally* 47 U.S.C. §227. Under the TCPA, the act triggering liability is solely the act of calling a particular telephone number on

---

[1] The second exception is Snyder's opinion in *McCabe v. Six Continents Hotels, Inc.*, Case No. 12-cv-04818-NC (N.D. Cal.), which was also brought under CIPA.  However, Snyder's opinion in *McCabe* was subject to a motion to strike.  *See McCabe*, Dkt. No. 90.  The Court never ruled on the motion to strike because the case is in the settlement approval phase.  *Id.*, Dkt. Nos. 138 – 147.

the NDNCR. *Id.* The identity of the parties (or their residency or geolocation) is not relevant under the TCPA. It does not matter whether the recipient of a telemarketing or autodial telephone call is the subscriber of the telephone number or some other person. Thus, Snyder's methodology of identifying the *subscriber* in a TCPA case might be fine because the recipient's identity is immaterial.

However, under §632.7, the identity of the actual caller (or identity of the recipient of the call) is critical because §632.7's privacy protections extend to the "parties" to a communication. It is the act of nonconsensual recording that triggers liability under §632.7, and it is the actual caller (as a party to the communication) who must give consent. Identifying the *subscriber* of a telephone number may be sufficient for a TCPA case, but it is not sufficient for a CIPA case because CIPA does not focus on the act of the call itself but instead focuses on the actual parties to the communication, device type, residency, consent, and geolocation.[2]

The same is true regarding Snyder's opinion on device type. The TCPA applies to cellular telephone numbers, whereas CIPA is more specific in terms of device type.[3] Thus, Snyder's methodology might work in TCPA cases where the only distinction to be made is cellular versus non-cellular, but this blunt methodology is not amenable to the finer distinctions CIPA makes regarding device type. Again, Snyder's TCPA experience is inapplicable and does not qualify him to provide opinions on device type in CIPA cases.

Thus, the entire basis of Plaintiff's Motion for Class Certification and Opposition to this Motion is premised on a methodology designed to locate the subscriber of a telephone number in TCPA cases. Neither Plaintiff nor Snyder has provided any opinion, testimony, or methodology regarding any relevant inquiry for a CIPA case, including identity of the actual caller, device type, residency, or geolocation.[4] Snyder's experience in TCPA cases does not qualify him as an expert in CIPA cases—and

---

[2] As a result, Plaintiff's argument that the Court denied a motion to exclude Snyder's testimony in *Smith v. Microsoft Corp.*, 2013 U.S. Dist. LEXIS 173204 (S.D. Cal. Dec. 10, 2013) (*see* Opp., at 1 n.3) is irrelevant because *Smith* was a TCPA case.

[3] As discussed below, different sections of CIPA apply to different device types, and these differing sections have different elements for liability. Thus, device type is even more critical to determine what elements a plaintiff must prove.

[4] As discussed more below, Snyder did attempt to provide an opinion on some of these other statutory elements in the only other CIPA case listed on his resume—*McCabe*. However, those opinions are notably absent from the present case. Although Plaintiff contends that Snyder was not asked to opine on

1  indeed, neither Plaintiff nor Snyder cites to any CIPA case where Snyder's testimony was admitted and
2  a class was certified.  Snyder's methodology in TCPA cases is irrelevant, immaterial, and
3  methodologically unsound in CIPA cases.

### III. SNYDER'S OPINIONS AND TESTIMONY ARE UNRELIABLE AND BASED ON INSUFFICIENT FACTS AND DATA

Despite that Snyder's relevant experience is limited to the TCPA, which has substantially different requirements than CIPA, Plaintiff asked Snyder to opine on two limited issues:  (1) whether a list of telephone numbers could be "scrubbed" to determine which numbers are cellular and which are non-cellular;[5] and (2) whether telephone *subscribers* can be reliably identified using only their telephone numbers. *See* Opp., at 1:5-7.  As noted above, these inquiries might be relevant to a TCPA case where subscriber information and whether a device simply was cellular is all that is needed, but given the more specific requirements required under CIPA, Snyder's opinions are not sufficiently refined to be of consequence to the Court's class certification decision.

