1  NANCY L. STAGG, CA Bar No. 157034
       nstagg@foley.com
2  NICHOLAS J. FOX, CA Bar No. 279577
       nfox@foley.com
3  **FOLEY & LARDNER LLP**
   3579 VALLEY CENTRE DRIVE, SUITE 300
4  SAN DIEGO, CA 92130
   TELEPHONE:  858.847.6700
5  FACSIMILE:    858.792.6773

6  Attorneys for Defendant
   WYNDHAM HOTELS AND RESORTS, LLC
7

8                    **UNITED STATES DISTRICT COURT**

9                   **NORTHERN DISTRICT OF CALIFORNIA**

10

11  JOYCE ROBERTS, individually and on behalf   )   Case No. 12-CV-05083-PSG
    of classes of similarly situated individuals,   )
12                                              )   **DEFENDANT WYNDHAM HOTELS AND**
                                    Plaintiff,  )   **RESORTS, LLC'S REPLY MEMORANDUM**
13                                              )   **OF POINTS AND AUTHORITIES IN**
                                                )   **SUPPORT OF MOTION TO EXCLUDE THE**
14              vs.                             )   **EXPERT OPINION AND TESTIMONY OF**
                                                )   **ANYA VERKHOVSKAYA**
    WYNDHAM INTERNATIONAL, INC.;                )
15  WYNDHAM WORLDWIDE OPERATIONS,               )
    INC.; WYNDHAM HOTELS AND RESORTS,           )
16  LLC; and DOES 1 through 10, inclusive,      )   <u>CLASS ACTION</u>
                                                )
17                                 Defendants.  )   Date:          October 6, 2015
                                                )   Time:          10:00 a.m.
18                                              )   Courtroom:    5
                                                )   Judge:         Hon. Paul S. Grewal
19                                              )
                                                )
20                                              )   Complaint Filed:     July 17, 2012
                                                )   FAC Filed:           February 2, 2015
21  _____  )

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  VERKHOVSKAYA'S OPINION SHOULD BE STRICKEN BECAUSE IT IMPROPERLY FOCUSES ON THE SUBSCRIBER AND NOT THE CALLER ...................1

II.  VERKHOVSKAYA'S EXPERIENCE WITH TCPA CASES DOES NOT QUALIFY HER TO RENDER OPINIONS IN CIPA CASES.................................................................2

III.  VERKHOVSKAYA'S OPINIONS AND TESTIMONY ARE UNRELIABLE AND BASED ON INSUFFICIENT FACTS AND DATA................................................................4

    A.  VERKHOVSKAYA'S OPINION AND TESTIMONY ON SUBSCRIBER INFORMATION ARE IRRELEVANT, UNHELPFUL, AND NOT METHODOLOGICALLY SOUND................................................................4

        1.  The Opinion Is Irrelevant, Immaterial, and Not Helpful To The Court ...................................................................................................4

        2.  The Opinion Is Not Methodologically Sound.................................................6

    B.  VERKHOVSKAYA'S OPINION AND TESTIMONY ON DEVICE TYPE ARE IRRELEVANT .......................................................................................9

    C.  VERKHOVSKAYA'S OPINION AND TESTIMONY ON ALTERNATIVE NOTICE METHODS ARE IRRELEVANT ...............................................11

IV.  VERKHOVSKAYA'S METHODOLOGY IS NOT BASED UPON RELIABLE PRINCIPLES OR METHODS .............................................................................12

V.  PLAINTIFF MISSTATES WHR'S RECORD KEEPING .......................................12

VI.  A HEARING IS APPROPRIATE IF COURT IS INCLINED TO DENY THIS MOTION ....14

VII.  CONCLUSION.................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All Indirect Purchaser Actions v. Infineon Techs. AG*,
    2013 U.S. Dist. LEXIS 188116 (N.D. Cal. Jan. 8, 2013) ....................................................6, 10

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................................................6

*Daubert II*,
    43 F.3d at 1319 n.10 .............................................................................................................14

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .................................................................................................6

*Hataishi v. First Am. Home Buyers Protection Corp.*,
    223 Cal.App.4th 1454 (2014) ................................................................................................9

*McCabe v. Six Continents Hotels, Inc.*,
    Case No. 12-cv-04818-NC, 2015 U.S. Dist. LEXIS 85084 ..................................................3

*Mullins v. Direct Digital, LLC*,
    2015 U.S. App. 13071 (7th Cir. July 28, 2015) ........................................................6, 10, 11

*Shamblin v. Obama for Am., et al.*,
    2015 U.S. Dist. LEXIS 54849 (M.D. Fla. Apr. 27, 2015) .....................................................3

*Southwell, et al. v. Mortgage Investors Corporation of Ohio, Inc., et al.*,
    Case No. 2: 13-cv-01289-MJP (W.D. Wash.), Dkt. No. 189 ................................................7

*Stalley v. ADS Alliance Data Sys., Inc.*,
    Case No. 11-cv-1652 (M.D. Fla.) ..........................................................................................2

**Statutes**

Cal. Pen. Code §632.7............................................................................................... *passim*

California's Invasion of Privacy Act, Cal. Pen. Code §630, et seq. ................................................ *passim*

Telephone Consumer Protection Act, 47 U.S.C. § 227 .................................................................. *passim*

**Rules**

FED. R. EVID. 702.................................................................................................................1, 4, 6

Rule 23 ..................................................................................................................................11

Rule 23(b)(3)...........................................................................................................................6

## I.   <u>VERKHOVSKAYA'S OPINION SHOULD BE STRICKEN BECAUSE IT IMPROPERLY FOCUSES ON THE SUBSCRIBER AND NOT THE CALLER</u>

