1  ERIC A. GROVER (SBN 136080)
   eagrover@kellergrover.com
2  RACHAEL G. JUNG (SBN 239323)
   rjung@kellergrover.com
3  **KELLER GROVER LLP**
4  1965 Market Street
   San Francisco, California 94103
5  Telephone:   (415) 543-1305
   Facsimile:    (415) 543-7861
6
7  SCOT BERNSTEIN (SBN 94915)
   swampadero@sbernsteinlaw.com
8  **LAW OFFICES OF SCOT D. BERNSTEIN,**
     **A PROFESSIONAL CORPORATION**
9  101 Parkshore Drive, Suite 100
   Folsom, California  95630
10 Telephone:   (916) 447-0100
   Facsimile:    (916) 933-5533
11
12 Attorneys for Plaintiff
   JOYCE ROBERTS
13

14              **UNITED STATES DISTRICT COURT**

15            **NORTHERN DISTRICT OF CALIFORNIA**

16

17 JOYCE ROBERTS, individually and on behalf     Case No:  5:12-cv-05083-PSG
   of classes of similarly situated individuals,
18                                                Hon. Magistrate Judge Paul S. Grewal
19
                       Plaintiffs,               CLASS ACTION
20
21        v.                                     **PLAINTIFF'S NOTICE OF MOTION AND**
                                                 **MOTION FOR PRELIMINARY**
22                                               **APPROVAL OF CLASS ACTION**
                                                 **SETTLEMENT; MEMORANDUM OF**
23 WYNDHAM HOTELS AND RESORTS, LLC;              **POINTS AND AUTHORITIES IN**
   and DOES 1 through 10, inclusive,             **SUPPORT THEREOF**
24
25                     Defendants.               Date:      March 22, 2016
                                                 Time:      10:00 a.m.
26                                               Ctrm:      5, 4th Floor
27                                               Complaint Filed:   July 17, 2012
28

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

**PLEASE TAKE NOTICE THAT** on March 22, 2016 at 10:00 a.m., or as soon thereafter as the matter may be heard by the Honorable Paul S. Grewal, located at 280 South 1st Street, Courtroom 5, 4th Floor, San Jose, California, Plaintiff JOYCE ROBERTS will and hereby does move for an Order (1) preliminarily approving the settlement set forth in the Settlement Agreement and Release; (2) conditionally certifying the proposed Settlement Class; (3) appointing Plaintiff as the Settlement Class Representative; (4) appointing Plaintiff's Counsel as Settlement Class Counsel; (5) approving the designation of Rust Consulting as the Claims Administrator; (6) approving the proposed notice plan; and (7) scheduling a fairness hearing for final approval of the settlement.

This Motion is made pursuant to Federal Rule of Civil Procedure 23, which provides for court approval of the settlement of a class action.  The basis for this Motion is that the proposed settlement is fair, adequate, and reasonable and in the best interests of the proposed Settlement Class as a whole, and that the procedures proposed are adequate to ensure the opportunity of the proposed Settlement Class Members to participate in, opt out of, or object to the settlement.

This Motion will be based on this notice of motion and motion, the accompanying memorandum of points and authorities set forth herein, the parties' Settlement Agreement and Release, the Declarations of Eric A. Grover and Scot D. Bernstein, the pleadings and papers filed in this case, and such evidence or oral argument as may be presented at the hearing.

Dated:  February 16, 2016                    **KELLER GROVER LLP**

By:  /s/ *Eric A. Grover*
ERIC A. GROVER
RACHAEL G. JUNG

*Counsel for Plaintiff*
JOYCE ROBERTS

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     PROCEDURAL BACKGROUND AND SUMMARY OF CLAIMS ............................ 2

III.    SUMMARY OF SETTLEMENT TERMS ............................................................... 4

      A.    The Settlement Class. ............................................................................... 4

      B.    The Common Fund. ................................................................................... 5

      C.    Payments to Settlement Class Members. ................................................... 5

      D.    The settlement's release provision. ........................................................... 7

      E.    The notice program. ................................................................................. 7

      F.    Settlement Class Members may file a claim, opt out or object. .................. 10

      G.    The settlement provides reasonable enhancement for the Settlement
          Class Representative. .............................................................................. 11

      H.    Attorneys' fees and costs. ....................................................................... 11

      I.    Costs of notice and administering the settlement. ..................................... 11

      J.    The selected *cy pres* recipient of any residual funds. ............................... 12

IV.     LEGAL ANALYSIS ........................................................................................... 13

      A.    Preliminary approval of the class action settlement is appropriate ..................... 13

      under Federal Rules of Civil Procedure Rule 23. .................................................. 13

      B.    The Settlement Class satisfies Federal Rule of Civil Procedure 23 for ............... 13

      conditional certification. ....................................................................................... 13

            1. FRCP 23(a) class certification requirements are satisfied. ............................. 14

                 *a)*    *The Proposed Settlement Class is ascertainable and too*
                       *numerous to make joinder practicable.* .......................................... 14

                 *B)*    *Questions of law and fact common to members of the*
                       *Settlement Class satisfy commonality.* .......................................... 14

                 *C)*    *The Proposed Settlement Class Representative's claims are*
                       *typical of the Settlement Class Members' claims.* ......................... 15

                 *D)*    *The Proposed Settlement Class Representatives will*
                       *adequately        represent the Settlement Class.* ....................... 16

2. FRCP 23(b)(3) Requirements for Class Certification are
Satisfied.................................................................................................... 16

C. The settlement is fair and reasonable and not the result of fraud or collusion........ 17

3. The settlement amount is a fair compromise in light of the litigation
risks and                        uncertainties. ............................................................. 18

4. Sufficient formal and informal discovery allowed Plaintiff's Counsel
to calculate class damages and make informed decisions regarding
settlement. ............................................................................................... 22

5. The settlement was the product of informed, non-collusive, and
arms-length negotiations between experienced counsel who jointly
support the settlement. ............................................................................. 23

6. The proposed notice and claims process are reasonable. ................................ 23

7. Plaintiff will submit a separate application for the requested attorneys'
fees, costs, and expenses. ........................................................................ 24

8. The settlement provides a reasonable service award for the
Settlement Class Representative. ............................................................. 25

V. CONCLUSION ................................................................................................. 26

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page

**Federal Cases**

*Amchem Prods., Inc. v. Windsor*
    521 U.S. 591 (1997) ................................................................. 16, 17

*Batmanghelich v. Sirius XM Radio, Inc.*
    USDC CD Cal. Case No. 09-cv-9190 VBF ...................................... 20

*Boyd v. Bechtel Corp.*
    485 F. Supp. 610 (N.D. Cal. 1979) ................................................ 23

*Carter v. Anderson Merchandisers, LP*
    2010 WL 1946784 (C.D. Cal. May 11, 2010) ................................ 23

*Churchill Village, L.L.C. v. Gen. Elec.*
    361 F.3d 566, 575 (9th Cir. 2004) ................................................ 18

*Cohorst v. BRE Properties, Inc. et al.*
    USDC SD Cal. Case No. 10-cv-2666 ............................................ 21

*Cook v. Niedert*
    142 F.3d 1004 (7th Cir. 1998) ...................................................... 25

*Eisen v. Carlisle & Jacquelin*
    417 U.S. 156 (1974) .................................................................... 24

*Glass v. UBS Fin. Servs., Inc.*
    No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ............ 20

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ................................................. passim

*Hoffman v. Bank of America*
    USDC SD Cal. Case No. 3:12-cv-00539-JAH-DHB ........................ 21

*Ikonen v. Hartz Mountain Corp.*
    122 F.R.D. 258, 262 (S.D. Cal. 1988) .......................................... 14