#### A. Snyder's Opinion and Testimony on Subscriber Information Are Irrelevant, Unhelpful, and Not Methodologically Sound

One opinion Snyder proffers is that a list of telephone numbers can be used to determine the *subscriber* of the telephone number.  *See* Opp., 1:5-7.  Aside from methodological issues discussed

---

those other statutory elements, this is likely because Snyder's testimony was subject to a motion to strike in *McCabe*.  Unwilling to risk another attack on those opinions in this case, Plaintiff's counsel simply decided not to ask Snyder to address those issues (although the remnants of those prior opinions are still found in the Snyder Declaration).  Moreover, *McCabe* is unhelpful in several respects.  First, *McCabe* involves a settlement class, not a litigation class.  Second, Plaintiff provides no information as to how the defendant's practices and record keeping in *McCabe* have any bearing on the practices and record keeping in this case.

[5] Plaintiff uses inconsistent language for this opinion. At times Plaintiff states Snyder's opinion distinguishes between cellular and "landline" telephone numbers (*see* Opp., at 1:6), whereas other times Plaintiff states the opinion focuses on the difference between cellular and "non-cellular" telephone numbers (*see* Opp., at 9:15-16).  Although Plaintiff may consider the difference in language to be innocuous, the difference is critically important.  As discussed more below, the TCPA may distinguish between cellular and non-cellular telephone numbers, but CIPA is much more precise regarding device type, distinguishing between cellular (§632.7), cordless (§632.7), and landline (§632).  Device type triggers what section of CIPA applies, and §632.7 has different elements from §632.  Thus, specificity of device type is necessary for a CIPA claim, and Snyder's opinion fails to reach this level of required detail.

below, the opinion does not help the Court understand the evidence or determine a fact in issue; rather, the opinion is irrelevant to the analysis required under §632.7.  *See* FED. R. EVID. 702.

### 1. The Opinion Is Irrelevant, Immaterial, and Not Helpful To The Court

Section 632.7 applies to the "parties" to a communication.  Thus, it is Plaintiff's burden at class certification to demonstrate an objective, reliable way to ascertain the *actual callers* who called Travelodge® or Wyndham Rewards®.  Section 632.7 protects the privacy interests of the *parties* to a communication by prohibiting nonconsensual recordation of that communication.  Indeed, a telephone number *subscriber* who did not call the telephone numbers at issue has no privacy interest implicated by §632.7 because the subscriber would not have been subject to alleged nonconsensual recording.[6]

Snyder acknowledges his opinion and proposed methodology can only ascertain the *subscriber* of a particular telephone number.  *See* Snyder Decl. at ¶ 19 ("All cellular telecommunications carriers record, maintain and store detailed information about all of their *subscribers*.") (emphasis added); *see also id.*, at ¶¶ 15, 23, 24.  Snyder was simply asked to opine on what might be done with a particular telephone number, but was not asked to determine whether a particular individual was a class member.  *See* Stagg Decl. (D.I. 77), Ex. C, at 28:1-8, 30:14-21, 69:21-23 (Snyder Depo.).  Thus, Snyder has no way of determining who the *actual caller* is on a particular telephone call.  Subscriber information is insufficient because §632.7 applies to the parties to the communication, not the owners of a particular telephone number.[7]

In this vein, Plaintiff's argument that Snyder was not asked to opine on identification of the actual callers misses the mark.  *See* Opp., at 17:10-12.  An expert's opinion must have a valid connection to the pertinent inquiry.  *Pyramid Techs.*, 752 F.3d at 813.  Plaintiff misstates what the pertinent inquiry is here.  Because §632.7 applies to the parties to a communication, the identity of the actual caller must be determined.  As a result, Snyder's opinion and testimony are irrelevant, immaterial,

---

[6] Contrast this with a TCPA case, where the act of calling a cellular telephone number on the NDNCR itself constitutes a violation of the statute. In such a case, the subscriber may be the appropriate putative class member because it is the act of calling the subscriber's telephone number that triggers liability.