Much like Plaintiff's Motion for Class Certification and Reply, Plaintiff's Opposition to the Motion To Strike Anya Verkhovskaya misses (and fails to address) the fatal flaw in Plaintiff's case: §632.7 protects the privacy interests of the *party* to a communication, not the subscriber of the telephone number.  Section 632.7 imposes liability in relevant part on "[e]very person who, without consent of all *parties to a communication*, intercepts or receives and intentionally records" the communication.  *See* Cal. Pen. Code §632.7 (emphasis added).  Because §632.7's protection extends to the "parties" to a communication and whether the *party* gave consent, the critical inquiry is *who actually made the call*. Plaintiff's Opposition spends many pages on an irrelevant inquiry—who is the *subscriber* of a telephone number—but does nothing to address the inquiry that §632.7 commands.  Because Verkhovskaya's opinion and testimony focus on an irrelevant issue—identifying the subscriber—instead of identifying the party involved in the call,  Verkhovskaya's testimony is not helpful to the Court in understanding the evidence or determining a fact in issue.  *See* FED. R. EVID. 702.

In addition, Verkhovskaya's opinion is not based on sufficient facts or data, is not reliable, and is not reliable when applied to the facts of the case.  *Id.*  Verkhovskaya's methodology is based on identifying class members under the Telephone Consumer Protection Act ("TCPA"), which has different triggers for liability than California's Invasion of Privacy Act, Cal. Pen. Code §630, et seq.("CIPA"). Verkhovskaya also admits she has no method to determine the actual caller.  Verkhovskaya further admits she has not tested her proposed methodology in this case, including even on the telephone numbers Plaintiff used.  Verkhovskaya speculates that subpoenas to telecom carriers might reveal some information, but admits she has not subpoenaed those records to determine if such information is available in this case.  And Verkhovskaya professes no knowledge of Defendant Wyndham Hotels and Resorts, LLC's ("WHR") records.  In effect, Verkhovskaya's opinion is premised on factually unsupported assumptions, hypothetical methodologies that have not been employed in this case, and a fundamental misunderstanding of the records and information available from WHR and Aegis.

Thus, although Plaintiff may not have asked Verkhovskaya to opine on other statutory requirements for class membership, such as residency, device type, consent, and geolocation, the topics

DEFENDANT WHR'S REPLY ISO MOT. TO EXCLUDE VERKHOVSKAYA EXPERT OPINION
-1-                                      Case No. 12-CV-05083-PSG

1   on which Verkhovskaya was asked to opine are irrelevant, unsupported, and unreliable to the core

2   inquiry in this case:  *who was the actual caller to WHR.*

3   **II.      VERKHOVSKAYA'S EXPERIENCE WITH TCPA CASES DOES NOT QUALIFY HER**

4   **TO RENDER OPINIONS IN CIPA CASES**

5           Although Plaintiff touts Verkhovskaya's years of alleged experience and the numerous cases

6   where Verkhovskaya acted as a case administrator (*see* Opp., at 13:1-5; 14:1-9), Plaintiff conveniently

7   omits that Verkhovskaya's experience involves many different types of class actions, such as antitrust,

8   securities, ERISA, civil rights, discrimination, and others.  *See* Verkhovskaya Decl. (D.I. 73-1), at ¶ 5.

9   Verkhovskaya's experience with call recording class actions is actually quite limited.  Plaintiff tries to

10  salvage Verkhovskaya's methodology by observing it has been approved in other actions under the

11  Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  *See* Opp., at 13:6 – 14:9.  Neither

12  Plaintiff nor Verkhovskaya point to a single CIPA class action where Verkhovskaya's testimony has

13  been accepted in granting class certification.  Instead, Verkhovskaya provides a long list of class actions

14  *brought under the TCPA.  See* Verkhovskaya Decl. (D.I. 73-1), at ¶¶ 11 – 12.  Notably, with the

15  exception of one case,[1] every case listed in Verkhovskaya's Declaration is a TCPA case.  *Id.*

16          This is where Verkhovskaya's prior call recording class action experience fails and why her

17  opinions must be rejected when applied to a CIPA class action.  The requirements for liability under

18  TCPA are substantially different than under CIPA, and thus the inquiry in ascertaining putative class

19  members under each differs substantially.  The TCPA generally restricts telemarketing and the use of

20  automated dialing systems to telephone numbers on the National Do No Call Registry ("NDNCR").  *See*

21  *generally* 47 U.S.C. § 227.  Under the TCPA, the act triggering liability is solely the act of calling a

22  particular telephone number on the NDNCR.  *Id.*  The identity of the parties is not relevant under the

23  TCPA, nor is their residency or geolocation.  It does not matter whether the recipient of a telemarketing

24  or autodial telephone call is the subscriber of the telephone number or some other person.  Rather, it is

25  the act of the call itself that triggers liability under the TCPA.  Thus, Verkhovskaya's methodology of

26  identifying the *subscriber* in a TCPA case might be fine because the recipient's identity is immaterial.

27  

28  [1] The exception, *Stalley v. ADS Alliance Data Sys., Inc.*, Case No. 11-cv-1652 (M.D. Fla.), involved
Florida's call recording statute when *defendant* called *plaintiff*.  Neither Verkhovskaya nor Plaintiff
provides any basis why this sole case under Florida law has any bearing on this case under CIPA.

4845-7099-5750.3

1    However, under §632.7, the identity of the actual caller is critical because §632.7's privacy

2    protections extend to the "parties" to a communication.  It is the act of nonconsensual recording that

3    triggers liability under §632.7, and it is the actual caller (as a party to the communication), not the

4    subscriber, who must give consent.  Identifying the *subscriber* of a telephone number may be sufficient

5    for a TCPA case, but it is not sufficient for a CIPA case because CIPA does not focus on the act of the

6    call itself but instead focuses on the actual parties, device type, residency, consent, and geolocation.