*In re Beef Indus. Antitrust Litig.*
    607 F.2d 167 (5th Cir. 1979) ....................................................... 18

*In Re S. Ohio Corr. Facility*
    175 F.R.D. 270 (S.D. Ohio 1997) ................................................ 25

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

1

<u>**TABLE OF AUTHORITIES - CONTINUED**</u>

2

**Page**

3

*In re Syncor ERISA Litig.*
    516 F.3d 1095 (9th Cir. 2008)........................................................................ 18

4

*Ingram v. The Coca-Cola Co.*
    200 F.R.D. 685 (N.D. Ga. 2001) .................................................................... 25

5

6

*Knell v. FIA Card Services*
    USDC SD Cal. Case No. 12-CV-00426-AJB-WVG ...................................... 21

7

8

*Lewis v. Starbucks Corp.*
    2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) ............................................... 23

9

*Marenco v. Visa Inc.*
    USDC CD Cal. Case No. 10-cv-8022 DMG .................................................. 20

10

11

*McCabe v. Six Continents Hotels, Inc.*
    USDC ND Cal. Case No. 3:12-cv-04818-NC .................................................. 22

12

13

*Mullane v. Cent. Hanover Bank & Trust Co.*
    339 U.S. 306 (1950) ........................................................................................ 24

14

15

*Nachshin v. AOL, LLC*
    663 F.3d 1034 (9th Cir. 2011) ................................................................. 12, 13

16

17

*Nader v. Capital One Bank (USA), N.A.*
    USDC CD Cal. Case No. 2:12-cv-01265-DSF (2014) ................................... 21

18

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982)..................................................................... 18, 20

19

20

*Phillips Petroleum Co. v. Shutts*
    472 U.S. 797 (1985) ........................................................................................ 24

21

22

*Roberts and Simpson v. Wyndham, Int'l, Inc.*
    USDC ND Cal. Case No. 12-cv-05180-EDL ................................................... 4

23

*Roberts v. Texaco, Inc.*
    979 F. Supp. 185 (S.D.N.Y. 1997).................................................................. 25

24

25

*Romero v. Producers Dairy Foods, Inc.*
    235 F.R.D. 474 (E.D. Cal. 2006) .................................................................... 14

26

27

*Satchell v. FedEx. Corp.*
    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ............................................... 23

28

**KELLER GROVER LLP**
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

## <u>TABLE OF AUTHORITIES - CONTINUED</u>

**Page**

*Silber v. Mabon*
    18 F.3d 1449 (9th Cir. 1994) ........................................................... 24

*Simpson v. Ramada Worldwide, Inc.*
    USDC ND Cal. Case No. 12-cv-05029-PSG ................................... 3

*Six Mexican Workers v. Ariz.Citrus Growers*
    904 F.2d 1301 (9th Cir.1990) ........................................................ 12

*Skurov. BMW of North America, LLC*
    USDC CD Cal. Case No. 10-cv-8672 GW ..................................... 20

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003) ......................................................... 25

*Stone v. Howard Johnson International, Inc.*
    USDC CD CA Case No. 12-CV-01684 PSG (MANx) ..................... 5

*Van Vranken v. Atl. Richfield Co.*
    901 F. Supp. 294 (N.D. Cal. 1995) ............................................... 25

*Wal-Mart Stores, Inc. v. Dukes*
    131 S. Ct. 2541 180 L. Ed. 2d 374 (2011) ................................... 15

*Wren v. RGIS Inventory Specialists*
    2011 WL 1230826 (N.D. Cal. April 1, 2011) .......................... 18, 23

**State Cases**

*Greenberg v. E-Trade Financial Corporation*
    Los Angeles County Sup. Ct. Case No. BC360152 ......................... 20

*Mount v. Wells Fargo*
    Los Angeles Sup. Ct. Case No. BC395959 ..................................... 21

**Statutes**

California Penal Code

    § 630 ............................................................................................... 16
    § 631 ................................................................................................. 7
    § 632.7 ...................................................................................... passim
    § 637.2 ........................................................................................ 7, 15

## TABLE OF AUTHORITIES - CONTINUED

Page

**Other Authorities**

*Manual for Complex Litigation* (4th ed. 2004)
   § 21.61 ................................................................................................................ 13

**Rules**

Federal Rules of Civil Procedure Rule 23 .............................................................. passim

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.     INTRODUCTION**

3

Plaintiff Joyce Roberts ("Plaintiff") brought this putative class action against Defendant

4

Wyndham Hotels and Resorts, LLC ("WHR") and proposed defendant Wyndham Hotel Group,

5

LLC (collectively "Defendants"), on behalf of herself and a proposed class of California callers

6

who made hardwired landline, cellular or cordless telephone calls to Defendants between May 1,

7

2011 and March 23, 2012 that were routed to certain call centers operated by Defendants' vendor,

8

Aegis USA, Inc., now known as TPUSA-FHCS, Inc. ("Aegis"), and recorded without notice or

9

consent in violation of California Penal Code §§ 632 and 632.7.[1]  Defendants deny these

10

allegations and do not admit any liability or wrongdoing of any kind.  Nevertheless, Plaintiff and

11

Defendants wish to avoid the further expense and inconvenience of protracted litigation.

12

Plaintiff now seeks the Court's preliminary approval of a proposed class settlement in this

13

action the terms of which are set forth in the Settlement Agreement and Release ("the Settlement

14

Agreement"), a copy of which is attached as **Exhibit 1** to the Grover Declaration.  The Settlement

15

Agreement was reached after Plaintiff and Defendants (the "Parties") engaged in arms-length

16

settlement negotiations through their experienced counsel.[2]  The negotiations included two formal

17

mediation sessions with experienced mediators.[3]  The proposed settlement satisfies all the criteria

18

for preliminary settlement approval under Federal Rule of Civil Procedure ("FRCP") 23 and is

19

fair, reasonable, and adequate.  Defendants do not oppose the motion.

20

The settlement is an excellent result for the proposed Settlement Class Members.  The

21

settlement will result in a cash payment to participating Settlement Class Members on terms that

22

Plaintiff and Settlement Class Counsel believe to be fair, reasonable and adequate.  Defendants

23

are required to pay $7,325,000, referred to as the "Gross Settlement Amount," to settle the

24

25

[1] *See* Declaration of Eric A. Grover submitted in support of the motion for preliminary approval,

26

Ex. 1 (the Settlement Agreement and Release ("Settlement Agreement")).  Hereinafter, all "Ex." references are to the exhibits attached to the Grover Declaration.

27

[2] Grover Decl. at ¶¶ 12, 38.

28

[3] Grover Decl. at ¶ 12; Ex. 1 at ¶ C.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

matter[4] and has no reversionary interest in that amount.[5]  After subtracting out the costs of notice and administration, Settlement Class Counsel's fees and costs, and the Settlement Class Representative's enhancement award, the remaining portion ("the Net Settlement Fund") is estimated to be at least $5,143,750.[6]  Settlement Class Members who file timely and valid claims will receive a payment from the Net Settlement Fund on a pro rata basis depending on how many qualifying calls they made during the relevant period and the number of claims filed.[7]  Unless the $5,000 per call cap is invoked, the entire Net Settlement Fund will be paid to participating Settlement Class Members.[8]  Any residual funds from invocation of the cap and any uncashed settlement checks will be distributed to a selected *cy pres* recipient that provides indirect benefits to the proposed Settlement Class Members and relates to the subject matter of the lawsuit.[9]

Plaintiff respectfully requests that the Court (a) grant preliminary approval of the settlement, (b) conditionally grant certification of the proposed Settlement Class solely for the purposes of settlement, (c) approve the appointment of Rust Consulting as the Claims Administrator, (d) authorize notice pursuant to the proposed notice plan, (e) schedule a final fairness and approval hearing, (f) appoint Joyce Roberts as Settlement Class Representative, and (g) appoint Eric A. Grover and Rachael G. Jung of Keller Grover LLP and Scot D. Bernstein of Law Offices of Scot D. Bernstein, A Professional Corporation as Settlement Class Counsel.