[7] *See also Mullins v. Direct Digital, LLC*, 2015 U.S. App. 13071, at *43 (7th Cir. July 28, 2015) (If the proposed class presents unusually difficult manageability problems, district courts have discretion to press the plaintiff for details about the plaintiff's plan *to identify class members*," and failure to provide a reasonable plan may result in failure on superiority grounds).

and unhelpful to the Court in understanding the evidence or determining a fact in issue—i.e., the identity of the party to the communication which was recorded.[8]

### 2. The Opinion Is Not Methodologically Sound

In addition, Snyder's opinion and testimony are not methodologically sound and have not even been applied in this case. When asked at his deposition if he could determine who the caller was to Travelodge® or Wyndham Rewards'® toll-free numbers based on the information Plaintiff provided to him, Snyder testified that "once you have a given telephone number, it's a very straight forward process." *See* Stagg Decl., Ex. C, at 35:8 – 36:6 (Snyder Depo.). Although Snyder claimed to have based this testimony on his experience (*see id.*, 36:7-8), Snyder never actually performed this "straightforward process." *Id.*, at 36:12-24. He has only worked with third parties who have done it, and those third parties were administering class actions, not ascertaining classes. *Id.*, at 36:16-24. Nor has Snyder ever verified that these third parties' processes lead to the identification of the *caller* (versus subscriber).[9] *Id.*, at 38:2-12. This blind reliance does not equate to reliable principles applied to the facts of the case. This should be sufficient to exclude the testimony because the expert must have "reliably applied the principles and methods to the facts of the case." *See* FED. R. EVID. 702. Absent actual application, Snyder's opinion is nothing more than prospective speculation about a hypothetical set of circumstances.

Snyder has no experience with his proposed methodology to ascertain the identity of class members using only telephone numbers, and Snyder has not applied that methodology to this case. Plaintiff protests that Snyder could not have tested his methodology because WHR has not provided information on putative class members. *See* Opp., at 21:9-13. Notably, Plaintiff provides no explanation as to why Snyder did not test the two telephone numbers that Plaintiff used to call

---

[8] Nor would identification of the subscriber be close enough to identification of the actual caller. *See* Opp., at 18:1-8  Plaintiff provides no evidence or expert testimony for the proposition that the subscriber would likely be the same as the actual caller. Moreover, Plaintiff's experts contradict this point. Anya Verkhovskaya was not asked to opine on this issue, and in any event testified she has not performed any analysis as to how likely it is that a subscriber would be the same as the actual caller. *See* Stagg Decl., Ex. B, at 35:12-17; 41:15-18; 43:8-21 (Verkhovskaya Depo.). Nor was Snyder asked to opine on the issue. Instead, Snyder opines that third-party commercial databases could be used to ascertain *subscriber* information. *See* Snyder Decl., at ¶¶ 15, 19 – 24.

[9] Snyder has also never performed an analysis on A.B. Data's level of accuracy. *Id.*, at 56:19-23.

Travelodge® and Wyndham Rewards®—telephone numbers clearly accessible by Snyder.  Of course, the answer is because Plaintiff is not the subscriber on any of the telephone numbers she used to called Travelodge® and Wyndham Rewards®.[10]  *See* Stagg Decl. (D.I. 77-1), Ex. A, at 14:3 – 15:5; 42:10 – 43:3 (Roberts Depo.).  Thus, had Snyder applied proposed methodology to Plaintiff's calls, Snyder (or the third parties Snyder used) would not have identified Plaintiff (the actual caller) as a putative class member.[11]  The inability to locate the named Plaintiff through the proposed TCPA-based methodology further underscores the impropriety of Snyder's opinions.