7    Verkhovskaya's reliance on methods used in prior TCPA cases is misplaced because the statutes trigger

8    liability for different acts. [2]

9    The same is true regarding Verkhovskaya's opinion on device type.  The TCPA applies to

10   cellular telephone numbers, whereas CIPA is more specific as to the type of device.[3]  Verkhovskaya's

11   methodology might work in TCPA cases where the only distinction to be made is cellular versus non-

12   cellular, but this blunt methodology is not amenable to the finer distinctions CIPA makes regarding

13   device type.  Again, Verkhovskaya's TCPA experience is inapplicable and does not qualify her to

14   provide opinions in this CIPA case.

15   Thus, the entire basis of Plaintiff's Motion for Class Certification and Opposition to this Motion

16   is premised on a methodology designed to locate the *subscriber* of a telephone number in TCPA cases,

17   not the *party* to the communication.  Plaintiff nor Verkhovskaya have provided any opinion, testimony,

18   or methodology regarding any relevant inquiry for a CIPA case, including identity of the actual caller,

19   device type, residency, or geolocation.  Verkhovskaya's experience in TCPA cases does not qualify her

20   as an expert in CIPA cases—and indeed, Plaintiff does not cite to *any* CIPA case where Verkhovskaya's

21   testimony was admitted and a class was certified.  As a result, Verkhovskaya's methodology in TCPA

22   cases is irrelevant, immaterial, and methodologically unsound in CIPA cases.[4]

23

24   [2] As a result, Plaintiff's heavy reliance on the court's admission of Verkhovskaya's testimony in
*Shamblin v. Obama for Am., et al.*, 2015 U.S. Dist. LEXIS 54849 (M.D. Fla. Apr. 27, 2015), is

25   misplaced because *Shamblin* involved a TCPA claim, not a CIPA claim.
[3] As discussed below, different sections of CIPA also have different elements, and thus device type is

26   even more critical to determine what elements a plaintiff must prove.
[4] The same is true of Plaintiff's reliance on other cases that have certified a CIPA class.  For example,

27   Plaintiff cites to a recent case in this District Court, *McCabe v. Six Continents Hotels, Inc.*, Case No. 12-
cv-04818-NC, 2015 U.S. Dist. LEXIS 85084. *See* Opp., at 10:1-17.  *McCabe* is unhelpful in several

28   respects.  First, *McCabe* involves a settlement class, not a litigation class (discussed below).  Second,
Plaintiff provides no information as to how the defendant's practices and record keeping in *McCabe*
have any bearing on WHR's practices and record keeping in this case

DEFENDANT WHR'S REPLY ISO MOT. TO EXCLUDE VERKHOVSKAYA EXPERT OPINION

1  **III.   VERKHOVSKAYA'S OPINIONS AND TESTIMONY ARE UNRELIABLE AND BASED**

2  **ON INSUFFICIENT FACTS AND DATA**

3  Plaintiff asked Verkhovskaya to opine on three limited issues:  whether a telephone number

4  could be used to determine: (1) if the telephone number was assigned to a cellular or non-cellular

5  telephone; (2) the name and address of the subscriber or owner of the telephone number; and (3)

6  whether methods exist to reach potential absent class members for notice purposes or to confirm class

7  membership.  *See* Opp. (D.I. 87), at 1:15 – 2:2.  Given the specific requirements of CIPA,

8  Verkhovskaya's opinions are not reliable and therefore cannot be considered by the Court in connection

9  with class certification.

10  A.   **Verkhovskaya's Opinion and Testimony on Subscriber Information Are Irrelevant,**

11  **Unhelpful, and Not Methodologically Sound**

12  The first opinion Verkhovskaya proffers is that a list of telephone numbers provided by WHR or

13  Aegis can be used to determine the *subscriber* of the telephone number.  *See* Opp., 1:15 – 2:2.  Aside

14  from methodological issues discussed below, the opinion does not help the Court understand the

15  evidence or determine a fact in issue; rather, the opinion is irrelevant and immaterial to the analysis

16  required under section §632.7  *See* FED. R. EVID. 702.

17  1.   **The Opinion Is Irrelevant, Immaterial, and Not Helpful To The Court**

18  Section 632.7 applies to the "parties" to a communication.  Thus, it is Plaintiff's burden at class

19  certification to demonstrate an objective, reliable way to ascertain the *persons* who called WHR.

20  Section 632.7 protects the privacy interests of the *parties* to a communication by prohibiting

21  nonconsensual recordation of that communication.  Indeed, a telephone number *subscriber* who did not

22  call WHR has no privacy interest implicated by §632.7 because the subscriber would not have been

23  subject to alleged nonconsensual recording.[5]  But Verkhovskaya concedes her opinion and proposed

24  methodology can only ascertain the *subscriber* of a particular telephone number; Verkhovskaya has no

25  way of determining who the *party* was on a particular telephone call.  *See* Declaration of Nancy L. Stagg

26  in support of Opposition to Class Certification (D.I. 77-1) ("Stagg Decl."), Ex. B, at 34:21 – 35:6;

27

28  [5] Contrast this with a TCPA case, where the act of calling a cellular telephone number on the NDNCR itself constitutes a violation of the statute.  In such a case, the subscriber may be the appropriate putative class member because it is the act of calling the subscriber's telephone number that triggers liability.

DEFENDANT WHR'S REPLY ISO MOT. TO EXCLUDE VERKHOVSKAYA EXPERT OPINION
-4-
Case No. 12-CV-05083-PSG

1   35:12-17; 41:15-18; 43:8-21 (Verkhovskaya Depo.).  Subscriber information is insufficient for a CIPA

2   class because §632.7 applies to the parties to the communication, not the owners of a particular

3   telephone number.