## II.    PROCEDURAL BACKGROUND AND SUMMARY OF CLAIMS

Plaintiff Roberts filed her initial complaint on July 17, 2012 against original defendants Wyndham International, Inc., Wyndham Worldwide Operations, Inc. and Wyndham Hotels and Resorts, LLC in Alameda County Superior Court.[10]  On October 1, 2012, Defendants removed the action to this Court.  On October 17, 2012, the Court ordered this action related to two other

---

[4] Ex. 1 at ¶ 3.1.

[5] Ex. 1 at ¶ 3.8.

[6] Ex. 1 at ¶ 3.4.

[7] Ex. 1 at ¶ 3.5.

[8] Ex. 1 at ¶ 3.5.

[9] Ex. 1 at ¶¶ 3.6, 3.8.

[10] Ex. 1 at ¶ A.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

cases – *Roberts and Simpson v. Wyndham, Int'l, Inc. et al*, Case No. 12-cv-05180-EDL and *Simpson v. Ramada Worldwide, Inc.*, Case No. 12-cv-05029-PSG.  The plaintiffs in the three related actions thereafter voluntarily dismissed the claims against Wyndham International, Inc., Wyndham Worldwide Operations, Inc., and Ramada Worldwide, Inc. on May 15, 2013.  Plaintiff Simpson also dismissed her claims against Wyndham Hotels and Resorts, LLC.[11]

On February 2, 2015, following a contested motion, Plaintiff and Settlement Class Representative Roberts filed the First Amended Complaint.  The FAC alleges unlawful call-recording claims on behalf of California residents who made hardwired landline, cellular or cordless telephone calls to Defendants that were routed to certain call centers operated by Aegis and recorded without notice or consent in violation of California Penal Code §§ 632 and 632.7.

As part of the settlement, the Parties have agreed that Plaintiff will seek the Court's permission to file a Second Amended Complaint adding Wyndham Hotel Group, LLC as an additional named defendant.[12]  In the Second Amended Complaint, Plaintiff alleges unlawful call recording claims on behalf of a putative class of California residents who made hardwired landline, cellular or cordless telephone calls to Defendants that were routed to certain call centers operated by Aegis and recorded without consent in violation of California Penal Code § 632.7.[13]

Defendants have vigorously denied all of the allegations in their entirety.[14]  To date, no class has been certified and no court has made a finding of any wrongdoing on the part of Defendants or that Defendants otherwise acted improperly or in violation of any state law, rule or regulation, with respect to the issues presented in the litigation.[15]

The Parties conducted significant discovery during the litigation.  Plaintiff propounded multiple sets of written discovery and reviewed nearly 4,000 pages of documents that Defendants and Aegis produced.  Plaintiff took five depositions.  Defendants also propounded written

---

[11] Ex. 1 at ¶ A; Grover Decl. at ¶ 6.

[12] Ex. 1 at ¶ A, Exhibit G (the Second Amended Complaint).

[13] Ex. 1 at ¶ A, Exhibit G (the Second Amended Complaint).

[14] Ex. 1 at ¶ D.

[15] Grover Decl. at ¶ 9.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

discovery. Defendants deposed Plaintiff Roberts and deposed two experts named by Plaintiff in connection with class certification.[16]

The Parties also have engaged in substantive motion practice.[17]  Defendants filed a motion to dismiss the original complaint and motions to exclude Plaintiff's expert witnesses.[18]  Plaintiff filed two motions seeking permission to amend the complaint and filed a class certification motion.[19]  Defendant WHR opposed Plaintiff's motion for class certification.[20]

The Parties participated in an initial mediation session in October 2014, which was unsuccessful.  The Parties thereafter continued with discovery and Plaintiff filed a motion for class certification on April 27, 2015.  While awaiting a hearing on the fully briefed class certification motion, motions to exclude experts and Plaintiff's motion to amend the scheduling order to allow for an amendment to the complaint, the Parties agreed to attempt mediation a second time. [21]  On September 1, 2015, the Parties engaged in an all-day mediation session with the Hon. Louis M. Meisinger (Ret.), formerly of the Los Angeles County Superior Court and a former Executive Vice-President and General Counsel of The Walt Disney Company.[22]   In response to a proposal by Judge Meisinger, the Parties reached a tentative agreement several days after the mediation session.[23]  All terms of the Parties' settlement are set forth in the Settlement Agreement.[24]

III.     SUMMARY OF SETTLEMENT TERMS

A.      The Settlement Class.

The Parties agreed that the Settlement Class should be defined as:

---

[16] Ex. 1 at ¶ B; Grover Decl. at ¶ 10.

[17] Ex. 1 at ¶ B; Grover Decl. at ¶ 11.

[18] Grover Decl. at ¶ 11; Dkt. Nos. 8, 78, 79.

[19] Grover Decl. at ¶ 11; Dkt. Nos. 56, 91, 72.

[20] Grover Decl. at ¶ 11; Dkt. 77.

[21] Ex. 1 at ¶ C; Grover Decl. at ¶ 12.

[22] Ex. 1 at ¶ C; Grover Decl. at ¶ 12

[23] Ex. 1 at ¶ C.

[24] Ex. 1; Grover Decl. at ¶ 12.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

> All natural persons who were California residents and who, while physically located in California: placed a call to one of Defendants' toll free telephone numbers at any time during the period from May 1, 2011 through March 23, 2012, inclusive; were routed to an Aegis-operated call center; spoke with a representative; and did not receive notice that their call was being recorded.[25]

Excluded from the Settlement Class are (1) all calls to Howard Johnson toll free telephone numbers during the Class Period (May 1, 2011 through March 23, 2012), which calls are covered by the settlement in *Stone v. Howard Johnson International, Inc.*, USDC CD CA Case No. 12-CV-01684 PSG (MANx), and (2) persons who validly opt out of the settlement.[26]

Based on a review of call center records, Defendants estimate that the Aegis-operated call centers received approximately 185,000 calls from 115,770 unique telephone numbers with California Area Codes during the Class Period.[27]

**B.    The Common Fund.**

The settlement provides that Defendants will fund the Gross Settlement Amount in the amount of $7,325,000 to resolve the claims covered by the settlement.[28] After subtracting out approximately $275,000 to pay the costs of notice and administration, the amounts allocated to the fees and costs of Settlement Class Counsel (fees not to exceed $1,831,250 plus actual out-of-pocket costs, which are currently estimated not to exceed $60,000), and the Settlement Class Representative enhancement award (not to exceed $15,000), the remaining funds, referred to as the Net Settlement Fund, will be available for distribution in full to the Settlement Class Members who file timely and valid claims.[29] The Net Settlement Fund is estimated to be $5,153,750.[30] Defendants do not have any revisionary interest in the Gross Settlement Amount.[31]

**C.    Payments to Settlement Class Members.**

---

[25] Ex. 1 at ¶ 1(h); Grover Decl. at ¶ 13.

[26] Ex. 1 at ¶ 1(h).

[27] Ex. 1 at ¶¶ 1(h), 3.5, 6.1.

[28] Ex. 1 at ¶ 3.1.

[29] Ex. 1 at ¶ 3.4; Grover Decl. at ¶ 19.

[30] Ex. 1 at ¶ 3.4; Grover Decl. at ¶ 19.

[31] Ex. 1 at ¶ 3.8; Grover Decl. at ¶ 19.