Similarly, the Court should reject Plaintiff's argument that WHR does not challenge Snyder's methods.  *See* Opp., at 19:9-15.  First, it is immaterial on what Plaintiff asked Snyder to opine if that opinion is not relevant to class certification, and as discussed above, Snyder's opinion does not reach the core inquiry of identifying actual callers.  Second, as discussed in this section and more below, Snyder's methodology is flawed on a host of levels.  Third, WHR cannot necessarily proffer specific objections as to information available through third-party, commercial vendors because all of Snyder's opinions and testimony are prospective and hypothetical.  For example, Snyder claims he is familiar with third-party information services such as A.B. Data, but Anya Verkhovskaya of A.B. Data has not identified what vendor she will use to actually process the information.[12]  In effect, neither Snyder nor Verkhovskaya provide any concrete information on what commercial vendor would be used.  As a result, Plaintiff's "evidence" is really just multiple layers of clouded hearsay and generalities and no specific confirmation of the identity of or processes employed by the actual commercial vendor that would ultimately process

---

[10] Apparently the fact that Snyder's methodology would not even locate Roberts is of no consequence to Snyder.  Snyder's entire opinion assumes that the class member calling Travelodge® or Wyndham Rewards® was the owner/subscriber of that phone number.  But Plaintiff testified that she did not use her own phone.  *See* Stagg Decl., Ex. A. at  14:3 – 15:9; 42:10-20 (Roberts Depo.).  Rather, she used both her mother's and her boyfriend's phones.  *Id.*  Snyder is not aware of this because he never read Plaintiff's deposition.  *See* Stagg Decl., Ex. C, at 18:24- 19: 3; 47: 6-11 (Snyder Depo.).

[11] This identification issue is underscored by numerous examples cited in WHR's Opposition to Class Certification.  For example, Snyder's methodology could not ascertain the actual caller in a residence with numerous residents, such as a family, or ascertain the actual caller in a "family plan" or shared data plans under one subscriber with multiple users, or in pre-paid plans that never track subscriber information (let alone the actual caller).  *See* WHR's Opp. To Class Certification, at 12.

[12] Moreover, as set forth in WHR's Reply in support of the Motion to Strike Anya Verkhovskaya, the methodology employed by Verkhovskaya and A.B. Data suffers from numerous defects, including defects in accuracy or testing of third-party, commercial databases.  To the extent Snyder relies on the database chosen by Verkhovskaya, Snyder's opinion suffers from the same defects.

this information (assuming it existed). It is disingenuous for Plaintiff to point to a lack of specific objections when all Plaintiff's expert has done is speculate in generalities.

### B. Snyder's Opinion and Testimony on Device Type Are Irrelevant

Snyder's other opinion relating to device type is also irrelevant, immaterial, and not of assistance to the Court. Plaintiff asked Snyder to opine if a telephone number could be used to determine whether the associated device is cellular or non-cellular (or "landline" as Plaintiff sometimes states). *See* Opp., 1:5-7. Snyder's opinion and testimony on this issue suffer from the same defects as Snyder's opinion on ascertaining subscriber information (as opposed to the actual caller).

Not only does §632.7 apply to the "parties" (i.e., actual callers) to a communication, but §632.7 is also limited as to what devices fall within its scope. Section 632.7 covers cellular and cordless devices. *See* Cal. Pen. Code §632.7. Landline devices are separately covered under §632. *Id.*, at §632. But Plaintiff is not seeking to certify a §632 class. *See* D.I. 72 (Not. Of Mot. for Class Cert.), at 1:7-20. As a result, Plaintiff is limited in the device types that are included in the classes: cordless (and cellular) telephones are included under §632.7, but landlines are excluded because they fall under §632. Snyder's testimony must be directed towards this distinction.

Snyder readily admits he was not asked to opine on anything related to the "Cordless Class" Plaintiff is attempting to certify under §632.7. In his Declaration, Snyder stated he was asked "to determine whether each telephone number was assigned to a cellular telephone." *See* Snyder Decl., at ¶ 3. Plaintiff did not ask Snyder to opine on identifying landline or cordless telephone numbers. Snyder had no opinion "with regard to the ability to ascertain who would be in the cordless class." *See* Stagg Decl., Ex. C, at 33: 24-34:2 (Snyder Depo.). Snyder's opinion does not apply to the Cordless Class.