4          In this vein, Plaintiff's argument that Verkhovskaya was not asked to opine on identification of

5   the actual callers proves WHR's point.  *See* Opp., at 11:8 – 12:2.  Plaintiff acknowledges that an expert's

6   opinion must have a valid connection to the pertinent inquiry.  *Id.*, at 7:10-12.  But Plaintiff misstates

7   what the pertinent inquiry is.  Because §632.7 applies to the parties to a communication, the identity of

8   the actual caller must be determined.  As a result, Verkhovskaya's opinion and testimony are irrelevant,

9   immaterial, and not of assistance to the Court in understanding the evidence or determining a fact in

10  issue—i.e., the identity of the actual caller.

11         Plaintiff attempts to counter this fatal defect in Verkhovskaya's opinions by contending that

12  providing notice to subscribers is effectively providing notice to the actual callers because in many, if

13  not the vast majority of cases, the subscriber will also be the actual caller.  *See* Opp., at 20:1-7.  Plaintiff

14  also contends that in any event, notice to the subscriber would be close enough because the subscriber

15  "undoubtedly" has some relation to the actual caller.  *Id.*  Failing in her burden, Plaintiff provides no

16  evidence or expert testimony for these propositions.  In fact, Plaintiff's experts contradict this point.

17  First, Verkhovskaya was not asked to opine on this issue, and to that extent Plaintiff has no evidence

18  (expert or otherwise) to support this contention.  Second, Verkhovskaya testified she has not performed

19  any analysis as to how likely it is that a subscriber would be the same as the actual caller.  *See* Stagg

20  Decl. (D.I. 77-1), Ex. B, at 35:12-17; 41:15-18; 43:8-21.  Third, Plaintiff's other expert, Randall Snyder,

21  was not asked to opine on the issue either, and merely stated that third-party commercial databases could

22  be used to ascertain *subscriber* information.  *See* Snyder Decl. (D.I. 73-3), at ¶¶ 15, 19 – 24.  Therefore,

23  Plaintiff provides no evidence or expert testimony as to the correlation between subscriber and the actual

24  caller.  Unsupported generalizations do not fill the void.

25         Plaintiff also argues that there is no effective difference between a litigation class and a

26  settlement class in terms of notice to or identification of class members, and in that regard relies on

27  many settlement classes for support of Verkhovskaya's opinions and testimony.  *See* Opp., at 10:18 –

28  11:6.  But there are critical differences between the two types of classes.  First, unlike a litigation class, a

DEFENDANT WHR'S REPLY ISO MOT. TO EXCLUDE VERKHOVSKAYA EXPERT OPINION
-5-                          Case No. 12-CV-05083-PSG

4845-7099-5750.3

1  settlement class focuses on different elements: collusion between the parties and conflicts of interest

2  with the class.  *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

3  Second, courts in settlement classes need not consider the manageability of the case because settlement

4  obviates the need for trial.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 560 (1997); *compare Mullins*

5  *v. Direct Digital, LLC*, 2015 U.S. App. 13071, at \*43 (7th Cir. July 28, 2015) ("If the proposed class

6  presents unusually difficult manageability problems, district courts have discretion to press the plaintiff

7  for details about the plaintiff's plan *to identify class members*," and failure to provide a reasonable plan

8  may result in failure on superiority grounds).  Third, "[i]n evaluating the certification of a settlement

9  class, [j]udicial economy and fairness are the focus of the predominance and superiority requirements.

10  Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues

11  will help achieve judicial economy.  Unlike class certification for litigation purposes, however, the

12  judicial economy at issue for a settlement class is obtained through the effectuation of the settlement

13  itself, rather than through a trial of the class's claims.  This difference caused the Ninth Circuit to

14  observe that for a settlement class, certification pursuant to Rule 23(b)(3) . . . is appropriate whenever

15  the actual interests of the parties can be served best by settling their differences in a single action." *All*

16  *Indirect Purchaser Actions v. Infineon Techs. AG*, 2013 U.S. Dist. LEXIS 188116, at \*202-03 (N.D.

17  Cal. Jan. 8, 2013) (internal citations and quotations omitted).  And finally, even if notice to a litigation

18  class versus a settlement class had no meaningful distinction, as Plaintiff suggests, the core issue in

19  identifying the *actual caller* in CIPA cases still remains—a fatal defect in Plaintiff's classes and

20  Verkhovskaya's testimony and methodology.  Thus, there are important differences between the

21  settlement classes upon which Plaintiff relies and the litigation classes Plaintiff seeks to certify.

**2.     The Opinion Is Not Methodologically Sound**

23      In addition, Verkhovskaya's opinion and testimony are not methodologically sound and have not

24  even been applied in this case.  Verkhovskaya concedes that she has not attempted to employ her

25  methodology in this case.  *See* Stagg Decl. (D.I. 77-1), Ex. B, at 31:2-21.  This should be sufficient to

26  exclude the testimony because the expert must have "reliably applied the principles and methods to the

27  facts of the case." *See* FED. R. EVID. 702.  Absent actual application of the methodology,

28  Verkhovskaya's opinion is nothing more than prospective speculation about a hypothetical set of

DEFENDANT WHR'S REPLY ISO MOT. TO EXCLUDE VERKHOVSKAYA EXPERT OPINION
-6-                           Case No. 12-CV-05083-PSG

4845-7099-5750.3

1  circumstances.  At least one court has already rejected such conjecture from Verkhovskaya.[6]

2  Plaintiff protests that Verkhovskaya could not have tested her methodology because WHR has

3  not provided information on putative class members.  *See* Opp., 15:12-15.  Curiously, Plaintiff provides