The Settlement Agreement provides that Settlement Class Members may submit claims forms by mail or online.[32]  Each Settlement Class Member who submits a valid and timely claim will receive a settlement payment based on the number of qualifying calls that person made and a *per call* value determined by the formula set forth in the Settlement Agreement.[33]  The *per call* value is determined by dividing the Net Settlement Fund by the aggregate number of Recorded Calls,[34] which Defendants estimate to be approximately 185,000, made by Settlement Class Members who submit valid and timely Claim Forms.[35]  The resulting quotient, determined in dollars and cents, then shall be multiplied by the number of Recorded Calls made by or otherwise attributable to each Settlement Class Member who submits a valid and timely Claim Form to determine the amount of the settlement payment each Authorized Claimant shall receive.[36]

By way of example, if the Net Settlement Fund equals $5,143,750.00 and the aggregate number of Recorded Calls made by Settlement Class Members who submit valid and timely Claim Forms is 18,500, the per call settlement payment value would be $278.04.  In this example, if a Settlement Class Member who submits valid and timely Claim Form had made 10 qualifying calls, the Settlement Class Member would receive a settlement payment in the amount of $2,780.40 (10 qualifying calls x $278.04).[37]  No Settlement Class Member shall receive more than $5,000 per qualifying call.

The allocation of the Net Settlement Fund amongst participating Class Members is fair given the claims alleged and in comparison to numerous other settlements of similar claims.  As

---

[32] Ex. 1 at ¶¶ 3.5,  7.1, Settlement Agreement Exhibit A (Claim Form).

[33] Ex. 1 at ¶ 3.5.

[34] The Settlement Agreement defines "Recorded Calls" as every call routed through Defendants' and their agent Aegis' recording software at the Aegis-operated call centers during the Class Period.  Excluding calls to Howard Johnson toll free telephone numbers, Defendants have determined that approximately 185,000 of the calls routed through the recording software during the Class Period were made by telephone numbers with a California Area Code.  These Recorded Calls were made by approximately 115,770 unique telephone numbers with a California Area Code. Ex. 1 at ¶ 3.5.

[35] Ex. 1 at ¶ 3.5.

[36] Ex. 1 at ¶ 3.5; Grover Decl. at ¶ 20.

[37] Ex. 1 at ¶ 3.5; Grover Decl. at ¶ 20.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

detailed at length in paragraph 17 of the Grover Declaration, when compared in per capita terms, the proposed settlement in this action compares favorably against ten telephone recording settlements that received final approval.[38]  The "per capita" settlement amount here is estimated at $63.27 per Settlement Class Member, compared to between $0.75 and $30 in the other call recording settlements.   The recovery for participating Settlement Class Members through settlement at this juncture is reasonable and fair when compared against these other settlements.

### D.    The settlement's release provision.

The settlement provides that Settlement Class Members who do not opt out will release certain call-recording claims against Defendants.  The scope of the Released Claims is set forth in Section 11 of the Settlement Agreement.  To summarize, the settlement provides that Settlement Class Members who do not opt out will release all claims against Defendants that were or reasonably could have been asserted based on the factual allegations contained in the operative complaint, or that relate to or arise out of the alleged recording, monitoring, or eavesdropping upon telephone calls made to Defendants prior to March 24, 2012, the last day of the Class Period.[39]  The Released Claims include claims under California Penal Code §§ 631, 632, 632.7, and 637.2 as well as any California or federal law prohibiting or regulating the monitoring, recording or eavesdropping on telephonic calls.[40]  The Released Claims are aligned closely with the class claims and the underlying factual allegations alleged in the operative complaint.[41]

### E.    The notice program.

The settlement provides for a robust settlement notice program that explains in plain language the nature of the lawsuit, the terms of the settlement, Settlement Class Members' rights, and the steps necessary to make a claim for payment under, request exclusion from, or object to, the settlement.[42]  The Parties agreed upon a notice procedure that includes notification by U.S.

---

[38] Grover Decl. at ¶ 17.

[39] Ex. 1 at ¶ 11.

[40] Ex. 1 at ¶ 11.1.

[41] *See* Ex. 1 at ¶ 11.1, Settlement Agreement Exhibit G.

[42] *See* Ex. 1 at ¶¶ 6.1-6.9, and Settlement Agreement Exhibits C, D, E and F (proposed Settlement Class Notice Postcard, Settlement Class Email Notice, Publication Notice and Press Release).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

mail, email, an online banner ad program, Facebook ads, publication on Top Class Actions.com and in the California edition of Parade Magazine and certain designated local publications throughout California, a press release, and a Settlement Website.[43]

The Settlement Agreement provides that, excluding telephone numbers associated with their franchised hotels, Defendants shall compile a list of the unique telephone numbers associated with each telephone call made to Defendants' toll free telephone numbers (excluding calls to Howard Johnson toll free telephone numbers) from a California Area Code during the Class Period that was captured by the call recording software at the Aegis-operated call centers. Defendants then will cross-reference that list of unique telephone numbers, which is estimated to be approximately 115,770, through their customer-related databases and search for names, mailing addresses, additional telephone numbers associated with the list.     Additionally, Defendants will determine the number of telephone calls that each of these unique telephone numbers made to Defendants' toll free telephone numbers (excluding calls to Howard Johnson toll free telephone numbers) that was captured by the call-recording software at the Aegis-operated call centers during the Class Period.  All of the information collected by Defendants, taken in total, shall be referred to as the Potential Class Member Contact List.[44]

Not later than 45 days after the Court enters its order preliminarily approving the settlement, Defendants will provide the Potential Class Member List to Rust Consulting, the Claims Administrator.  Rust Consulting will run reverse directory searches on the phone numbers that Defendants provides in order to obtain the names and/or mailing addresses associated with each telephone number for which no name or mailing address was provided, and will confirm all mailing addresses.  Rust Consulting will also run all of the addresses though the National Change of Address or comparable database before mailing the Settlement Class Notice Postcard.[45]

Not later than 75 calendar days after the Court enters an order granting preliminary approval, Rust Consulting will mail the Settlement Class Notice Postcard to each Settlement

---

[43] Ex. 1 at ¶¶ 4.1, 6.1-6.9.

[44] Ex. 1 at ¶ 6.1.

[45] Ex. 1 at ¶ 6.2; Grover Decl. at ¶ 29.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

Class Member with an identified mailing address[46] and email the Settlement Class Email Notice to each Settlement Class Member with an identified email address.[47]

In addition, not later than 50 calendar days after the Court enters the preliminary approval order, Rust Consulting will publish a website on the internet at the URL www.CARecordedCallsSettlement.com (or a similar name if that one is not available) ("Settlement Website") that will provide a summary a summary of the terms of the settlement, state the means by which Settlement Class Members may communicate with the Claims Administrator (including but not limited to the Claims Administrator's business name, address, telephone number, and e-mail address), and contain a set of Frequently Asked Questions and corresponding answers, instructions on how to submit a Claim Form (both electronically and by mail) and the deadline associated therewith, instructions on how to object and opt out of the settlement and the deadlines associated therewith. The Settlement Website also shall provide, free of charge, a viewable, printable and downloadable copy, in PDF file format, of each of the following documents: this Agreement; the Second Amended Complaint; the Answer to the Second Amended Complaint; the Court's order preliminarily approving the Class Action Settlement and certifying the Settlement Class; the Claim Form (Settlement Agreement, Exhibit A); the Long-form Settlement Class Notice (Settlement Agreement, Exhibit B); the Motion for an award of attorney's fees, litigation costs, administration costs, and the Settlement Class Representative's enhancement award, and the Motion for final approval. The Settlement Website shall remain active for 180 calendar days after the Settlement Effective Date.[48]

Additionally, 50 calendar days after the entry of the preliminarily approval order, Rust Consulting, in conjunction with Kinsella Media, LLC, will initiate an on-line Facebook and banner advertising campaign that will continue for 115 days. The online program, targeted to

---

[46] Ex. 1 at ¶ 6.3, Settlement Agreement Exhibit C (Settlement Class Notice Postcard).