Plaintiff tries to rectify this glaring defect by arguing Snyder does opine on the ability to identify *landline* telephones from a list of telephone numbers. *See* Opp., at 22:4-5. Plaintiff contends that *cordless* phones "are a subset of landline telephones." *Id.*, at 22:5-6. Plaintiff's argument appears to be that because Snyder opines on non-cellular devices generally, then Snyder has opined on cordless devices specifically. Not only is this logically untrue, but the argument is belied by Plaintiff's own recognition that cordless devices are a "subset" of landline devices. *Id.* Section 632.7 is specific as to device type, and only cordless (and cellular) devices are covered. Regular landline devices (i.e., wired

devices, not cordless devices) are covered under §632.  Thus, Snyder's opinion on landline devices is insufficient because it does not reach the level of detail required for §632.7.[13]  Indeed, for Snyder's opinion to be of any relevance to the Court, it must delve beyond the generic "non-cellular" level and reach the cordless versus landline distinction.[14]

Finally, the same methodological defects regarding Snyder's opinion about obtaining subscriber information (versus the actual caller) apply equally here.  Snyder has not tested his methodology regarding device type in this case, including on Plaintiff's telephone numbers.  Snyder's reliance on processes used by third-party information services such as A.B. Data suffer from the same defects outlined in WHR's Reply supporting the Motion To Strike Anya Verkhovskaya, including the lack of any explanation as how to ensure that the device used several years ago to make a particular call was in fact a cordless device (as opposed to a change in device), or how it would ensure that a residence with difference types of devices could accurately determine which device was used to make the call.  *See* WHR's Opp. To Class Cert., at 17-18.  Although Snyder's methodology may work for TCPA cases where it is the act of the call itself to a cellphone number is the trigger for liability, in CIPA cases the device type must be ascertained to determine under which section of CIPA the claim falls.

**C.     Snyder's Opinion On Telecom Information Lacks Factual Basis And Is Irrelevant**

Snyder similarly bases his opinions on the untested assumption in this case that telecom carriers retain records with subscriber information.  Snyder states, "All cellular telecommunications carriers record, maintain and store detailed information about all of their subscribers."  *See* Snyder Decl. (D.I. 73-3), at ¶ 19.  Snyder further states, "All of this detailed and recorded information for each subscriber can be obtained via subpoena using only the cellular telephone number as the unique identifying piece of data required for a detailed subscriber search."  *Id.*, at ¶ 23.

---

[13] Plaintiff's other expert, Anya Verkhovskaya, readily admits she cannot discern between calls from a cordless telephone and calls from a landline telephone. *See* Stagg Decl., (D.I. 77-3), Ex. B, at 48:4-12; 48:23 – 49:1 (Verkhovskaya Depo.).  This includes  searches of the third-party, commercial databases. *Id*.  Thus, both Snyder and Verkhovskaya can only discern between cellular and non-cellular numbers—which might be relevant to TCPA cases that make this generic distinction—but they cannot discern between cordless and landline devices, which is a necessary inquiry for a §632.7 case.

[14] Moreover, because different sections of CIPA apply to different device types, and these different sections have different elements, "the trier of fact must first determine what type of telephone was used . . . .  That determination . . . will require an *individual call-by-call inquiry*."  *See* Hataishi v. First Am. Home Buyers Protection Corp.*, 223 Cal.App.4th 1454, 1469 (2014).

First, as discussed above, even assuming the validity of Snyder's methodology and opinions, employing the methodology would only result in "detailed information about all of their *subscribers*," despite that the correct inquiry here is identifying the *actual callers*. *See* Snyder Decl., at ¶ 19. Moreover, Snyder's methodology would only result in information regarding *cellular* devices, but not cordless devices (covered under §632.7) or landline devices (*not* covered under §632.7). Thus, Snyder's opinions are irrelevant and not based on sufficient facts and data because they do nothing to assist the Court in ascertaining some required elements of a §632.7 class: the actual caller and device type.