4  no explanation as to why Verkhovskaya did not test the two telephone numbers that Plaintiff used to call

5  WHR—telephone numbers clearly accessible by Verkhovskaya.  Of course, the answer is because

6  Plaintiff *is not the subscriber* on any of the telephone numbers she used to called WHR.  *See* Stagg Decl.

7  (D.I. 77-1), Ex. A, at 14:3 – 15:5; 42:10 – 43:3 (Roberts Depo.).  Thus, had Verkhovskaya applied her

8  proposed methodology to Plaintiff's calls, Verkhovskaya would not have identified Plaintiff (the actual

9  caller) as a putative class member.[7]  The inability to locate the named Plaintiff through the proposed

10 TCPA-based methodology further underscores the immateriality, irrelevance, and unhelpfulness of

11 Verkhovskaya's opinions.

12 It is for this reason the Court should reject Plaintiff's argument that WHR "offers no legitimate

13 objection" to Verkhovskaya's opinions relating to information available through third-party, commercial

14 data vendors.  *See* Opp., at 6:3-7.  First, it is immaterial on what Plaintiff asked Verkhovskaya to opine

15 if that opinion is not relevant to class certification, and as discussed above, Verkhovskaya's opinion

16 does not reach the core inquiry about identifying actual callers.  Second, as discussed in this section and

17 more below, Verkhovskaya's methodology is flawed on a host of levels.  Third, WHR cannot

18 necessarily proffer specific objections as to information available through third-party, commercial

19 vendors because all of Verkhovskaya's opinions and testimony are prospective and hypothetical.

20 Verkhovskaya has not identified what vendor she will use, whether she has tested that specific vendor,

21 what the error rate is for that vendor, whether a test data set other than pre-selected, homegrown

22 telephone numbers was used, and what information the third-party vendor can provide.  Verkhovskaya

23 has not even run any telephone number—including Plaintiff's—through any third-party vendor.  It is

24 disingenuous for Plaintiff to point to a lack of specific objections when all Plaintiff's expert has done is

25

26 [6] *Southwell, et al. v. Mortgage Investors Corporation of Ohio, Inc., et al.*, Case No. 2: 13-cv-01289-MJP (W.D. Wash.), Dkt. No. 189, p. 8.

27 [7] This identification issue is underscored further by numerous examples cited in WHR's Opposition to Class Certification.  For example, Verkhovskaya's methodology could not ascertain the actual caller in a residence with numerous residents, such as a family, or in a "family plan" or shared data plans under one subscriber with multiple users, or in pre-paid plans that may not include subscriber or actual caller information.  *See* WHR's Opp. To Class Certification, at 12.

28

1    speculate in generalities.

2          Plaintiff also argues Verkhovskaya's methodology is sound because she has tried it on her own

3    telephone number. *See* Opp., 18:11 – 19:10.  But as discussed in WHR's Opposition to Class

4    Certification, this "verification" is simply smoke and mirrors. *See* WHR's Opp. To Class Cert., at 22:9-

5    18 & n.98.  Verkhovskaya "confirms" the accuracy of the methodology based on her own telephone

6    number and telephone numbers from A.B. Data's employees and family members. *See* Stagg Decl. (D.I.

7    77-3), Ex. B, at 37:15-25; 38:20-24; 39:6 – 40:25.  Thus, Verkhovskaya's testing of the methodology

8    and database is not premised on a fresh set of data, but rather is based on a subset of pre-selected,

9    homegrown, static telephone numbers of employees and family members.  Verkhovskaya confirmed that

10   this is the subset of telephones numbers used for accuracy testing. *Id.*  Therefore, it should come as no

11   surprise that the fixed subset of telephone numbers that has been used repeatedly for "testing" would

12   continue to yield the same level of accuracy test after test.  Determining subscriber information (as

13   Verkhovskaya's testing did) might work for TCPA cases, but it does not work for the level of detail

14   required in CIPA cases.

15         Similarly, Plaintiff's cryptic, one-sentence reference that Verkhovskaya also described "an

16   alternative method" of obtaining subscriber information fails to save Verkhovskaya's testimony. *See*

17   Opp., at 9:3-4.  Although Plaintiff does not state what the alternative method is, a review of the citation

18   demonstrates that Verkhovskaya's alternative method is to issue subpoenas to various telecom carriers.

19   But Verkhovskaya has not actually obtained any subpoenas in this case, and Roberts's counsel has not

20   either. *See* Stagg Decl. (D.I. 77-3), Ex. B, at 50:20-23.  This includes subpoenaing information on

21   Plaintiff's telephone numbers. *Id.*, at 31:2-21.  Thus, Verkhovskaya's methodology is unreliable (and

22   certainly not reliably *applied in this case*) because Verkhovskaya simply speculates that something

23   might be done, but Verkhovskaya has never actually done it.[8]  Verkhovskaya has not confirmed if these

24   telecom carriers retain information for the applicable class period, or what information would even be

25   contained in any retained records.  Verkhovskaya's testimony is purely speculative.

26   _____

27   [8] Verkhovskaya further undermines her subpoena method by relying on a 2014 Quarter 2 market update
     stating that four wireless carriers maintain approximately 99% of the subscribers. *See* Verkhovskaya

28   Decl., at ¶ 24.  But Plaintiff's proposed class period is March 2011 through March 2012.  Neither
     Verkhovskaya nor Plaintiff explain why or how data found in a 2014 document is the same or
     substantially similar to a proposed class period three years prior.

DEFENDANT WHR'S REPLY ISO MOT. TO EXCLUDE VERKHOVSKAYA EXPERT OPINION
-8-                                    Case No. 12-CV-05083-PSG

1

**B.        Verkhovskaya's Opinion and Testimony on Device Type Are Irrelevant**

2      Verkhovskaya's second opinion relating to device type is also irrelevant, immaterial, and not

3   helpful to the Court.  Plaintiff asked Verkhovskaya to opine on whether a telephone number could be

4   used to determine whether the associated device is cellular or non-cellular.  *See* Opp., 1:15 – 2:2.