[47] Ex. 1 at ¶ 6.3, Settlement Agreement Exhibit D (Settlement Class Email Notice).

[48] Ex. 1 at ¶ 6.5, Settlement Agreement Exhibits A (Claim Form) and B (Long-form Settlement Class Notice).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

reach adults in California, will appear across numerous websites of diverse interests and contact that are part of the *Advertsing.com* network and Facebook. The banner and Facebook ads will include a live link to the Settlement Website. [49] Filed herewith is a Declaration from Alicia Gehring of Kinsella Media explaining the media portion of the proposed notice program.[50]

Between 75 and 90 days after the entry of the preliminarily approval order, Kinsella Media will cause the Publication Notice to be published in the following publications, which are distributed throughout the counties of San Francisco, Alameda, Santa Clara, Monterey, Los Angeles, Orange, and San Diego: *San Francisco Weekly, East Bay Express, Metro Silicon Valley, Bay Area Report, Monterey County Weekly, San Diego Reader, Orange County Weekly,* and *LA Weekly.*[51] Also, between 75 and 90 days after entry of the Court's order preliminarily approving the Class Action Settlement, Kinsella Media shall cause the Publication Notice to be published in Parade Magazine's California edition.[52]

As explained in the Gehring Declaration, in combination with direct mail and email efforts, the paid media program will reach an estimated 70% of California adults age 18 and over an average of 1.6 times each. Kinsella Media also will issue a press release and ensure that notice of the settlement is posted on Top Class Actions.com.[53]

**F.    Settlement Class Members may file a claim, opt out or object.**

All proposed Settlement Class Members will have the opportunity to file a claim form to participate in the settlement, request exclusion from the settlement, or object to the settlement terms.[54] Settlement Class Members will have 90 days from the date that Rust Consulting first sends the email and postcard notices to electronically submit an online claim form, postmark a claim form, submit an opt-out request, or file and serve an objection.[55]

---

[49] Ex. 1 at ¶¶ 6.5, 6.6; Grover Decl. at ¶ 33.

[50] *See* Declaration of Alicia Gehring of Kinsella Media, LLC ("Gehring Decl.").

[51] Ex. 1 at ¶ 6.7, Settlement Agreement Exhibit E (Publication Notice).

[52] Ex. 1 at ¶ 6.7, Settlement Agreement Exhibit E (Publication Notice).

[53] Ex. 1 at ¶ 6.6, Settlement Agreement Exhibit F (press release); Gehring Decl. at ¶ 11.

[54] Ex. 1 at ¶¶ 7.3, 8.1 and 8.3, Settlement Agreement Exhibit A (Claim Form).

[55] Ex. 1 at ¶¶ 7.1, 7.3, 8.1 and 8.3.

**G.     The settlement provides reasonable enhancement for the Settlement Class Representative.**

The settlement provides a reasonable enhancement for the named Plaintiff to compensate her for the risks she incurred and the time and effort she expended in coming forward to provide information in support of the claims based on the privacy violations alleged in the complaint.[56] Subject to the Court's approval, the settlement provides that a reasonable enhancement of not more than $15,000 to Plaintiff Roberts.[57]   With the motion for attorneys' fees and litigation expenses, Plaintiff will submit a declaration detailing the time and effort she put in to this case.[58]

**H.     Attorneys' fees and costs.**

The settlement provides that, in connection with final approval, Settlement Class Counsel may seek an award of attorneys' fees of no more than $1,831,250, which is 25% of the Gross Settlement Amount, and actual out-of-pocket costs, which are estimated not to exceed $60,000.[59] Defendants may not oppose Class Counsel's fee and requests if they do not exceed those amounts, and will not oppose the cost application that will be submitted prior to the objection deadline, should the Court preliminarily approve the settlement.[60]

The Ninth Circuit's 25% "benchmark" fee request is reasonable given that Class Counsel conducted significant discovery and engaged in substantive motion practice, including fully briefing the class certification motion and opposing Defendants' motions to exclude Plaintiff's experts.   Class Counsel also engaged in extensive settlement negotiations that resulted in resolution of this matter before trial and provides significant monetary payments to those Settlement Class Members who file timely and valid claims.[61]

**I.     Costs of notice and administering the settlement.**

---

[56] Ex. 1 at ¶ 3.3; *see also*, Grover Decl. at ¶¶ 47-48.

[57] Ex. 1 at ¶ 3.3.

[58] Grover Decl. at ¶ 49.

[59] Ex. 1 at ¶ 3.2.  Plaintiffs will file a motion seeking an award of fees and costs no later than 15 days before the deadline for objections to the settlement.  Grover Decl. at ¶ 50; Ex. 1 at ¶ 15.

[60] Ex. 1 at ¶ 3.2.

[61] *See* Grover Decl. at ¶¶ 10-12.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

Subject to the Court's approval, the Settlement Agreement also allocates approximately $275,000 of the Gross Settlement Amount for the Claims Administrator's costs of providing notice to the proposed Settlement Class and administering the settlement.[62]  The administration costs are reasonable given the large number of potential Settlement Class Members and the substantial notice procedures involved in this settlement.  The anticipated cost of notice and administration represents only 4.3% of the Gross Settlement Amount.

> **J.      The selected *cy pres* recipient of any residual funds.**

The *cy pres* doctrine allows for unclaimed or non-distributable portions of a class action settlement fund to be distributed in a manner that still indirectly benefits the class.[63]  Unclaimed settlement funds should be put to their "next best use" in light of "the purposes of the underlying lawsuit or the class of plaintiffs involved."[64]

Here, the Parties have agreed that if the payments for Settlement Class Members' claims do not exhaust the Net Settlement Fund, any remaining amount (as well as the funds represented by any uncashed settlement checks) will be paid to the Parties' selected *cy pres* beneficiary, Privacy Rights Clearinghouse, subject to the Court's approval.[65]  The selected *cy pres* recipient relates to the subject matter of the lawsuit and the class members.[66]  Privacy Rights Clearinghouse is a California nonprofit whose "mission is to engage, educate and empower individuals to protect their privacy."[67]  The organization works to raise consumer awareness of how technology affects personal privacy and empowers consumers to take action to protect their

---

[62] Ex. 1 at ¶ 3.4.

[63] *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038-39 (9th Cir. 2011); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1306-07 (9th Cir.1990).

[64] *Nachshin*, 663 F.3d at 1038-39; *see also*, *Six Mexican Workers*, 904 F.2d at 1306-07.

[65] Ex. 1 at ¶¶ 3.6, 3.8, 10.1; Grover Decl. at ¶ 21.  Further information is available on Privacy Rights Clearinghouse's website for additional information: http://www.privacyrights.org.

[66] *See Nachshin*, 663 F.3d at 1038-39.

[67] *See* Privacy Rights Clearinghouse's website: http://www.privacyrights.org.

---

own personal information by providing tips on privacy protection.[68]  A donation to the selected *cy pres* recipient will serve as the "next best use" of any residual settlement funds.[69]

## IV.   LEGAL ANALYSIS

### A.   Preliminary approval of the class action settlement is appropriate under Federal Rules of Civil Procedure Rule 23.