Second, Snyder assumes that call record data exists from these various telecom carriers but provides no basis for this assumption. Plaintiff attempts to gloss over this assumption by arguing that in Snyder's "experience" these telecom carriers retain information for "at a minimum" three to five years. *See* Opp., at 15:10 – 16:16. Plaintiff also argues the documentation provided by Snyder in his Declaration supports these assumptions. *Id.* There are numerous issues with how Plaintiff characterizes this "documentation" and Snyder's reliance on it. For example, Snyder attaches a document he declares is "publicly available," despite that the document says "Law Enforcement Use Only." *See* Snyder Decl., Ex. B. However, Snyder admits this is a "leaked" document from the Internet, and not issued publicly by the Department of Justice. *See* Stagg Decl., Ex. C, at 21: 14-21 (Snyder Depo.). Snyder has never confirmed that this is an accurate document. *See id.*, at 22: 15-18; 24:14-17. Plaintiff characterizes this document as showing "minimum" retention periods for telecom carriers, but there is nothing in Exhibit B to the Snyder Declaration that indicates the date ranges provided are the "minimum" retention periods; rather, the document simply states that the data reflect "Retention Periods of Major Cellular Providers." The testimony cited by Plaintiff for further support that these are "minimum" retention periods (*see* Opp., at 15 n.81) does not support this characterization either. Moreover, the document shows that potential class members' records are not likely to be retained by their carriers. Plaintiff's proposed class period runs from March 2011 to March 2012. As of March 2011, six of the eight carriers did not retain this information for longer than two years. *See* Snyder Decl., Ex. B. Neither Snyder nor Roberts' counsel issued a subpoena in this case. Thus, Snyder's opinion is based on a document the accuracy of which is unknown, but is also premised on a document that directly contradicts Snyder's

assumption about how long telecom carriers might retain this information.[15]

Plaintiff's argument that Snyder can rely on the Internet in forming his opinion also lacks merit. *See* Opp., at 16:12-16.  Although the cases Plaintiff cites generally state that an expert can rely on the Internet, Plaintiff uses those cases to paint with too broad a brushstroke.  In *Oracle Corp. v. SAP AG*, 765 F.3d 1081 (9th Cir. 2014), the Ninth Circuit noted that although the expert relied on the Internet, the expert did so as part of his extensive market analysis research, and in any event plaintiff had an opportunity to cross-examine the expert on his sources to discredit those sources.  In *Oracle America Inc. v. Google Inc.*, 2011 U.S. Dist. LEXIS 136172 (N.D. Cal. Nov. 28, 2011), a damages expert used Internet blogs and other online sources in preparing a damages report, including Internet postings by the former chief financial officer at Sun Microsystems.  Notably, the District Court observed that experts can rely on the Internet "as long as the foundational facts are properly laid . . . ."  *Id.*, at *13.  In *Samson Tug & Barge Co., Inc. v. United States*, 2008 U.S. Dist. LEXIS 62750 (D. Ala. Aug. 6, 2008), although the expert relied on information obtained from the Internet, the government did not challenge the sufficiency of the data the expert used.  *Id.*, at * 13.

Here, by contrast, WHR is challenging the data and facts upon which Snyder's opinion relies, and is challenging the lack of foundation to use a leaked DOJ document that Snyder just pulled off the Internet.  Snyder did not indicate where or how he found this document, did not verify its accuracy, and generally characterized the document in a way that the document does not even support.  Unless the basis of Snyder's opinion and Plaintiff's argument is the assumption that "everything published on the Internet must be true," Plaintiff and Snyder must provide foundational facts for the use of these Internet sources.  They have not.