5   Verkhovskaya's opinion and testimony on this issue suffer from the same defects as Verkhovskaya's

6   opinion on ascertaining subscriber information (as opposed to the actual caller).

7      Not only does §632.7 apply to the "parties" (i.e., actual callers) to a communication, but §632.7

8   is also limited as to what devices fall within its scope.  Section 632.7 covers cellular and cordless

9   devices.  *See* Cal. Pen. Code §632.7.  Landline devices are separately covered under §632.  *Id.*, at § 632.

10  An action under §632 also requires an additional element that the communication be confidential.  *Id.*

11  But Plaintiff is not seeking to certify a §632 class.  *See* D.I. 72 (Not. Of Mot. for Class Cert.), at 1:7-20.

12  As a result, Plaintiff is limited in the device types that are included in the class:  cordless telephones are

13  included under §632.7, but landlines are excluded because they fall under §632.  Therefore,

14  Verkhovskaya's testimony must be directed towards this critical distinction.

15     But Verkhovskaya readily admits that her opinion, as well as her methodology, cannot discern

16  between a cordless telephone and a landline telephone.  *See* Stagg Decl., (D.I. 77-3), Ex. B, at 48:4-12;

17  48:23 – 49:1.  This includes searches of the third-party, commercial databases that Verkhovskaya

18  proposes to use.  *Id.*  Verkhovskaya claims she can only discern between cellular and non-cellular

19  numbers—which might be relevant to TCPA cases that make this generic distinction—but she cannot

20  discern between cordless and landline devices, which is a necessary inquiry for a §632.7 case.  Thus,

21  Verkhovskaya's opinion and testimony, as well as methodology, are irrelevant, immaterial, and

22  unhelpful to the Court in understanding the evidence or determining an issue in dispute (in this case, the

23  actual device type) because Verkhovskaya's testimony and methodology do not reach the required level

24  of specificity required for class certification.[9]

25     Plaintiff attempts to remedy this defect by noting that putative class members can self-identify

26

27

28

---

[9] Moreover, because different sections of CIPA apply to difference device types, and these different sections have different elements, "the trier of fact must first determine what type of telephone was used . . . .  That determination . . . will require an *individual call-by-call inquiry*."  *See Hataishi v. First Am. Home Buyers Protection Corp.*, 223 Cal.App.4th 1454, 1469 (2014).

DEFENDANT WHR'S REPLY ISO MOT. TO EXCLUDE VERKHOVSKAYA EXPERT OPINION
-9-                          Case No. 12-CV-05083-PSG

4845-7099-5750.3

1   into the class through affidavit.  *See* Opp., at 9:6-8.  Although not clearly articulated in the Opposition,

2   Verkhovskaya's method would be used not only for self-identification of device type, but also self-

3   identification of other factors such as geolocation and residency.  *See also* Pl. Reply Supp. Class Cert.

4   (D.I. 84), at 4.  Thus, although Verkhovskaya's opinion might be limited to device type, Plaintiff intends

5   to use the self-identification method for all aspects of ascertaining class membership.  And this is where

6   Plaintiff's application of Verkhovskaya's method fails.  Instead of using self-identification for one

7   aspect of class membership, Plaintiff intends to use self-identification for *all* aspects of class

8   membership, which effectively defeats WHR's due process rights to challenge any particular claimant.

9   Because the inquiry is on the actual caller, Plaintiff must ask a putative class member to self-identify as

10  the caller (not just subscriber).  Because Verkhovskaya's method cannot discern between landlines and

11  cordless devices, Plaintiff and Verkhovskaya must also ask for self-identification on that issue.  The

12  same is true for geolocation (because Verkhovskaya and Plaintiff did not issue subpoenas to telecom

13  carriers, even assuming the information was available), as well as the residency of the caller.  In effect,

14  Plaintiff and Verkhovskaya provide no reliable means to objectively identify *any* class member; class

15  ascertainability is premised solely on subjective self-identification.

16        Plaintiff relies on the Seventh Circuit's opinion in *Mullins v. Direct Digital, LLC*, 2015 U.S.

17  App. 13071 (7th Cir. July 28, 2015), for the proposition that self-identification is acceptable to

18  determine class membership.  *See* Opp., at 9:9-11 & n.42.  Plaintiff's reliance is misplaced.  In *Mullins*,

19  the Seventh Circuit affirmed class certification involving anyone who purchased a particular dietary

20  supplement.  *Id.*, at *5-6.  The Court of Appeals declined to reverse class certification simply because

21  proposed class member identification relied on affidavits.  *Id.*, at *42-43.  But there was really only one

22  criterion for class membership in *Mullins*:  whether someone purchased the dietary supplement.  For

23  such a simple class, not involving a $5,000 per violation statutory damage claim, an affidavit might be

24  proper.  Here, by contrast, there are numerous class membership requirements:  the identity of the actual

25  caller, residency of the actual caller, geolocation of the actual caller, consent, and device type used.

26  Class membership is far more nuanced than making a single product purchase, and in that regard,

27  *Mullins* is unhelpful.[10]  Moreover, the Court of Appeals went on to observe, "If the proposed class

28

---

[10] The same would apply to TCPA cases, where class membership is based on defendant's sole act of

1    presents unusually difficult manageability problems, district courts have discretion to press the plaintiff

2    for details about the plaintiff's plan *to identify class members*," and failure to provide a reasonable plan

3    may result in failure on superiority grounds. *Id.*, at 43 (emphasis added).  The same is true here given

4    the difficulties in identifying the actual caller to whom §632.7 applies.  Indeed, if class membership

5    could always be determined solely be affidavit (regardless of how many factors are required for class

6    membership), any defendant's right to challenge those affidavits would be eviscerated.