A class action may not be dismissed, compromised or settled without the Court's approval.[70]  Proper review and approval of a class action settlement requires three steps:  (1) preliminary approval of the proposed settlement after submission of a written motion; (2) dissemination of mailed and/or published notice of the settlement to all class members; and (3) a formal fairness hearing, or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.[71]  The decision to approve or reject a proposed settlement is committed to the sound discretion of the court.[72]

FRCP 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval:  (1) that the settlement class meets the requirements for class certification if it has not yet been certified;[73] and (2) that the settlement is fair, reasonable, and adequate.[74]  Here, both of those are satisfied.[75]

### B.   The Settlement Class satisfies Federal Rule of Civil Procedure 23 for conditional certification.

Rule 23(a) sets out four prerequisites for class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.[76]   Further, Rule 23(b)(3)

---

[68] *See id.*; Grover Decl. at ¶ 21,

[69] *See Nachshin*, 663 F.3d at 1038-39.

[70] *See* Fed. R. Civ. P. 23(e).

[71] *Manual for Complex Litigation* (4th ed. 2004), § 21.61.

[72] *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

[73] Fed. R. Civ. P. 23(a).

[74] Fed. R. Civ. P. 23(e)(2).

[75] *See* Ex. 1.

[76] Fed. R. Civ. P. 23(a)(1)-(4).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

provides that a class action seeking monetary relief may be maintained only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[77] All of the requirements are met here.[78]

### 1. FRCP 23(a) class certification requirements are satisfied.

#### a) The Proposed Settlement Class is ascertainable and too numerous to make joinder practicable.

The numerosity prerequisite demands that the class be large enough that joinder of all members would be impracticable.[79] While there is no exact numerical cut-off, courts have routinely found numerosity satisfied with classes of at least 40 members.[80]

Defendants estimate that approximately 115,770 individuals used telephones with a California Area Code during the Class Period and had their call directed to an Aegis-operated call center.[81] Thus, in addition to being ascertainable, the proposed Settlement Class is sufficiently numerous to warrant certification.

#### b) Questions of law and fact common to members of the Settlement Class satisfy commonality.

The commonality prerequisite for class certification concerns the existence of questions of law and/or fact common to the class and is "construed permissively."[82] To satisfy the commonality requirement of Rule 23(a), the plaintiff must assert at least one common contention that is capable of class-wide resolution.[83]

---

[77] Fed. R. Civ. P. 23(b)(3).

[78] For purposes of settlement approval only, Defendants have agreed to the certification of the proposed class and appointment of the proposed class representatives and Class Counsel. Ex. 1 at ¶ 2.4.

[79] Fed. R. Civ. P. 23(a)(1).

[80] *See e.g.*, *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) (40 class members satisfies numerosity); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006) (same).

[81] Ex. 1 at ¶¶ 6.1; Grover Decl. at ¶¶ 42-43.

[82] *Hanlon* 150 F.3d at 1019.

[83] *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

Here, the proposed Settlement Class Members' claims all stem from a common set of circumstances.  All of the proposed Settlement Class Members made calls to one of Defendants' toll-free customer service telephone numbers from a telephone while located in California during the relevant time period.  Plaintiff contends that all proposed Settlement Class Members were subject to call recording policies and practices that applied to all calls routed to an Aegis-operated call center.  Whether Defendants' uniform practices and policies violated Penal Code §§ 632 and 632.7 creates questions of law and fact common to all Settlement Class Members.  All Settlement Class Members seek the same legal remedies under Penal Code §637.2.[84]

Under these circumstances, the requirement that common questions of law and/or fact exist among the proposed Settlement Class Members is satisfied for purposes of certifying the proposed class for settlement.[85]

### c)   The Proposed Settlement Class Representative's claims are typical of the Settlement Class Members' claims.

The typicality prerequisite of Rule 23(a) is met if the named plaintiff's claims "are reasonably co-extensive with those of absent class members; they need not be substantially identical."[86]  In this case, Plaintiff Roberts, the proposed Settlement Class Representative, like all of the proposed Settlement Class Members, made calls during the Class Period to certain one or more of Defendants' toll-free customer-service lines from a telephone while located in California, reached a representative of Defendant, and had their calls recorded, allegedly without their consent.[87]  Thus, the Named Plaintiff's claims arise from the same course of conduct from which the Settlement Class Members' claims arise.[88]

---

[84] Grover Decl. at ¶ 44.

[85] *Id.*

[86] *Hanlon*, 150 F.3d at 1020.

[87] *See* Settlement Agreement Exhibit G (proposed Second Amended Complaint).

[88] Grover Decl. at ¶ 45.

1

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

### d)   The Proposed Settlement Class Representatives will adequately represent the Settlement Class.

The adequacy prerequisite permits class certification if the "representative parties will fairly and adequately protect the interests of the class."[89]   This means that proposed class representatives and their counsel cannot have conflicts of interest with the class and must vigorously prosecute the action on behalf of the class.[90]   Neither Plaintiff nor any of her Counsel has a conflict with any Settlement Class Member.

The Named Plaintiff has also demonstrated that she will aggressively and competently assert the interests of the proposed Settlement Class Members.   Plaintiff has retained competent counsel, experienced in litigating class action claims, including those in the context of alleged violations of the California Invasion of Privacy Act, Penal Code §§ 630, *et seq.*[91]

### 2.   FRCP 23(b)(3) Requirements for Class Certification are Satisfied

Under Rule 23(b)(3), Plaintiff must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating controversy."   This analysis focuses on "the relationship between the common and individual issues" and "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[92]   In other words, courts must determine whether the focus of the proposed class action will be on the actions and conduct of the defendants rather than the behavior of individual class members.[93]

Here, the common questions predominate over any individual questions.   If the class were certified and the action proceeded to trial, resolution of the putative class members' claims would be determined by key common questions, such as whether Defendants had policies and practices of recording and/or monitoring, without the knowledge and consent of callers, telephone calls to Defendants' call centers.   These uniform policies and practices are at the core of Plaintiff's

---

[89] Fed. R. Civ. P. 23(a)(4).

[90] *Hanlon*, 150 F.3d at 1020.

[91] *See* Grover Decl. at ¶¶ 1-4, 14, 46; Declaration of Scot D. Bernstein at ¶ 2, Ex. 1.

[92] *Hanlon*, 150 F.3d at 1020; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

[93] *Hanlon*, 150 F.3d at 1022-23.

allegations that California Penal Code §§ 632 and 632.7 was violated. Thus, they would determine liability to the Class and, therefore, would predominate over any potential individualized issues.

Further, class action procedure is superior to a multitude of individual suits. To determine whether the class approach is superior, courts consider: (1) the interest of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability of concentrating the litigation in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action.[94]  Here, a class action device is preferable because the Class Members do not have a strong interest in controlling their individual claims.  Indeed the individual prosecution of the claims, if it were to occur, would be identical to and duplicative of the class action litigation.  The use of the class action mechanism here also would efficiently resolve numerous identical claims at the same time while avoiding waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation.  Although manageability is not a concern in the settlement context,[95] Plaintiff is unaware of any issues that would render unmanageable the adjudication of Plaintiff's class claims if the case were to proceed to trial.  Accordingly, the class action is the superior method for adjudication the claims in this action.

**C.    The settlement is fair and reasonable and not the result of fraud or collusion.**

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate."[96]  In exercising their sound discretion to approve settlements, courts regularly consider whether the settlement is fair, non-collusive, and "reflects all the normal perils of litigation as well as the additional uncertainties

---

[94] Fed. R. Civ. P. 23(b)(3)(A)-(D).

[95] *Amchem*, 521 U.S. at 593 ("Whether trial would present intractable management problems, *see* Rule 23(b)(3)(D), is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial.").

[96] Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

inherent in complex class actions."[97]  Included in this analysis are considerations of "(1) the strength of the Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence or absence of a governmental participant; and (8) the reaction of the class members to the proposed settlement."[98]

Importantly, there is a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining."[99]  There also is "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."[100]  Applying these factors to this case, the proposed settlement is fair, reasonable, and adequate.