Third, Snyder has never issued subpoenas in this case, and nor has Plaintiff's counsel or Plaintiff's other expert, Anya Verkhovskaya.  Snyder does not know if this telecom information has even been subpoenaed in this case.  *See* Stagg Decl., Ex. C, at 27: 23-25 (Snyder Depo.).  Instead, Snyder states, "I have personally worked with counsel who have obtained such information for me to review in litigation matters where I was retained as an expert."  *See* Snyder Decl., at ¶ 23.  Thus, Snyder

---

[15] Snyder also includes three carrier-specific documents of unknown origin or date. *See* Snyder Decl., at Exs. C, D, & E.  These documents do not address the carriers' retention policies. Rather, they merely, "describe[] the cellular call detail information" purportedly available from that carrier. *Id.*, at ¶ 21.

simply assumes an individual's phone records can be subpoenaed in civil litigation.[16] Absent any application of Snyder's assumption to the facts of this case—including to Plaintiff's telephone numbers—Snyder's opinion is nothing more than speculation.

### D. Snyder Deleted Certain Opinions He Provided In Similar Cases

Plaintiff also contends that Snyder did not delete opinions he provided in *McCabe v. Intercontinental Hotels Group Resources, Inc.*[17] Plaintiff argues Snyder was not asked to opine on the same things here as in *McCabe*. *See* Opp., at 22:17 – 24:2. However, as noted above, *McCabe* is the only other CIPA case for which Snyder provided an opinion, and Snyder's opinion was subject to a motion to strike prior to settlement.

Thus, even if Plaintiff's argument held true, one must ask why Snyder was <u>not</u> asked to opine on the same things in this case as in *McCabe*, especially given that both cases were brought under §632.7. It is the absence of opinions in this case that were proffered in *McCabe* that is telling. In *McCabe*, Snyder offered several more opinions regarding ascertainability, including the geolocation of the caller and subpoenaing records from telecom carriers. Notably, although Snyder "was not asked" to opine on these issues, there are remnants of those opinions in Snyder's Declaration (making them at the very least superfluous in light of Snyder's "actual" opinions in this case).[18]

For example, Snyder deletes his opinions in *McCabe* relating to geolocation of the caller. *See, e.g.*, Stagg Decl., Ex. J (Exhibit 4 to the Synder Deposition) at ¶¶ 7, 19, 25. Because §632.7 requires that a class member make the call while physically located within California, such deletions are significant for the present case. Geolocation is a requirement of class membership. Not only is Snyder now not willing to opine that the location of a call can be determined, Plaintiff has not presented an expert opinion on determining a caller's geolocation.

Snyder also deletes his prior opinions regarding the subpoena process and what information is available from telecom carriers. *See* Stagg Decl., Ex. J (Exhibit 4 to the Snyder Deposition) at ¶¶ 18, 24.

---

[16] To the extent Snyder's opinion assumes or draws a legal conclusion regarding subpoena power, such testimony is inadmissible. *See Hangarter v. Provident Life and Conduct Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (*citing Mukhtar v. Cal. State Univ. Hayward*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002)).
[17] *McCabe v. Intercontinental Hotels Group Resources, Inc., et al.*, Case No. 3:12-cv-04818-NC (N.D. Cal.), Dkt. No. 80-8.
[18] As discussed above, it is irrelevant on what Plaintiff asked Snyder to opine if those opinions are not relevant to the core inquiries for class ascertainability and Rule 23's requirements.

Although Snyder speculated during his deposition of what might be possible, Snyder was not able to offer a formal opinion on subpoenaing telecom data in this case. As a result, Snyder has deleted several statements regarding the location from which calls were made and the ability to subpoena records from carriers. Although Plaintiff may try to explain away these differences by stating counsel only asked Snyder to opine on such a limited basis, what Plaintiff cannot explain is how Snyder still reached the same ultimate opinion in this matter as in *McCabe*, but based on far less foundation.