7           Finally, the same methodological defects regarding Verkhovskaya's opinion about obtaining

8    subscriber information (versus caller identity) apply equally here.  Verkhovskaya has not tested her

9    methodology regarding device type in this case, including on Plaintiff's telephone numbers.  Nor has

10   Verkhovskaya tested her methodology on a dataset other than the set of telephone numbers from A.B.

11   Data's employees and family.  Nor does Verkhovskaya reliably explain how her methodology would

12   ensure that the device used several years ago to make a particular call was in fact a cordless device, or

13   how it would ensure that a residence with different types of devices could accurately determine which

14   device was used to make the call.  *See* WHR's Opp. To Class Cert., at 17-18.  Although Verkhovskaya's

15   methodology may work for TCPA cases where it is the act of the call itself to a cellphone number is the

16   trigger for liability, in CIPA cases the device type must be ascertained to determine under which section

17   of CIPA the claim falls.

18          **C.      Verkhovskaya's Opinion and Testimony on Alternative Notice Methods Are**

19                    **Irrelevant**

20          The third opinion Plaintiff apparently asked Verkhovskaya to render was on "alternative methods

21   for providing information about the class action to potential class members so that they may self-

22   identify." *See* Opp., at 24:16-20.  As the topic suggests, Verkhovskaya's opinion has nothing to do in

23   assisting the Court with class ascertainability.  Rather, Verkhovskaya's opinion relates to methods of

24   providing indirect notice to putative class members assuming a class was certified.  There may be

25   numerous ways to advertise and provide notice, including social media (Facebook, Internet banner ads)

26   and publication, but notice goes out to the class after certification or settlement.  The inquiry at this stage

27   is whether the proposed classes are ascertainable, and whether the other requirements of Rule 23 are

28

calling a telephone number on the NDNCR.

DEFENDANT WHR'S REPLY ISO MOT. TO EXCLUDE VERKHOVSKAYA EXPERT OPINION
                                    -11-                       Case No. 12-CV-05083-PSG

1   met.  Thus, Verkhovskaya's opinion and testimony about her experience in advertising through social

2   media is irrelevant, immaterial, and of no assistance to the Court.

3   **IV.     <u>VERKHOVSKAYA'S METHODOLOGY IS NOT BASED UPON RELIABLE</u>**

4   **<u>PRINCIPLES OR METHODS</u>**

5           In addition, Verkhovskaya's opinions are not based on reliable principles, and notably *have not*

6   *been reliably applied in this case*.

7           Verkhovskaya and A.B. Data do not possess the telephone numbers, names, or addresses of any

8   class member; rather, some unknown vendor at some point in the future may supply such information.

9   *See* Verkhovskaya Decl., at ¶ 17.  Thus, not only is Verkhovskaya's opinion speculative and

10  hypothetical about what an unnamed vendor might do, but Verkhovskaya is not personally involved in

11  the process of "ascertaining" class members using the TCPA-based methodology.  Nor does

12  Verkhovskaya have experience in or explain how these unnamed vendors correlate telephone number to

13  subscriber information.  As a result, not only does Verkhovskaya lack personal knowledge of the third-

14  party processes, but through Verkhovskaya's hearsay about what third parties do with the lists, Plaintiff

15  seeks to insulate from scrutiny these vendors and their methods.

16          In effect, Verkhovskaya serves solely as a middleman:  Verkhovskaya receives the list of

17  telephone numbers from the parties; transmits that list to an unnamed vendor; receives the list back from

18  the vendor; *and only then* performs a gap check on nonresponsive results from the vendor.  To this

19  extent, her opinions are unreliable.

20  **V.      <u>PLAINTIFF MISSTATES WHR'S RECORD KEEPING</u>**

21          Throughout Plaintiff's Opposition to this Motion, Plaintiff consistently overstates the

22  information that Aegis or WHR have in their possession related to the putative class.  This section serves

23  as a brief clarification.

24          First, to the extent Verkhovskaya's opinion or testimony could be read to rely on information

25  contained in WHR's databases, such reliance should be rejected.  Plaintiff's counsel only provided

26  Verkhovskaya with a copy of the First Amended Complaint in this action.  *See* Verkhovskaya Decl.

27  (D.I. 73-1), at ¶ 13.  Verkhovskaya confirmed at deposition that she did not rely on any documents not

28  identified in her Declaration.  *See* Stagg Decl. (D.I. 77-1), Ex. B, at Depo. at 30:14-18.  As a result, any

DEFENDANT WHR'S REPLY ISO MOT. TO EXCLUDE VERKHOVSKAYA EXPERT OPINION
4845-7099-5750.3

1   reliance by Verkhovskaya on WHR's records, databases, or information contained therein must be

2   rejected because Verkhovskaya did not review any documentation related to those systems.  In addition,

3   to the extent Plaintiff's counsel may have "informed" Verkhovskaya on the databases, that information

4   was likely inaccurate, as set forth below, and therefore Verkhovskaya's opinion and testimony would be

5   based on invalid facts and data.

6          Second, Plaintiff continues to misstate the information contained in WHR's records databases.

7   As set forth in extensive detail in WHR's Opposition to Class Certification (D.I. 77, at 21:7 – 25:12),[11]

8   third-party Aegis only has call records of those calls that were recorded (but not the recordings

9   themselves) from May 2011 through the end of the class period.[12]  And WHR only has list of calls

10  routed to its India call center, but does not have a list of calls recorded at the India call center.[13]

11  Furthermore, WHR's three databases do not contain the wealth of information that Plaintiff insists they

12  do.  The External Call History database tracks inbound call information to WHR, such as telephone

13  number, date, time, and duration of the call, but the ECH database cannot determine where the call was

14  routed, whether the call was recorded, or who the actual caller was, the caller's residency, device type,

15  or geolocation.