3. The settlement amount is a fair compromise in light of the litigation risks and uncertainties.

The monetary value of the proposed Settlement to class members represents a fair compromise given the litigation risks and uncertainties presented by continued litigation. Defendants have asserted and would have continued to assert legal and factual grounds to defend against this action.[101]  Additionally, Defendants adamantly dispute Plaintiff's ability to certify a class and prove liability to the class for their call recording and monitoring practices. Specifically, Defendants argue that numerous individualized issues exist, including which callers called their toll-free phone numbers, the callers' residency, their location at the time of the call, which calls were made from hardwired and cordless telephones, whether a particular call was recorded, whether the caller consented to the recording, and what type of device was used to answer the call.[102]  While Plaintiff and her Counsel disagree and believe that the claims can be successfully proved on a class-wide basis through a combination of company records testimony,

---

[97] *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 179-80 (5th Cir. 1979).

[98] *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) citing *Hanlon*, 150 F.3d at 1026.

[99] *Wren v. RGIS Inventory Specialists*, No. C–06–05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. April 1, 2011).

[100] *In re Syncor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008).

[101] Grover Decl. at ¶¶ 15-16.

[102] Docket No. 88; Grover Decl. at ¶ 16.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

expert witnesses, and representative class member testimony, they recognize that such procedures raise complicated proof issues and commensurate risks. Defendants also raised numerous defenses to the merits of the claims, arguing, for example, that Section 632.7 does not apply to calls answered by VoIP devices or computers, the California Invasion Privacy Act exempts call recording done for "service observing" purposes, and a class-wide damage award would violate the Due Process Clause.[103] Accordingly, there is a risk that the Court could deny class certification or, following initial certification, subsequently decertify the class based on unanticipated individualized issues or manageability concerns. Were a class not certified, it is unlikely that many Settlement Class Members would maintain an individual action.[104]

Therefore, absent settlement, Plaintiff's Counsel acknowledges that there would be a continued vigorous challenge to both class certification and the merits of Plaintiff's claims. While Plaintiff's Counsel remains confident that Plaintiff would certify a litigation class and prevail on the class claims, continued litigation would be costly, time consuming, and uncertain. Plaintiff still would have to prevail on the pending class certification motion, defeat Defendants' motions regarding their experts, prevail on the motion to alter the scheduling order and amend the complaint. Plaintiff also still would be required to establish class-wide liability, and then prove up various issues regarding damages. Those efforts likely would take years, would require expert testimony and would impose other costs, risks, and potential delays on the putative class. Appellate proceedings could further delay and jeopardize recovery. By contrast, the settlement ensures timely relief and substantial recovery to the proposed Settlement Class.

Moreover, it is well established that settlement offers that constitute a fraction of the *potential* recovery do not preclude a court from finding that the settlement offer is fair.[105] District courts have found that settlements for substantially less than the plaintiff's claimed damages were

---

[103] Docket No. 91-1; Grover Decl. at ¶ 15.

[104] *See* Grover Decl. at ¶¶ 14, 39.

[105] *See Hanlon*, 150 F.3d at 1027; *Officers of Justice*, 688 F.2d at 628.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

fair and reasonable, especially when taking into account the uncertainties, risks and delay involved in litigation.[106]

In addition, when compared in absolute terms, the proposed settlement in this action compares favorably against 10 recent phone recording settlements that received final approval.[107]

1. In *Skurov. BMW of North America, LLC,* USDC CD Cal. Case No. 10-cv-8672 GW, the settlement involved 40,000 class members and gave them the option of selecting a six month extension of the BMW Assist basic safety plan or making a cash claim.  If all class members selected the cash option, the per capita value of the cash option would be $7.50 ($300,000/40,000 class members).

2. In *Marenco v. Visa Inc.,* USDC CD Cal. Case No. 10-cv-8022 DMG, the court approved an $18,000,000 settlement for a class that numbered 600,000.  Thus, the per capita monetary recovery in that case was $30 per class member ($18,000,000/600,000 class members).

3. *Batmanghelich v. Sirius XM Radio, Inc.,* USDC CD Cal. Case No. 09-cv-9190 VBF settled for $9,480,000.  The class size exceeded 1,700,000.  At 1,700,000 class members, the per capita monetary recovery in that case was $5.77 per class member ($9,480,000/1,700,000 class members).

4. In *Greenberg v. E-Trade Financial Corporation,* Los Angeles County Superior Court Case No. BC360152, the court approved a $7,500,000 settlement covering as many as 1,400,000 class members, which resulting in a per capita monetary recovery of $5.38 per class member ($7,500,000/1,000,000 class members).

5.  In *Nader v. Capital One Bank (USA), N.A.,* USDC CD Cal. Case No. 2:12-cv-01265-DSF, the court approved a settlement of $3,000,000 for 1,100,000 class

---

[106] *See e.g., Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) *aff'd*, 331 F. App'x 452 (9th Cir. 2009).

[107] Grover Decl. at ¶ 17.  By "per capita terms," Plaintiffs are referring to a comparison of the maximum settlement amount divided by the total number potential class members.

members, equating to a per capita recovery of $2.73 per class member ($3,000,000/1,100,000 class members).

6.  In *Cohorst v. BRE Properties, Inc. et al.,* USDC SD Cal. Case No. 10-cv-2666, the court approved a $5,500,000 settlement covering as many as 1,170,584 class members.  In per capita terms, recovery in that case amounted to approximately $4.70 per potential class member ($5,500,000/1,170,584 potential class members).

7.  In *Knell v. FIA Card Services,* USDC SD Cal. Case No. 12-CV-00426-AJB-WVG, the court approved a $2,750,000 settlement covering 3,650,000 class members.  This resulted in a per capita recovery of $0.75 per class member ($2,750,000/3,650,000 class members).

8.  *Hoffman v. Bank of America,* USDC SD Cal. Case No. 3:12-cv-00539-JAH-DHB, settled for $2,600,000.  The class size exceeded 1,400,000.  At 1,400,000 class members, the per capita monetary recovery in that case was $1.86 per class member ($2,600,000/1,400,000 class members).

9.  In *Mount v. Wells Fargo,* Los Angeles Superior Court Case No. BC395959, the court approved a $5,600,000 settlement covering as many as 600,000 class members.  In per capita terms, recovery in that case amounted to approximately $9.33 per class member ($5,600,000/600,000 class members).

10.  *McCabe v. Six Continents Hotels, Inc.,* USDC ND Cal. Case 3:12-cv-04818-NC settled for $11,700,000.  The class size was 698,000, making the per capita recovery $16.76 per class member ($11,700,000/698,000 class members).[108]

Here, the settlement provides that Defendants will pay a total settlement amount of $7,325,000 to resolve all claims covered by the settlement.[109]  Given the estimated approximately 115,770 potential class members, the per capita value of this settlement is per $63.27 per potential class member ($7,325,000/115,770).[110]  If *every* Settlement Class Member filed a timely and

---

[108] Grover Decl. at ¶ 17.

[109] Ex. 1 at ¶ 3.1.

[110] Grover Decl. at ¶ 17.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

valid claim, each would receive an average of $44.43.[111]  At a strong 10% claims rate, each Settlement Class Member who filed a timely and valid claim would receive an average of $444.30.  In light of the risks, uncertainties, and delays of continued and potentially protracted litigation, these recovery amounts are fair, reasonable, and adequate.[112]

Despite the asserted fairness of the settlement terms, any proposed Settlement Class Member has the right to submit a request for exclusion from the settlement.  A Settlement Class Member who does so will retain any claim he or she may have had against Defendants.[113] Moreover, Settlement Class Members who do not opt out may, upon providing proper notice to the Parties and the Court, attend the final fairness and approval hearing for the purposes of objecting to one or more of the settlement terms set forth in the Settlement Agreement.[114]

4.  Sufficient formal and informal discovery allowed Plaintiff's Counsel to calculate class damages and make informed decisions regarding settlement.