## IV. PLAINTIFF MISSTATES WHR'S RECORD KEEPING INFORMATION

Throughout Plaintiff's Opposition to this Motion, as well as Plaintiff's Motion for and Reply in support of Class Certification, Plaintiff consistently overstates the information that Aegis or WHR have in their possession related to the putative class. WHR's Reply in support of its Motion to Strike Anya Verkhovskaya, filed concurrently, expounds in more detail on these incorrect statements and assumptions. WHR incorporates that discussion herein by reference.

As set forth in extensive detail in WHR's Opposition to Class Certification (D.I. 77, at 21:7 – 25:12),[19] third-party Aegis only has call records of those calls that were recorded (but not the recordings themselves) from May 2011 through the end of the class period. And WHR only has a list of calls routed to its India call center, but does not have a list of calls recorded.[20] Furthermore, WHR's three databases do not contain the wealth of information that Plaintiff insists they do. The External Call History database tracks inbound call information to WHR, such as telephone number, date, time, and duration of the call, but the database cannot be used to determine where the call was routed, whether the call was recorded, or who the actual caller was, the caller's residency, device type, or geolocation. The

---

[19] WHR's Opposition to Class Certification was filed and served concurrently with WHR's Motion To Strike. It is unclear why the extensive explanation of the lack of correlating or cross-referenced information in Aegis' and WHR's records was entirely overlooked in Plaintiff's Reply supporting Class Certification and Opposition to this Motion. Not only did Plaintiff ignore this explanation and stick to her version of what she believes is possible (contrary to actual facts), but Plaintiff provides no evidence to contradict WHR's evidence as to what is actually capable with these systems.

[20] Plaintiff tries to get around this issue by noting Aegis was contractually required to record 99% of calls routed to the India call center. *See* Opp., at 18:6-9. But Plaintiff only provides testimony that it was Aegis' "effort" to record 99% of calls. Plaintiff provides no evidence that Aegis actually did record 99% of calls (or, more specifically, what percentage Aegis actually did record). Moreover, even assuming 99% of calls routed to the India call center were recorded, this fact does not overcome the fatal defects of ascertaining the actual caller, device type, residency, and geolocation.

reservations databases only contain contact information if the caller provided it and also made a reservation.  Moreover, the contact information may not be the same as the number from which the caller was calling.  The Enterprise Data Warehouse is simply an archive of the reservations databases, and in this regard suffers from the same defects as the reservations databases themselves, and in any event the database also lacks call recording data, which is only available from Aegis.

Thus, the fact remains that much of the information Aegis and WHR have does not necessarily correlate to the identity of the caller, or the caller's residency, geolocation, or device type.

## V. A HEARING IS APPROPRIATE IF THE COURT IS INCLINED TO DENY THE MOTION

As set forth in the Motion and above, Snyder's opinions and testimony should be stricken because they do not assist the Court in understanding the evidence or determining an issue in dispute.  It is of no consequence that Snyder's methodology, based on the TCPA and what third party vendors might do, might result in information about a telephone number subscriber because §632.7 protects the privacy interests of the actual caller.  Similarly, determining whether a device is simply "non-cellular" does not assist the Court because a more granular analysis is required to discern between cordless and landline devices.  Thus, Snyder offers to opinions or testimony that are relevant or of assistance to the Court  in connection with class certification.

However, if the Court is not inclined to exclude Snyder's testimony and Declaration on the present record, a *Daubert* hearing should be held to allow WHR to explore the principles and methodologies underlying Snyder's conclusions.  *See Daubert II*, 43 F.3d at 1319 n.10.

## VI. CONCLUSION

WHR respectfully requests that the Court strike and exclude the expert opinion and testimony of Randall Snyder offered by Plaintiff Joyce Roberts.

DATED:  August 28, 2015              **FOLEY & LARDNER LLP**

*/s/ Nancy L. Stagg*
Nancy L. Stagg
Nicholas J. Fox
Attorneys for Defendant
WYNDHAM  HOTELS AND RESORTS, LLC

# **CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2015, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing has been sent to all counsel of record who are deemed to have consent to electronic service via the Court's CM/ECF system.

           */s/ Nancy L. Stagg*
           NANCY L. STAGG