16         WHR's reservations databases <u>may</u> contain contact information regarding a particular call (if the

17  caller provided it), but the reservations database only contains this information if the caller completed a

18  reservation (as opposed to general inquiry calls).  Moreover, the contact information (including contact

19  telephone number) in the reservations databases is that provided by the caller, and thus may not be the

20

21  [11] WHR's Opposition to Class Certification was filed and served concurrently with WHR's Motion To
22  Strike.  It is unclear why the extensive explanation of the lack of correlating or cross-referenced
    information in Aegis' and WHR's records was entirely overlooked in Plaintiff's Reply supporting Class
23  Certification and Opposition to this Motion.  Not only did Plaintiff ignore this explanation and stick to
    her version of what she believes is possible, but Plaintiff provides no evidence to contradict WHR's
24  evidence as to what is actually capable with these systems.
    [12] Plaintiff misstates the record on this point.  Plaintiff contends that WHR's initial deposition testimony
25  was that it had all records, but that WHR now claims it does not have a complete list of recorded calls
    for the entire class period. *See* Opp., at 16:9-10.  However, it was Mr. Tsao of third-party Aegis who
26  made this statement, not a representative of WHR. *See id.*, at n.86.
    [13] Plaintiff tries to get around this issue by noting Aegis was contractually required to record 99% of
27  calls routed to the India call center. *See* Opp., at 18:6-9.  But Plaintiff only provides testimony that it
    was Aegis' "effort" to record 99% of calls.  Plaintiff provides no evidence that Aegis actually did record
28  99% of calls (or, more specifically, what percentage Aegis actually did record).  Moreover, even
    assuming 99% of calls routed to the India call center were recorded, this fact does not overcome the fatal
    defects of ascertaining the actual caller, device type, residency, and geolocation.

DEFENDANT WHR'S REPLY ISO MOT. TO EXCLUDE VERKHOVSKAYA EXPERT OPINION
                                    -13-                    Case No. 12-CV-05083-PSG

4845-7099-5750.3

1  same as the number from which the caller was calling (and thus would not necessarily correlate to data

2  in ECH).  The reservations databases suffer from the same defects regarding the actual caller, residency,

3  device type, and geolocation.

4       WHR's Enterprise Data Warehouse is simply an archive of the reservations databases, and in this

5  regard suffers from the same defects as the reservations databases themselves.  Nor does the EDW

6  contain call recording data, which is only available from Aegis.

7       Thus, despite Plaintiff's continued misrepresentations about how much information is actually

8  available in WHR's records, or how Aegis's data can be correlated to WHR's data, the fact remains that

9  much of the information Aegis and WHR have does not necessarily correlate to the identity of the

10  caller, or the caller's residency, geolocation, or device type.  To the extent Plaintiff's Motion for Class

11  Certification or Opposition to this Motion state or imply differently, or to the extent Verkhovskaya's

12  opinions rely on Plaintiff's version of what data is available, these arguments, statements, opinions, or

13  testimony must be rejected as based on insufficient and invalid facts and data.

14  **VI.    <u>A HEARING IS APPROPRIATE IF COURT IS INCLINED TO DENY THIS MOTION</u>**

15       As set forth in the Motion and above, Verkhovskaya's opinions and testimony should be stricken

16  because they do not assist the Court in understanding the evidence or determining an issue in dispute.

17  Rather, Verkhovskaya's opinions go to issues unrelated to class ascertainability.  It is of no consequence

18  that Verkhovskaya's untested and unused methodology, based on the TCPA, might result in information

19  about a telephone number subscriber because §632.7 protects the privacy interests of the actual caller.

20  Similarly, determining whether a device is simply "non-cellular" does not assist the Court because a

21  more granular analysis is required to discern between cordless and landline devices.  Thus,

22  Verkhovskaya offers to opinions or testimony that are relevant or helpful to class certification.

23       However, if the Court is not inclined to exclude Verkhovskaya's testimony and Declaration on

24  the present record, a *Daubert* hearing should be held to allow WHR to explore the principles and

25  methodologies underlying Verkhovskaya's conclusions.  *See Daubert II*, 43 F.3d at 1319 n.10.

26  ///

27  ///

28  ///

DEFENDANT WHR'S REPLY ISO MOT. TO EXCLUDE VERKHOVSKAYA EXPERT OPINION
               -14-                    Case No. 12-CV-05083-PSG

1  **VII.   <u>CONCLUSION</u>**

2          WHR respectfully requests that the Court strike and exclude the expert opinion and testimony of

3  Anya Verkhovskaya offered by Plaintiff Joyce Roberts.

4

5  DATED:  August 28, 2015                    **FOLEY & LARDNER LLP**

6                                             /s/ Nancy L. Stagg
7                                             NANCY L. STAGG
                                              NICHOLAS J. FOX
8                                             Attorneys for Defendant
                                              WYNDHAM HOTELS AND RESORTS, LLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>CERTIFICATE OF SERVICE</u>**

2

       I hereby certify that on August 28, 2015, I electronically transmitted the attached document to

3

the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing

4

has been sent to all counsel of record who are deemed to have consented to electronic service via the

5

Court's CM/ECF system.

6

7

                                    */s/ Nancy L. Stagg*
                                    NANCY L. STAGG

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT WHR'S REPLY ISO MOT. TO EXCLUDE VERKHOVSKAYA EXPERT OPINION
-1-                                            Case No. 12-CV-05083-PSG