The Parties conducted significant formal discovery and exchanged additional informal discovery both before and after the two mediation sessions.[115]  Defendants produced responses to Plaintiff's multiple sets of written discovery and produced over 4,000 pages of relevant documents produced by Defendants and Aegis.  Plaintiff took five depositions.  Defendants also propounded written discovery, deposed Plaintiff Roberts and deposed two experts named by Plaintiff in connection with class certification.[116]  The Parties also exchanged their respective legal theories and supporting evidence in the briefing of the class certification, motions to strike expert testimony and motions seeking to amend the complaint.[117]  The information exchanged through formal and informal discovery and the motion practice permitted Plaintiff to evaluate the

---

[111] $5,143,750 estimated Net Settlement Fund/115,770 Settlement Class Members.

[112] Grover Decl. at ¶¶ 14-16, 39.

[113] Ex. 1 at ¶ 8.1.

[114] Ex. 1 at ¶ 8.3.

[115] Grover Decl. at ¶¶ 10-12; Ex. 1 at ¶ B.

[116] Ex. 1 at ¶ B; Grover Decl. at ¶ 10.

[117] Ex. 1 at ¶ B; Grover Decl. at ¶ 11.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

strengths and weaknesses of the class claims and negotiate a fair, reasonable, and adequate settlement.[118]

> 5. The settlement was the product of informed, non-collusive, and arms-length negotiations between experienced counsel who jointly support the settlement.

Courts routinely presume a settlement to be fair where it is reached through arm's-length bargaining.[119]  Furthermore, where counsel are well-qualified to represent the proposed class in a settlement based on their extensive class action experience and familiarity with the strengths and weakness of the action, courts find this factor to support a finding of fairness.[120]

This settlement was a product of non-collusive, arm's-length negotiations.  The Parties engaged in two mediation sessions, first with the Hon. John Leo Wagner (Ret.) and later with the Hon. Louis M. Meisinger (Ret.), and continued negotiations with Judge Meisinger's assistance, after the second mediation until an agreement was reached.[121]  Moreover, the Parties are represented by skilled and experienced counsel who have extensive background litigating and settling complex litigation, including litigating similar privacy class actions.[122]  All of these factors support a finding that the settlement is fair, reasonable, and adequate.

> 6. The proposed notice and claims process are reasonable.

In order to protect the rights of absent class members, courts must ensure that the settlement class members receive the best notice practicable under the circumstances of the

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

---

[118] Grover Decl. at ¶¶ 10-12, 36-38; *see Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("approval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases"); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 617 (N.D. Cal. 1979).

[119] *See Hanlon*, 150 F.3d at 1027 (affirming trial court's approval of class action settlement where parties reached agreement after several months of negotiation and the record contained no evidence of collusion); *Wren*, 2011 WL 1230826, at *14 (finding that settlement reached after two mediation sessions before an experienced and retired judge was reached in a "procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel"); *see also Satchell v. FedEx. Corp.*, No. C 03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (same); *Carter v. Anderson Merchandisers, LP*, No. EDCV 07-0025-VAP, 2010 WL 1946784, at *7 (C.D. Cal. May 11, 2010) (citing *Satchell*).

[120] *Wren*, 2011 WL 1230826, at *10; *Carter*, 2010 WL 1946784, at *8 ("Counsel's opinion is accorded considerable weight.").

[121] Grover Decl. at ¶¶ 12, 37.

[122] Grover Decl. at ¶¶ 2-4, 14, 46; Bernstein Decl. at ¶ 2, Ex. 1.

case.[123]   Procedural due process requires that affected parties have the right to be heard at a meaningful time and in a meaningful manner.  It does not guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[124]

Here, the settlement provides a fair notice procedure that includes (1) email notification, (2) U.S. mail notification via postcard, (3) a settlement website published on the Internet, (4) an on-line banner and Facebook advertising program, (5) newspaper and magazine publication, (6) publication through TopClassAction.com, and (7) a press release.[125]  This multifaceted procedure will maximize the number of Settlement Class Members who will receive the Settlement Class Notice.[126]  The proposed notice campaign is designed to reach 70% of adults over the age of 18 who reside in California[127]

Accordingly, the proposed notice program complies with the standards of fairness, completeness, and neutrality required of a settlement notice disseminated under authority of the Court.

7.   Plaintiff will submit a separate application for the requested attorneys' fees, costs, and expenses.

Under the Settlement Agreement, Plaintiff's Counsel will not seek more than 25% of the $7,325,000 non-reversionary Gross Settlement Amount (*i.e.*, no more than $1,831,250) in fees and actual out-of-pocket expenses, which are estimated not to exceed $60,000.[128]  Plaintiff's Counsel will file a motion for reasonable attorneys' fees, costs, and expenses at least 15 days prior to the opt-out/objection deadline so that Settlement Class Members will have an opportunity to inspect the fee application prior to the deadline for submitting objections or requests for

---

[123] *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974).

[124] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

[125] Ex. 1 at ¶¶ 6.1-6.7, Settlement Agreement Exhibits B, C, D, E and F.

[126] Ex. 1 at ¶¶ 6.1-6.7.

[127] Ex. 1 at ¶ 6.8; Grover Decl. at ¶ 36.

[128] Ex. 1 at ¶ 3.2; Grover Decl. at ¶ 19.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

exclusion.[129]   At this point, Plaintiff does not seek approval of the fees/costs provision, but asks only that the Court include the maximum potential fee request in the class notice so that the Settlement Class can be informed of the provision.

        8.   <u>The settlement provides a reasonable service award for the Settlement Class Representative.</u>

     Named plaintiffs in class action litigation are eligible for reasonable service awards.[130]  "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."[131]   The factors courts use in determining the amount of service awards include: (1) a comparison between the service awards and the range of monetary recovery available to the class;[132] (2) time and effort put into the litigation;[133] (3) whether the litigation will further the public policy underlying the statutory scheme;[134] and (4) risks of retaliation.[135]   Those factors support the service award requested here.  The reasonable enhancement award of $15,000 to Plaintiff Roberts is intended to compensate her for the critical role she played in this case, and the time, effort, and risks she undertook in helping to secure the result obtained on behalf of the Class.[136]

     Defendants do not oppose the proposed enhancement to the Named Plaintiff.  Plaintiff will request approval of the proposed enhancement as part of the motion for attorneys' fees and litigation expenses.[137]   With that motion, Plaintiff will submit a declaration addressing her respective efforts in the litigation.

---

[129] Ex. 1 at ¶ 15; Grover Decl. at ¶ 50.

[130] *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).

[131] *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (quoting *In Re S. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (named plaintiff received $50,000 for work in class action).

[132] *See Ingram*, 200 F.R.D. at 694*; Roberts*, 979 F. Supp. at 204.

[133] *See Van Vranken*, 901 F. Supp. at 299; *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

[134] *See Roberts*, 979 F. Supp. at 201 n.25.

[135] *See id.* at 202; *Cook*, 142 F.3d at 1016.

[136] Grover Decl. at ¶¶ 47-48.

[137] *See* Grover Decl. at ¶ 49.

**V.      CONCLUSION**

Based on the foregoing, Plaintiff requests that this Court grant preliminary approval of the settlement consistent with the terms of the Settlement Agreement and the proposed order submitted herewith.

Dated:  February 16, 2016                    **KELLER GROVER LLP**

By:

_/s/ Eric A. Grover_
ERIC A. GROVER
RACHAEL G. JUNG

*Counsel for Plaintiff*
JOYCE ROBERTS

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861