# Exhibit 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made and entered into by and between the Settlement Class Representative, Joyce Roberts, individually and on behalf of the Settlement Class Members (as defined below), on the one hand, and Defendant Wyndham Hotels and Resorts, LLC and proposed defendant Wyndham Hotel Group, LLC (collectively "Defendants"), on the other hand.   The Settlement Class Representative and Defendants are referred to collectively as the "Parties" or individually as a "Party."

## RECITALS

This Agreement is made for the following purposes and with reference to the following facts:

A.       On July 17, 2012, Settlement Class Representative Roberts filed a complaint against original defendants Wyndham International, Inc., Wyndham Worldwide Operations, Inc. and Wyndham Hotels and Resorts, LLC entitled *Joyce Roberts v. Wyndham International, Inc., et al.,* in Alameda County Superior Court.  On October 1, 2012, Defendants removed the action to the United States District Court for the Northern District of California (the "Court") and the case was assigned Case No. 12-cv-05083-PSG (the "Action").  On October 17, 2012, the Court ordered the Action related to two other cases – *Roberts and Simpson v. Wyndham, Int'l, Inc. et al*, Case No. 12-cv-05180-EDL and *Simpson v. Ramada Worldwide, Inc.*, Case No. 12-cv-05029-PSG.  The plaintiffs in the three related actions thereafter voluntarily dismissed the claims against Wyndham International, Inc., Wyndham Worldwide Operations, Inc., and Ramada Worldwide, Inc. on May 15, 2013.  Plaintiff Simpson also dismissed her claims against Wyndham Hotels and Resorts, LLC.  On February 2, 2015, following a contested motion, Settlement Class Representative Roberts filed the First Amended Complaint.  The First

Amended Complaint alleges unlawful-call-recording claims on behalf of California residents who made cellular, cordless or hardwired landline telephone calls to Defendants that were routed to certain call centers operated by Defendants' vendor, Aegis USA, Inc., now known as TPUSA-FHCS, Inc. ("Aegis"), and recorded without notice or consent in violation of California Penal Code §§ 632 and 632.7. As part of the settlement, the Parties will ask the Court for permission to file a Second Amended Complaint adding Wyndham Hotel Group, LLC as an additional named defendant. The proposed Second Amended Complaint, attached hereto as **Exhibit G**, shall be the operative complaint.

B.     From the filing of the original complaint through the second mediation in September 2015, the Parties engaged in extensive discovery and motion practice, including all of the following activities: Settlement Class Representative Roberts propounded multiple sets of written discovery and reviewed nearly 4,000 pages of documents and information produced by Defendants and Aegis; the Settlement Class Representative took five depositions; Defendants propounded written discovery; Defendants deposed Settlement Class Representative Roberts; Defendants deposed two experts named by the Settlement Class Representative; Defendants filed a motion to dismiss the original complaint and motions to exclude the Settlement Class Representative's expert witnesses; and Settlement Class Representative Roberts filed two motions seeking permission to amend the complaint and filed a class certification motion.

C.     On September 1, 2015, with the Settlement Class Representative's motion for class certification and Defendants' motions to exclude expert testimony fully briefed, and the Settlement Class Representative's second motion to amend the scheduling order to allow for an amendment to the complaint on file, the Parties engaged in an all-day mediation session with the Hon. Louis M. Meisinger (Ret.), formerly of the Los Angeles County Superior Court and a

former Executive Vice-President and General Counsel of The Walt Disney Company.   In response to a mediator's proposal, the Parties reached a tentative agreement several days after the mediation session, the final terms of which are set forth in this Agreement.

   D. Defendants dispute the claims and contentions alleged in the Action and by entering into this Agreement do not admit any liability or wrongdoing of any kind or that any class can or should be certified, except for settlement purposes.

   E. Settlement Class Counsel (as defined below) and the Settlement Class Representative believe that the Action has merit and have examined and considered the benefits to be obtained under this Agreement, the risks associated with the continued prosecution of this complex and potentially time-consuming litigation, and the likelihood of class certification and success on the merits.   Settlement Class Counsel have fully investigated the facts and law relevant to the Action, have conducted formal and informal discovery, and have conducted independent investigation.   Settlement Class Counsel and the Settlement Class Representative have concluded that the settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members (as defined below).

   F. The Parties enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation and to avoid the risks of litigation.   The Parties desire to settle the Action in its entirety with respect to all claims arising from or related to the alleged recording or monitoring of, or eavesdropping on, telephone conversations during the Class Period (as defined below).   The Parties intend this Agreement to bind the Parties and all Settlement Class Members who are not excluded from the Settlement Class (as defined below).

**NOW, THEREFORE,** in light of the foregoing, in consideration of the terms and conditions set forth herein, which the Parties acknowledge are good and valuable consideration for this Agreement, the Parties hereby agree and stipulate, by and through their respective counsel of record, subject to approval by the Court, as follows:

1.    Additional Definitions

As used in this Agreement and its incorporated exhibits, the following terms have the following meanings:

(a)    "Authorized Claimants" means those Settlement Class Members (as defined below) who submit valid and timely Claim Forms (as defined below) to register their claims for recovery from the Net Settlement Fund (as defined below) under this Agreement.

(b)    "California Area Codes" shall mean telephone area codes 209, 213, 310, 323, 408, 415, 424, 442, 510, 530, 559, 562, 619, 626, 650, 657, 661, 669, 707, 714, 747, 760, 805, 818, 831, 858, 909, 916, 925, 949 and 951.

(c)    "Claim Form" is the hard-copy or electronic form, substantially in the form of **Exhibit A** hereto, that Settlement Class Members must submit to the Claims Administrator (as defined below), certifying that they are entitled to recovery under this Agreement, in order to receive a portion of the Net Settlement Fund. The Settlement Class Representative automatically shall be deemed to be a member of the Settlement Class who has submitted a valid Claim Form and she need not submit a Claim Form to receive a settlement payment from the Net Settlement Fund.

(d)    "Claims Administrator" refers to Rust Consulting, which the Parties have agreed will be responsible for the administration of this class action settlement as described herein. As a condition for its appointment as Claims Administrator, Rust Consulting shall enter into a non-

disclosure and confidentiality agreement with Defendants to (i) protect the confidentiality of information supplied by Defendants to the Claims Administrator, including agreement to fully indemnify the Parties (including any Released Parties as defined in Section 11.1 below) and their counsel for any loss, by the Claims Administrator, of data relating to this class action settlement or the Settlement Class, or for any breach of the data held by and/or in the possession of the Claims Administrator relating to this class action settlement or the Settlement Class and (ii) provide that the Claims Administrator shall use such information solely to carry out its duties as Claims Administrator pursuant to this Settlement Agreement.

(e)     "Class Period" means May 1, 2011, the earliest date that the Aegis call recording system captured the telephone numbers of callers routed to the Aegis operated call centers, through March 23, 2012, inclusive.

(f)     "Defense Counsel" refers to Nancy L. Stagg of Foley and Lardner LLP.

(g)     "Final Approval Order and Judgment" shall mean the final order and judgment entered by the Court in this Action upon final approval of this Class Action Settlement (as defined below).  The Final Approval Order and Judgment shall not be entered if any Party terminates this Agreement pursuant to the terms set forth herein.  The settlement embodied in this Agreement shall become effective  upon the earliest date (the "Settlement Effective Date") on which all of the following have occurred:  (a) execution of this Agreement by all Parties, counsel for the Settlement Class, and counsel for Defendants; (b) certification (for settlement purposes) of the proposed Settlement Class; (c) entry of a Final Approval Order and Judgment by the Court approving this Agreement in accordance with the terms herein; and, (d) only if a Settlement Class Member files a timely objection that is not withdrawn by the time of entry of a Final Approval Order and Judgment by the Court, the expiration of the

time to take any appeals from that Final Approval Order and Judgment, with no appeals having been filed.  If any appeal of the Final Approval Order and Judgment is filed, then the Settlement Effective Date shall be the day after the Final Approval Order and Judgment is final upon the full and final resolution of any appeals taken from that Final Approval Order and Judgment such that no further appeal or writ may be taken from it and mandate has been issued.

(h)     "Settlement Class" or "Settlement Class Members" means all natural persons who were California residents and who, while physically located in California: placed a call to one of Defendants' toll free telephone numbers at any time during the period from May 1, 2011 through March 23, 2012, inclusive; were routed to an Aegis-operated call center; spoke with a representative; and did not receive notice that their call was being recorded.  Excluded from the Settlement Class are: (1) all such calls to Howard Johnson toll free telephone numbers during the Class Period, which calls are covered by the settlement in *Stone v. Howard Johnson International, Inc.*, USDC CD CA Case No. 12-CV-01684 PSG (MANx); and (2) persons who validly opt out of the settlement by following the procedures set forth herein.  As described in Section 3.5 below, through Aegis, Defendants have a record of every call routed through the call recording software at the Aegis-operated call centers during the Class Period.

(i)     "Settlement Class Counsel" refers to Eric A. Grover and Rachael G. Jung of Keller Grover LLP and Scot Bernstein of Law Offices of Scot D. Bernstein, A Professional Corporation.

(j)     "Settlement Class Representative" refers to the named Plaintiff, Joyce Roberts.

2.     <u>Certification of Settlement Class and Approval of the Settlement</u>

2.1     As soon as practicable after this Agreement is signed, the Settlement Class Representative shall move for an order provisionally certifying (for settlement purposes) the

Settlement Class and preliminarily approving the settlement embodied by this Agreement (the "Class Action Settlement"). The motion shall request that the Court (a) preliminarily approve this Agreement as being the product of serious, informed, non-collusive negotiations, having no obvious deficiencies, not improperly granting preferential treatment to the proposed Settlement Class Representative or segments of the Settlement Class, and falling within the range of possible approval; (b) stay all proceedings in the Action until the Court renders a final decision on approval of the Class Action Settlement; (c) appoint the named Plaintiff as Settlement Class Representative for settlement purposes only; (d) appoint Settlement Class Counsel as Class Counsel for settlement purposes only; (e) grant leave to file the Second Amended Complaint; and (f) set the date and time of the final approval hearing, which should not occur until at least 195 calendar days after entry of the preliminary approval order. Settlement Class Counsel shall prepare initial drafts of the motion for preliminary approval and supporting documents and provide those drafts to Defense Counsel at least seven calendar days before filing, and Defendants shall have the option to join in the Settlement Class Representative's motion or to file their own brief statement of non-opposition in support. The Parties agree that the Court may make preliminary findings and enter an order certifying the Settlement Class subject to final findings, final approval of the Class Action Settlement, and entry of the Final Approval Order and Judgment. The Parties agree that the preliminary approval order that will be proposed to the Court shall be substantially in the form of **Exhibit H**.

      2.2    No later than 150 days after entry of the preliminary approval order, Settlement Class Counsel shall file their motion for an award of attorneys' fees, litigation costs, administration costs, and the Settlement Class Representative's enhancement award. The motion and all supporting papers (other than billing statements) shall be posted on the Settlement

Website (as defined below) no later than three days after filing.  No later than 175 days after entry of the preliminary approval order, the Settlement Class Representative and Settlement Class Counsel shall file their motion for final approval of the Class Action Settlement and entry of a Final Approval Order and Judgment.  Settlement Class Counsel shall file with their final approval motion papers a complete list of all Settlement Class Members who validly and timely have excluded themselves from the Class, as described below.  Settlement Class Counsel shall prepare initial drafts of the motion for final approval and supporting documents and provide those drafts to Defense Counsel at least seven calendar days before filing.  Defendants shall either join in the Settlement Class Representative's motion or file their own brief statement of non-opposition in support.  The motion and all supporting papers shall be posted on the Settlement Website no later than three days after filing.

       2.3    The Parties shall take all necessary and reasonable steps to achieve certification of the Settlement Class, preliminary and final approval of the Class Action Settlement, and entry of a Final Approval Order and Judgment, including, without limitation, responding to objections, addressing any appeals or appellate issues, and obtaining any further orders from the Court as may be necessary.  At the time of the final approval hearing by the Court, and if the Court provides final approval of the settlement, the Parties shall request that the Court immediately execute and enter the Final Approval Order and Judgment substantially in the form of **Exhibit I**.  The Parties shall execute and deliver any additional papers, documents and other assurances, and shall do any other acts reasonably necessary to perform their obligations under this Agreement and to carry out the Agreement's expressed intent.

       2.4    Defendants do not consent to certification of any class for any purpose other than effectuating this Class Action Settlement and dispute that any class should or could be

certified for any other purpose.  If the Court does not approve this Class Action Settlement in full, either preliminarily or finally, or the Agreement otherwise terminates as provided herein, (i) the Agreement shall be automatically of no force or effect; (ii) any Preliminary Approval Order and all of its provisions will be vacated; (iii) the Action will revert to the status that existed before this Agreement's execution date and any documents or information exchanged during the settlement discussions shall be returned, deleted or destroyed; (iv) the Second Amended Complaint shall be dismissed without prejudice and the First Amended Complaint shall be the operative complaint; (v) without prejudice to Plaintiff's right to re-schedule a hearing on the filed class certification motion and motion to amend the scheduling order or Defendants' right to re-schedule a hearing on the filed motions to exclude expert testimony, the Action shall proceed with no class yet certified; and (vi) no term or draft of this Agreement, or any part or aspect of the Parties' settlement discussions, negotiations, or documentation (including without limitation any declarations and briefs filed in support of the motions for preliminary or final approval) will have any effect or be admissible into evidence, for any purpose, in this Action or any other proceeding.  If the Court proposes Material modifications of, or additions to, this Agreement or its exhibits, the Parties each agree to exercise their judgment in good faith to evaluate such proposed modifications but shall have the right to agree to or reject any or all of them.  For purposes of this Agreement, a modification or addition is "Material" if that modification or addition is one that a reasonable person in that Party's position would reasonably find to constitute a substantive change that, if known at the time the Agreement was entered into, would have affected that Party's decision regarding whether to enter into the Agreement.

      3.      <u>Settlement Payments and Procedures</u>

3.1     Defendants agree to fund a class action settlement in the total amount of $7,325,000.00 (the "Gross Settlement Amount").  All notice and administration costs and expenses, including any awards or settlements, or any fees and expenses awarded to Class Counsel, shall be paid from the Gross Settlement Amount.  Within five business days of the Settlement Effective Date, Defendants shall fund the $7,325,000.00 Gross Settlement Amount. The Gross Settlement Amount shall be deposited by the Claims Administrator into one or more FDIC-insured institutions in a segregated non-interest-bearing account or accounts to be opened and maintained by the Claims Administrator at banks that have passed the most recent Dodd-Frank Act Stress Test.  The Claims Administrator shall maintain those accounts and allow withdrawals from those accounts only if those withdrawals are consistent with the terms of this Agreement and any orders of the Court.  Under no circumstances, including in the event of an appeal or appeals,   shall Defendants be obligated to pay more than the Gross Settlement Amount set forth in this Agreement.

3.2     Settlement Class Counsel shall have the right to make a motion for attorneys' fees of no more than $1,831,250.00 (25% of the Gross Settlement Amount) to be paid from the Gross Settlement Amount.  Defendants will take no position with regard to any motion by Settlement Class Counsel for an award of attorneys' fees of up to $1,831,250.00 (25% of the Gross Settlement Amount), plus actual out-of-pocket costs, which currently are estimated not to exceed $60,000.00, both to be paid out of the Gross Settlement Amount.  Defendants agree that they have no right to appeal the amount of any award of attorneys' fees, costs or enhancements so long as the amounts awarded do not exceed $1,831,250.00 in attorneys' fees, Settlement Class Counsel's actual out-of-pocket costs, and a $15,000.00 enhancement award to the Settlement Class Representative.  Defendants shall not be liable for any payment to Settlement Class

Counsel other than an award of fees and costs to be paid out of the Gross Settlement Amount. The Claims Administrator shall pay attorneys' fees and costs, as approved by the Court, to Settlement Class Counsel within 10 days of the Settlement Effective Date. A reduction by the Court or by an appellate court of the fees and costs awarded to Settlement Class Counsel will not be considered a Material modification of this Agreement and shall not affect any of the Parties' rights and obligations under this Agreement, and shall only serve to reduce the amount of the fees and costs payable to Settlement Class Counsel from the Gross Settlement Amount and increase the Net Settlement Fund (as defined below) payable to Authorized Claimants.

        3.3    Settlement Class Representative Roberts agrees not to seek an enhancement award of more than $15,000.00 as consideration for her efforts in prosecuting the Action to date and through entry of the Final Approval Order and Judgment. Defendants will take no position regarding this request so long as it does not exceed the above amount. Other than the value of her individual claim as a Settlement Class Member who has submitted a timely and valid Claim Form, the amount ultimately ordered by the Court shall be the only consideration paid to the Settlement Class Representative under this Agreement or in connection with the Action, and Defendants shall not otherwise be liable for any payment to the Settlement Class Representative. A reduction by the Court or by an appellate court of the enhancement award will not be considered a Material modification of this Agreement and shall not affect any of the Parties' rights and obligations under this Agreement, and shall serve only to reduce the amount of the enhancement award payable to the Settlement Class Representative and increase the Net Settlement Fund (as defined below) payable to Authorized Claimants. The Claims Administrator shall pay the enhancement award, as approved by the Court, to the Settlement Class Representative within 10 days after the Settlement Effective Date.

3.4     The following amounts shall be subtracted from the $7,325,000.00 Gross Settlement Amount to arrive at the amount of the "Net Settlement Fund": notice and administrative costs (estimated at no more than $275,000.00); attorneys' fees as awarded to Settlement Class Counsel up to a maximum of $1,831,250.00; costs as awarded by the Court to Settlement Class Counsel estimated not to exceed $60,000.00; and the enhancement award to the Settlement Class Representative up to a maximum of $15,000.00, all totaling an estimated $2,171,250.00 and leaving an estimated $5,143,750.00 Net Settlement Fund.  In the event of an appeal or appeals, any court-ordered award of attorneys' fees and costs to Settlement Class Counsel also shall be subtracted from the Gross Settlement Amount to arrive at the amount of the Net Settlement Fund.

3.5     The entire Net Settlement Fund shall be allocated to pay the claims of Settlement Class Members who submit valid and timely Claim Forms (**Exhibit A**), i.e., Authorized Claimants, on a *per call* value basis.  Through Aegis, Defendants have a record of every call routed through the call recording software at the Aegis-operated call centers during the Class Period.  Excluding calls to Howard Johnson toll free telephone numbers, Defendants have determined that approximately 185,000 of the calls routed through the call recording software during the Class Period were made by telephone numbers with a California Area Code.  These calls are referred to as the "Recorded Calls."  These Recorded Calls were made by approximately 115,770 unique telephone numbers with a California Area Code.  The entire Net Settlement Fund shall be divided by the aggregate number of Recorded Calls made by Settlement Class Members who submit valid and timely Claim Forms.  The resulting quotient, determined in dollars and cents, then shall be multiplied by the number of Recorded Calls made by or otherwise attributable to each Settlement Class Member who submits a valid and timely Claim Form to

determine the amount of the settlement payment each Authorized Claimant shall receive.   By way of example, if the Net Settlement Fund equals $5,143,750.00 and the aggregate number of Recorded Calls made by Settlement Class Members who submit valid and timely Claim Forms is 18,500, the per-call settlement payment value would be $278.04.   In this example, if a Settlement Class Member who submits valid and timely Claim Form had made 10 qualifying calls, the Settlement Class Member would receive a settlement payment in the amount of $2,780.40 (10 qualifying calls x $278.04). No Settlement Class Member shall receive more than $5,000 per qualifying call.

3.6     No Settlement Class Member shall have an ownership interest in a share of the Net Settlement Fund unless and until the check sent to such Settlement Class Member representing such funds is negotiated or deposited.   In the event that any funds remain from uncashed checks 90 calendar days after the last check is issued, any remaining amount of the Net Settlement Fund shall be paid to the proposed cy pres beneficiary, Privacy Rights Clearinghouse.

3.7     The Gross Settlement Amount is a compromise of the Settlement Class Representative's claim, which Defendants deny, that she and the Settlement Class Members have been injured and that they are entitled to recover statutory damages. As such, the Gross Settlement Amount is not, and cannot be characterized as, a penalty or a fine.

3.8     If final approval is granted and not reversed by writ or appeal, Defendants have no reversionary interest in any amount of the Gross Settlement Amount, and the entire Net Settlement Fund must be paid out to Settlement Class Members who file valid and timely Claim Forms and, if required by Section 3.6 above, the proposed cy pres beneficiary, Privacy Rights Clearinghouse.

4.     <u>Claims Administration</u>

4.1     The Claims Administrator shall administer the process of notifying the Settlement Class; receiving, processing and paying claims and fees and costs and the Settlement Class Representative's enhancement award; opening and maintaining bank accounts and maintaining the Gross Settlement Amount and Net Settlement Fund; complying with all tax reporting obligations such as issuing any necessary United States Internal Revenue Service 1099 Forms; obtaining any necessary information from Settlement Class Counsel, the Settlement Class Representative and Authorized Claimants for tax reporting purposes; and any other duties necessary to administer the Class Action Settlement and/or to which the Parties otherwise agree in writing. The Claims Administrator shall ensure that the information that it receives from the Parties and Settlement Class Members is secured and managed in such a way as to protect the security and confidentiality of the information from third parties. The Claims Administrator shall disseminate the Settlement Class Notice by a combination of U.S. mail, email, an online banner program to be agreed upon by the Parties, publication in the California edition of Parade Magazine and in certain designated local publications throughout California (see Section 6.5 below), and an agreed-upon press release published by the Claims Administrator that also will be disseminated only as follows: provided to PRNewswire for California edition release only and TopClassActions.com, and posted on the Settlement Website (defined below in Section 6.5), all as described in the Preliminary Approval Order and below.

4.2     No later than 15 calendar days before the filing date for Plaintiff's motion for final approval of the Class Action Settlement, the Claims Administrator shall email a declaration to Settlement Class Counsel and Defense Counsel confirming that the Claims Administrator provided the Settlement Class with notice in accordance with the Court's preliminary approval order and any subsequent orders the Court might make as to the notice to

be provided the Settlement Class, along with a list of all Settlement Class Members who submitted timely and valid requests for exclusion (as defined below).

    5.      <u>Nullification & Severability</u>

    5.1    If any immaterial provision of this Agreement is declared by the Court to be invalid, void, or unenforceable, the remaining provisions of this Agreement will continue in full force and effect.  If the Court declares invalid, void, or unenforceable a Material provision of this Agreement, or orders a Material provision of this Agreement be changed, any Party may terminate the Agreement and the Agreement shall terminate as described in Section 2.4 above. The Party terminating the Agreement shall provide written notice to the other Party within five business days of the Court's Order declaring such provision invalid, void, or unenforceable.

    5.2    In the event that for any reason final distribution of the settlement amounts does not occur (for example, because this    Agreement and/or the Final Approval Order and Judgment is modified or reversed on appeal, or this Agreement is canceled, rescinded, terminated, voided, or nullified as described in Section 5.1), the entire Gross Settlement Amount and any interest earned thereon, less any costs and expenses incurred by the Claims Administrator for work performed in connection with this Agreement, shall revert to Defendants.

    6.      <u>Settlement Class Notice</u>

    6.1    Excluding telephone numbers associated with its franchised hotels, Defendants shall compile a list of the unique telephone numbers associated with each telephone call made to Defendants' toll free telephone numbers (excluding calls to Howard Johnson toll free telephone numbers) from a California Area Code during the Class Period that was captured by the call recording software at the Aegis operated call centers.  Defendants then will cross-reference that list of unique telephone numbers, which is estimated to number approximately

115,770, through its customer-related databases and search for names, mailing addresses, and additional telephone numbers associated with the list. Additionally, Defendants will determine the number of telephone calls that each of these unique telephone numbers made to Defendants' toll free telephone numbers (excluding calls to Howard Johnson toll free telephone numbers) that was captured by the call-recording software at the Aegis-operated call centers during the Class Period. All of the information collected by Defendants, taken in total, shall be referred to as the Potential Class Member Contact List.

6.2    No later than 45 calendar days after entry of the Court's order preliminarily approving the Class Action Settlement, Defendants shall provide the Potential Class Member Contact List to the Claims Administrator. No later than 15 calendar days after receiving the Potential Class Member Contact List, the Claims Administrator shall do the following: (1) run reverse directory searches in an effort to obtain the names and/or mailing addresses associated with each telephone number for which no name or mailing address was provided by Defendants; and (2) run all mailing addresses through the United States Postal Service National Change of Address ("NCOA") (or comparable) database.

6.3    No later than 75 calendar days after entry of the Court's order preliminarily approving the Class Action Settlement, the Claims Administrator shall send to each of the persons on the Potential Class Member Contact List for whom a mailing address can be located the Settlement Class Notice Postcard substantially in the form of **Exhibit C** hereto by regular mail. No later than 75 calendar days after entry of the Court's order preliminarily approving the Class Action Settlement, the Claims Administrator shall email to each of the persons on the Potential Class Member Contact List for whom an email address can be located the Settlement Class Email Notice substantially in the form of **Exhibit D** hereto. If any Postcard

or Email Notices are returned to the Claims Administrator as undeliverable, the Claims Administrator will immediately perform a skip-trace and/or other customary address searches in an attempt to locate a valid address, and if a new mailing address or e-mail address is obtained, re-mail or otherwise provide the appropriate Notice document to that updated mailing address or e-mail address.

6.4    Not later than 105 calendar days after the entry of the Court's order preliminarily approving the Class Action Settlement, the Claims Administrator shall contact Settlement Class Counsel and Defense Counsel with the number of claims that have been submitted for their joint determination whether sending an additional Notice Postcard and Email Notice will be beneficial.  If Settlement Class Counsel and Defense Counsel jointly determine that sending an additional Postcard Notice and Email Notice will be beneficial, the Claims Administrator will resend the Settlement Class Notice Postcard and Settlement Class Email Notice once to any persons who were originally sent the Postcard Notice and Email Notice but who have not yet submitted a claim or requested exclusion from the class.

6.5    No later than 50 calendar days after entry of the Court's order preliminarily approving the Class Action Settlement, the Claims Administrator shall publish a website on the internet at the URL www.CARecordedCallsSettlement.com (or a similar name as agreed upon by the Parties if that one is not available)(the "Settlement Website"), which shall set forth a summary of the terms of the settlement, state the means by which Settlement Class Members may communicate with the Claims Administrator (including but not limited to the Claims Administrator's business name, address, a toll-free telephone number, and e-mail address), and contain a set of Frequently Asked Questions and corresponding answers, instructions on how to submit a Claim Form (both

electronically and by mail) and the deadline associated therewith, and instructions on how to object to and opt out of the Class Action Settlement and the deadlines associated therewith.   The Settlement Website also shall provide, free of charge, a viewable, printable and downloadable copy, in PDF file format, of each of the following documents: this Agreement; the Second Amended Complaint; the Answer to the Second Amended Complaint; the Court's order preliminarily approving the Class Action Settlement and certifying the Settlement Class; the Claim Form (**Exhibit A**); the Long-form Settlement Class Notice (**Exhibit B**); the Motion for an award of attorney's fees, litigation costs, administration costs, and the Settlement Class Representative's enhancement award; and the Motion for final approval.  The Settlement Website shall remain active for 180 calendar days after the Settlement Effective Date.   Defendants and Settlement Class Counsel shall have the right to review and approve the Settlement Website, including its content, before it goes live.

   6.6 Beginning 50 days after entry of the Court's order preliminarily approving the Class Action Settlement, the Claims Administrator shall initiate an online banner advertising campaign that will continue for 115 calendar days.  The online program will be delivered to California IP addresses as designed by the Claims Administrator and agreed upon by the Parties. The banner ads, which will include a live link to the Settlement Website, www.CARecordedCallsSettlement.com, will be drafted by the Claims Administrator to take character limitations into account and will be approved by the Parties.  The intent of the banner ads is to communicate the following information in a format suggested by the Claims Administrator and approved by the Parties:  "If You Called Wyndham Rewards® or any of the Following Hotel Brands From California Between May 1, 2011 and March 23, 2012, Inclusive, **You Could Get Money From a Class Action Settlement**: Wyndham Hotels and Resorts®,

Wyndham Grand® Hotels and Resorts, Wyndham Garden® Hotels, Travelodge®, Ramada®, Knights Inn®, Wingate®, Days Inn®, Super 8®, Baymont®, Hawthorn®, Microtel®, or Tryp®." The Claims Administrator also will issue a press release substantially in the form of **Exhibit E** to be posted on the Settlement Website and ensure that notice of the settlement is posted on Top Class Actions.com. The press release may also be disseminated to PR Newswire California Edition.

6.7    Between 75 and 90 days after entry of the Court's order preliminarily approving the Class Action Settlement, the Claims Administrator shall cause the Publication Notice (**Exhibit F**) to be published twice in the following publications, which are distributed throughout the counties of San Francisco, Alameda, Santa Clara, Monterey, Los Angeles, Orange, and San Diego: *San Francisco Weekly, East Bay Express, Metro Silicon Valley, Bay Area Report, Monterey County Weekly, San Diego Reader, Orange County Weekly,* and *LA Weekly.* In addition, between 75 and 90 days after entry of the Court's order preliminarily approving the Class Action Settlement, the Claims Administrator shall cause the Publication Notice (**Exhibit F**) to be published once in Parade Magazine's California edition.

6.8    Unless otherwise required by the Court, nothing else shall be required of the Parties, Settlement Class Counsel, Defense Counsel or the Claims Administrator to provide notice of the proposed settlement and the final approval hearing as described herein.

6.9    The Parties agree that the Settlement Class Notice program described herein fairly informs the Settlement Class Members of the nature of the litigation, the financial and other terms of the Agreement that are particularly significant for the Settlement Class Members, the procedure for and consequences of making a claim, opting-out, and objecting to this Agreement, and the date of the final approval hearing as set by the Court.

7.      Submission of Claims

7.1     For a Settlement Class Member to be paid from the Net Settlement Fund,

he or she must completely fill out and sign (or electronically submit) and deliver a Claim Form

certifying the Settlement Class Member's entitlement to a claim as described.  The Claim Form

shall be deemed deficient by the Claims Administrator if it is not fully completed and signed,

and, accordingly, will be rejected upon receipt subject to the ability to cure the deficiency as

described in Section 7.4 below.

7.2     The Claims Administrator will develop an online version of the Claim

Form that may be "certified" and submitted electronically.

7.3     In order to receive a share of the Net Settlement Fund, Settlement Class

Members must timely complete a Claim Form, and that Claim Form must be validated by the

Claims Administrator as provided in Section 7.5 below.  Claim Forms must be postmarked or

received electronically no later than 165 days after entry of the Court's order preliminarily

approving the Class Action Settlement. The 90-calendar day period beginning on the 76th day

and ending on the 165th day after entry of the Court's order preliminarily approving the Class

Action Settlement is referred to herein as the "Claim Period."  Unless otherwise ordered by the

Court or agreed upon by the Parties, any completed Claim Form that is received by the Claims

Administrator and postmarked or received electronically after the end of the Claim Period shall

not be accepted and processed.  But if a Class Member can establish that a bona fide hardship

prevented him or her from timely returning the Claim Form to the Claims Administrator, that

Class Member shall not be barred from sharing in the Net Settlement Fund so long as the Claims

Administrator receives his or her valid Claim Form at least 30 calendar days before the date of

the final approval hearing.  The Claims Administrator shall be the sole arbiter of whether a bona fide hardship existed, but will consult Settlement Class Counsel and Defense Counsel.

7.4     If any Class Member timely submits a deficient Claim Form which deviates from the instructions embodied in the Claim Form, the Claims Administrator promptly shall mail a notice to that Class Member informing him or her of the deficiency and that he or she has 20 calendar days from the date of the notice (which shall be the date the notice is mailed) to cure the deficiency ("Deficiency Cure Period").  The Claims Administrator shall make a final and binding resolution with regard to whether the deficiency has been timely cured. If the deficiency is not timely cured, the Settlement Class Member who submitted the deficient Claim Form shall not receive any portion of the Net Settlement Fund but shall remain a member of the Settlement Class whose rights and claims with respect to the issues raised in the Action are determined by the Court's Final Approval Order and Judgment and by the other rulings in the Action.  Thus, that Settlement Class Member's rights to pursue any claims covered by the Action shall be extinguished.

7.5     The Claims Administrator will determine the validity of each Claim Form by comparing the name and telephone number on the Claim Form against the names and telephone numbers and calls per telephone number on the Potential Class Member Contact List or by taking other agreed-upon steps approved by Settlement Class Counsel and Defense Counsel to determine whether the Claim is valid.  A Claim Form will be valid only if it matches either a name or a telephone number on the Potential Class Member Contact List or if the Claim Form and records indicate that the Settlement Class Member was a natural person who was a California resident and who, while physically located in California, placed a call to one of Defendants' toll free telephone numbers (excluding calls to the Howard Johnson toll free

telephone numbers) at any time during the Class Period, and was routed to an Aegis-operated call center and spoke with a representative and did not receive notice that the call was being recorded.    If the Claims Administrator receives any Claim Form that is invalid under this Section, the Claims Administrator will, by postcard, so notify the person who submitted the Claim Form and will set forth the reason for its invalidity. The person who submitted the Claim Form shall have a 20-calendar-day period beginning on the date of the postcard mailing to cure the invalid Claim Form ("Invalidity Cure Period").   The Claims Administrator shall notify Settlement Class Counsel and Defense Counsel whether the person who submitted the invalid Claim Form has, in its determination, timely cured the invalidity.   Settlement Class Counsel and Defense Counsel thereafter shall promptly meet and confer to determine if there is any dispute about whether the person who submitted the Claim Form timely cured the invalid Claim Form. If the Parties cannot resolve the dispute, the Claims Administrator shall make a final and binding resolution of the dispute.   If the invalidity is not timely cured, the person who submitted the invalid Claim Form shall not receive any portion of the Net Settlement Fund but shall, if he or she was a member of the Settlement Class, remain a member of the Settlement Class whose rights and claims with respect to the issues raised in the Action are determined by the Court's Final Approval Order and Judgment and by the other rulings in the Action.   Thus, that Settlement Class Member's rights to pursue any claims covered by the Action shall be extinguished.

7.6     Settlement Class Members who submit timely and valid Claim Forms, as well as Settlement Class Members who timely cure their invalid or deficient Claim Forms, will be referred to as "Authorized Claimants." Unless the Parties otherwise agree, only Authorized Claimants will receive settlement payments under this Agreement.

7.7     Upon request, and no later than 10 calendar days after the expiration of the Claim Period, the Claims Administrator will provide, in readable format and through a secure file-transfer, the submitted Claim Forms and any supporting documentary evidence to Settlement Class Counsel and/or Defense Counsel by email or overnight mail.  This information shall be used only in connection with this settlement and for no other purposes.

7.8     Upon receipt of the Claim Forms from the Claims Administrator, the Parties shall have the option to audit and challenge any Claim Form to verify the accuracy of the Claim Form and the claimant's entitlement to a share of the Net Settlement Fund.  If one or more of the Parties exercises this option and determines that the information provided in any individual Claim Form is inaccurate (for example, if Defendants have no record of receiving the supposed telephone call), that Party shall notify the Claims Administrator and Counsel for the other Party no later than 20 calendar days after receipt of the Claim Form by that Party.  Except for any Settlement Class Member who submits an objection, or unless the Parties jointly agree to review the validity of a Claim Form, any Claim Form that has been approved by the Claims Administrator and is not challenged during that 20-calendar-day period shall be deemed valid and the Settlement Class Member shall be deemed an Authorized Claimant.

7.9     If any Party challenges a Claim Form as not having been submitted by an individual who meets the Settlement Class Member definition or as otherwise failing to constitute a valid Claim, counsel for the Parties shall meet and confer in order to attempt to resolve the dispute.  The attempt to resolve the dispute shall include, if possible, contacting the affected Settlement Class Member to obtain additional information or supporting documentation.  If the Parties cannot resolve the dispute, the Claims Administrator shall make a final and binding resolution of the dispute.  The

challenging Party shall bear the burden of disproving the validity or authenticity of any submitted Claim Form.

7.10    Any Settlement Class Member who fails to submit a timely and valid Claim Form or fails to submit in writing a timely request for exclusion shall automatically be deemed a Settlement Class Member whose rights and claims with respect to the issues raised in the Action will be finally adjudicated by the Court's order approving the Class Action Settlement, the Final Approval Order and Judgment, and any other relevant rulings in the Action. That Settlement Class Member's rights to pursue recovery from the Net Settlement Fund or otherwise will be extinguished.

8.    <u>Exclusion from the Settlement Class; Objections</u>

8.1    Settlement Class members will have until 165 days after entry of the Court's order preliminarily approving the Class Action Settlement to exclude themselves from the Settlement Class by sending a letter, by first class United States mail, to the Claims Administrator containing (1) the title of the Action; (2) the full name, address, and telephone number of the person requesting exclusion; (3) a statement that he or she requests exclusion from the Settlement Class; (4) a short statement of the reasons for the request; and (5) the telephone number(s) from which that person claims to have made a call covered by this Class Action Settlement and, if available, the number called.  Settlement Class members who timely opt-out of the Class Action Settlement shall: (a) have no right to receive any benefits under the Class Action Settlement; (b) not be bound by the terms of the Class Action Settlement; and (c) have no right to object to the terms of the Class Action Settlement or be heard at the final fairness hearing.  Opt-out letters must be submitted individually and cannot be made on behalf of a group of Settlement Class Members.  Each letter must be signed by the Settlement Class

Member who is opting out.  Any such opt-out request must be made in accordance with the terms set forth in this Agreement and the Settlement Class Notice and will be timely only if postmarked no later than 165 calendar days after entry of the Court's order preliminarily approving the Class Action Settlement (the "Exclusion Period").  The delivery date is deemed to be the date the request for exclusion is deposited in the U.S. Mail as evidenced by the postmark.  No later than seven calendar days after the end of the Exclusion Period, the Claims Administrator shall provide Settlement Class Counsel and Defense Counsel with a list of the Settlement Class Members who have validly opted-out of the Settlement Class.  Settlement Class Members cannot both object to and opt-out of this settlement.  Any Settlement Class Member who attempts to both object to and opt-out of this settlement will be deemed to have opted out and will forfeit the right to object to the settlement set forth in this Agreement or any of its terms.  If a Class Member returns both a valid and timely Claim Form and an opt-out request, the opt-out request shall be deemed void and of no force and effect, and the Claim Form shall be processed under the terms of this Agreement.

   8.2 Notwithstanding anything else in this Agreement, if more than 1,000 Settlement Class Members opt-out, Defendants shall have the unilateral option to terminate this Agreement at their sole discretion, and this Agreement shall be null and void and this settlement of no force and effect as described in Section 2.4 above.  If Defendants so elect, they shall give notice of such termination in writing to Settlement Class Counsel no later than ten business days after receiving the list of Settlement Class Members who have requested exclusion from the Settlement Class as described above.  If Defendants terminate the Agreement under this section, Defendants shall be obligated to pay the Claims Administrator for all costs and expenses incurred by the Claims Administrator for work performed in connection with this Agreement.

8.3     The motion for preliminary approval will request that the Court order that any objections to this Class Action Settlement must submitted to the Court no later than 165 calendar days after the Court's order granting preliminary approval to the settlement.   To be considered by the Court, the objection must include: (1) a heading containing the name and case number of the Action; (2) the Settlement Class Member's name and postal address; (3) proof of the objector's membership in the Settlement Class in the form of a statement made under penalty of perjury; (4) a detailed statement of each objection, including, if available, the factual and legal basis for each objection; and (5) a statement of whether the Settlement Class Member intends to appear, either in person or through counsel, at the final approval hearing, and, if through counsel, a statement identifying the counsel's name, postal address, telephone number, and email address.

9.     <u>Compensating Authorized Claimants</u>

9.1     No later than 30 calendar days after the Settlement Effective Date, or as soon as reasonably practicable thereafter, the Claims Administrator shall distribute proceeds from the Net Settlement Fund to each Authorized Claimant by way of a settlement check.   No Authorized Claimant shall have any ownership right to the funds represented by the settlement check unless and until that settlement check is cashed, negotiated or deposited.   The settlement payment is not earned income and no taxes will be withheld from the settlement payments.   The Claims Administrator will indicate on the check stub or check insert that the Authorized Claimant should consult his or her tax advisor regarding the tax consequences of the settlement payment.   In the event that any check is returned to the Claims Administrator as undeliverable, the Claims Administrator will attempt to contact the Authorized Claimant by telephone or perform a skip trace to locate a current address and re-mail the check.

Authorized Claimants shall have 90 calendar days from the date of the settlement check to cash, negotiate or deposit the settlement check.  Thereafter, all settlement checks shall be deemed void, and Authorized Claimants with void settlement checks shall not be entitled to receive any payment under this Agreement.  Any Authorized Claimant whose settlement check is deemed void under this section nonetheless will have released any claims as provided for in Section 11 of this Agreement.  The funds represented by the face value (money amount) of all settlement checks that are deemed void shall be distributed to the cy pres beneficiary, Privacy Rights Clearinghouse, as described in Section 10.1 below.

9.2     The Parties expect that the Claims Administrator shall make all disbursements from the Gross Settlement Amount and otherwise manage the Gross Settlement Amount.  The Claims Administrator shall establish a toll-free telephone number for Settlement Class Members to call to ask questions about their claims.   Additionally, the Claims Administrator will communicate with Settlement Class Counsel and Defense Counsel on a regular basis regarding distributions and any issues arising from those distributions.  If necessary to calculate the amount of the Net Settlement Fund, the Claims Administrator shall estimate the amount of its fees and costs for the remainder of the settlement administration, agree to accept that amount as a fixed fee for any additional work on the settlement, and agree that it will not be paid an amount that exceeds that estimate from the Gross Settlement Amount.

10.     Distribution of Remainder

10.1    After all authorized payments to the Claims Administrator, Authorized Claimants, Settlement Class Counsel, and the Settlement Class Representative have been made as described herein, and 30 days have elapsed from the check void date described in Section 9.1 above, any remaining portion of the Gross Settlement Amount, including the amount represented

by any void checks, shall be delivered by the Claims Administrator to Privacy Rights Clearinghouse if so provided in the Final Approval Order and Judgment or, if not so provided, otherwise distributed in accordance with the Final Approval Order and Judgment.

11.   Release

11.1   Upon entry of the Final Approval Order and Judgment, the Settlement Class Representative and each Settlement Class Member, and their respective heirs, assigns, successors, agents, attorneys, executors, and representatives, shall be deemed to have and by operation of this Agreement and the Final Approval Order and Judgment shall have fully, finally, irrevocably, and forever released Wyndham Hotels and Resorts, LLC, Wyndham Hotel Group, LLC, Aegis USA, Inc., now known as TPUSA-FHCS, Inc., and, for each, its past or present direct and indirect parents, affiliates and subsidiaries (whether or not wholly owned) and their respective directors, officers, employees, agents, insurers, shareholders, members, attorneys, advisors, consultants, representatives, partners, affiliates, related companies, parents, subsidiaries (whether or not wholly owned), joint ventures, divisions, predecessors, successors, and assigns and each of them (collectively, the "Released Parties") from any and all liabilities, claims, causes of action, damages (whether actual, compensatory, statutory, punitive or of any other type), penalties, costs, attorneys' fees, losses, or demands, whether known or unknown, existing or suspected or unsuspected, that were or reasonably could have been asserted based on the factual allegations contained in the Action, or relate to or arise out of the alleged recording, monitoring, or eavesdropping upon telephone calls made to Defendants or any of the other Released Parties (except for calls to Howard Johnson toll free telephone numbers) prior to March 24, 2012 (collectively, the "Released Claims"). The Released Claims include, but are not limited to, claims that were or reasonably could have been asserted based on the factual allegations

contained in the Action alleging violation of any law prohibiting or regulating the monitoring, recording or eavesdropping on telephonic calls without the consent of all parties, including but not limited to any claims under California Penal Code §§ 631, 632, 632.7 and 637.2.   The Released Claims also include but are not limited to claims under any other California or federal statute, code, rule or regulation that regulates or restricts the monitoring, recording or eavesdropping on telephone calls.

        11.2    By operation of this Agreement and the entry of the Final Approval Order and Judgment, and with regard to the Released Claims only, the Settlement Class Representative and each Settlement Class Member, and their respective heirs, assigns, successors, agents, attorneys, executors, and representatives, agrees to and does waive in connection with the Released Claims only, any and all provisions, rights and benefits, which they now have or in the future may be conferred to them by section 1542 of the California Civil Code ("Section 1542") or any comparable statutory or common law provision of any other jurisdiction.   Section 1542 reads as follows:

> Certain Claims Not Affected by General Release: A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Although the releases granted under this Agreement are not general releases, the Settlement Class Representative and each Settlement Class Member, nonetheless expressly acknowledges that, to the extent permitted by law, they are waiving, in connection with only the Released Claims, the protections of Section 1542.

        11.3    Except for proceedings to enforce the terms of this Settlement Agreement, upon entry of the Final Approval Order and Judgment, the Settlement Class Representative and

each Settlement Class Member shall be deemed to have, and by operation of the Final Approval Order and Judgment shall have agreed not to file, maintain, cause or knowingly permit the filing or maintenance of any lawsuit, administrative action, or other proceeding in any state, federal or foreign court, or before any local, state, federal or foreign administrative agency, or any other tribunal, that arises from or relates to any of the Released Claims.

12.   Retention of Jurisdiction

12.1    The Parties agree that should the Court grant final approval of the Class Action Settlement and enter a Final Approval Order and Judgment, the Final Approval Order and Judgment shall include a provision for the retention of the Court's jurisdiction over the Parties and all Settlement Class Members to enforce the terms of this Agreement and the Final Approval Order and Judgment.

13.   No Admission of Liability

13.1    The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with this Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, an acknowledgement or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever to any other party, or an acknowledgement or admission that the Action is appropriate for class treatment for any purpose other than this Agreement.

13.2    Neither this Agreement, nor any act performed or document executed under or in furtherance of this Agreement or the Class Action Settlement, is, may be deemed to be, or may be used as, an admission or evidence of the validity of any claim made by the Settlement Class Representative, Settlement Class Members, or Settlement Class Counsel.

14.    Collateral Attack and Preclusive Effect

14.1    This Agreement shall not be subject to collateral attack by any Settlement Class Member or any recipient of the Settlement Class Notice after the Final Approval Order and Judgment is entered.  Such prohibited collateral attacks shall include, but are not limited to, claims that the procedures for notice and/or claims administration were incorrect, claims that the Settlement Class Member failed for any reason to receive timely notice of the procedure for submitting a Claim Form, or claims disputing the calculation of any Settlement Class Member's individual settlement amount.

14.2    Except as provided herein, neither this Agreement nor any of its terms shall be offered or used as evidence by any of the Parties, Settlement Class Members, or their respective counsel in the Action or in any other action or proceeding; provided, however, that nothing contained in this section shall prevent this Agreement from being used, offered, or received in evidence in any proceedings to enforce, construe, or finalize the settlement and this Agreement, or from being used in defense of any claims released under the Agreement.

14.3    To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit or other proceeding which may be instituted, prosecuted, or attempted in breach of this Agreement or to bring claims released under the Agreement.  Any of the Released Parties may file this Agreement and/or the Final Approval Order and Judgment in any action that may be brought against it in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim or issue preclusion or similar defense or counterclaim in any court or administrative agency or other tribunal.

15.   Summary of Timeline

The proposed order granting preliminary approval of the settlement (**Exhibit H**) shall

include the following timeline regarding settlement administration:

| | |
|---|---|
| Last day for Defendants to provide the Claims Administrator with the Potential Class Member Contact List | 45 days after preliminary approval |
| Last day for Claims Administrator to publish Settlement Website | 50 days after preliminary approval |
| Last day for Claims Administrator to mail and email the Settlement Notice to Class Members | 75 days after preliminary approval |
| Dates of online banner publication notice | 50 to 165 days after preliminary approval |
| Dates of newspaper publication notice | 75 to 90 days after preliminary approval |
| Last day for Class Counsel to file motion for award of attorneys' fees, litigation costs, administration costs, and Class Representative's service payment | 150 days after preliminary approval |
| Last day for claims to be submitted electronically or postmarked by Class Members | 165 days after preliminary approval |
| Last day for requests for exclusion from the settlement to be postmarked by Class Members | 165 days after preliminary approval |
| Last day for Class Members to submit objections to the settlement | 165 days after preliminary approval |
| Last day for Class Counsel to file motion for final approval of settlement | 175 days after preliminary approval |
| Last day for the Parties to reply to any objections filed by Class Members | 186 days after preliminary approval |
| Hearing on motion for final approval of settlement, Class Representative's service payment, and application for attorneys' fees and costs | At least 195 days after preliminary approval |
| | |

16.   CAFA Notice.

Defendants shall be responsible for providing any Class Action Fairness Act ("CAFA")

notice required by 28 U.S.C. § 1715 no later than ten days after the filing of the Preliminary

Approval Motion.  Defendants may delegate the service of the CAFA notice to the Claims

Administrator.  If Defendants do so, they shall provide the Claims Administrator with the form

of CAFA notice which the Claims Administrator shall serve on the appropriate officials.  The

Defendants or the Claims Administrator shall file a declaration with the Court no later than ten days after serving the CAFA notice stating that the CAFA notice has been served on the appropriate officials.

17.   Taxes

Any person or entity that receives a distribution from the Gross Settlement Amount or Net Settlement Fund shall be solely responsible for any taxes or tax-related expenses owed or incurred by that person or entity by reason of that distribution.  Such taxes and tax-related expenses shall not be paid from the Gross Settlement Amount or Net Settlement Fund.  In no event shall Defendants or any of the other Released Parties have any responsibility or liability for taxes or tax-related expenses arising in connection with the payment or distribution of the Gross Settlement Amount or Net Settlement Fund to the Settlement Class Representatives, Settlement Class Members, Settlement Class Counsel or any other person or entity.

18.   Extensions of Time

18.1   Unless otherwise ordered by the Court, the Parties may jointly agree in writing to reasonable extensions of time to carry out any provisions of this Agreement.

19.   Integration

19.1   This Agreement and its exhibits constitute a single, integrated written contract expressing the entire agreement of the Parties relating to the subject matter hereof, and all prior or contemporaneous agreements, understandings, representations and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged herein. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any party hereto, except as provided herein.  This Agreement may not be changed,

altered or modified except in writing and signed by all Parties, and may not be discharged except by performance in accordance with its terms or by a writing signed by all Parties.

20.    Construction and Intent

20.1    This Agreement is executed voluntarily by each of the Parties without any duress or undue influence on the part, or on behalf, of any of them.  This Agreement has been negotiated at arms-length by parties of equal bargaining power, and drafted jointly by Settlement Class Counsel and Defense Counsel.  Each of the Parties has had full opportunity to review and consider the contents of this Agreement, has read and fully understands the provisions of this Agreement, and has relied on the advice and representation of legal counsel of its own choosing. In the event that a dispute arises with respect to this Agreement, no Party shall assert that any other Party is the drafter of this Agreement or any part hereof, for purposes of resolving ambiguities that may be contained herein.  If any provision of this Agreement shall be deemed ambiguous, that provision shall not be construed against any Party on the basis of the identity of the purported drafter of this Agreement or such provision hereof.

20.2    The Parties represent and agree that they have been advised to discuss this Agreement with an attorney, that they have carefully read and fully understand all provisions of this Agreement, that they are entering into this Agreement voluntarily and that they have the capacity to enter into this Agreement.  Further, the Parties represent and acknowledge that, in executing this Agreement, they do not rely and have not relied upon any representation or statement not set forth herein made by any of the Parties or any of the Parties' agents, representatives or attorneys with regard to the subject matter, basis or effect of this Agreement.

20.3    The various headings used in this Agreement are solely for the Parties' convenience and may not be used to interpret this Agreement.  The headings and the formatting

of the text in the definitions do not define, limit, extend, or describe the Parties' intent or the scope of this Agreement.

20.4    The exhibits to this Agreement are integral parts of the Agreement and are incorporated into this Agreement as though fully set forth herein.  Any inconsistency between this Agreement and the attached exhibits will be resolved in favor of the Agreement.

20.5    The Recitals are incorporated by this reference and are part of this Agreement.

21.    Governing Law

21.1    The Agreement is entered into in California and shall be construed in accordance with, and be governed by, the law of the State of California, without regard to the principles thereof regarding choice of law.

22.    Later Discovered Facts

22.1    The Parties acknowledge that they may later discover facts different from or in addition to those they now know or believe to be true regarding the matters released or described in this Agreement, and, even so, they agree that the Agreement, including without limitation the releases and waivers contained herein, shall remain effective in all respects notwithstanding any later discovery of any different or additional facts.  The Parties assume any and all risk of any mistake in connection with the true facts involved in the matters, disputes or controversies released or described in this Agreement or with regard to any facts now unknown to the Parties relating thereto.

23.    Cooperation

23.1    The Parties acknowledge that it is their intent to consummate this Agreement and agree to cooperate to the extent reasonably necessary to effectuate and

implement all terms and conditions of the Agreement and to exercise their best efforts to obtain preliminary and final approval from the Court including doing all things reasonably necessary to protect and support the Agreement if an appeal is taken or any other form of judicial review is sought.

24.      No Prior Assignments

24.1      The Parties hereto represent, covenant and warrant that they have not, directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber, to any person or entity any portion of any liability, claim, demand, action, cause of action or rights released and discharged by this Agreement.

25.      Binding on Successors and Assigns

25.1      This Settlement Agreement binds and benefits the Parties' respective successors, assigns, legatees, heirs, and personal representatives.

26.      Signatories

26.1      Each person executing this Agreement in a representative capacity represents and warrants that he or she is empowered to do so.

26.2      This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts.  The Agreement may be executed by facsimile, scanned or email signature.

The foregoing is agreed to by the following:

02/01

Dated: _____ , 2016                By: _____
                                             Settlement Class Representative
                                             Joyce Roberts


Dated: _____ , 2016                By: _____
                                             Wyndham Hotels and Resorts, LLC
                                             By:
                                             Title:


                                             _____
                                             Print Name


Dated: _____ , 2016                By: _____
                                             Wyndham Hotel Group, LLC
                                             By:
                                             Title: _____
                                             Print Name


Approved as to form only:


Dated: _____ , 2016                By: _____
                                             Keller Grover LLP
                                             Eric A. Grover
                                             Proposed Settlement Class Counsel


Dated: _____ , 2016                By: _____
                                             Law Offices of Scot D. Bernstein,
                                             A Professional Corporation
                                             Scot Bernstein
                                             Proposed Settlement Class Counsel

02/01

Dated: _____, 2016

By: _____
Settlement Class Representative
Joyce Roberts

Dated: _____, 2016

By: _____
Wyndham Hotels and Resorts, LLC
By:
Title:

_____
Print Name

Dated: _____, 2016

By: _____
Wyndham Hotel Group, LLC
By:
Title: _____
Print Name

Approved as to form only:

Dated: _____, 2016

By: _____
Keller Grover LLP
Eric A. Grover
Proposed Settlement Class Counsel

Dated: _____, 2016

By: _____
Law Offices of Scot D. Bernstein,
A Professional Corporation
Scot Bernstein
Proposed Settlement Class Counsel

Dated: _____, 2016        By: _____
                                Settlement Class Representative
                                Joyce Roberts

Dated: _____, 2016        By: _____
                                Wyndham Hotels and Resorts, LLC
                                By: Marcus A Banks
                                Title: SVP Legal

                                _Marcus A. Banks_
                                Print Name

Dated: _____, 2016        By: _____
                                Wyndham Hotel Group, LLC
                                By: SVP-Legal
                                Title: Marcus A Banks
                                Print Name

Approved as to form only:

Dated: _____, 2016        By: _____
                                Keller Grover LLP
                                Eric A. Grover
                                Proposed Settlement Class Counsel

Dated: _____, 2016        By: _____
                                Law Offices of Scot D. Bernstein,
                                A Professional Corporation
                                Scot Bernstein
                                Proposed Settlement Class Counsel

Dated: _____, 2016

By: _____
Settlement Class Representative
Joyce Roberts


Dated: _____, 2016

By: _____
Wyndham Hotels and Resorts, LLC
By:
Title:


_____
Print Name


Dated: _____, 2016

By: _____
Wyndham Hotel Group, LLC
By:
Title: _____
Print Name


Approved as to form only:

Dated: 2/2, 2016

By: _____
Keller Grover LLP
Eric A. Grover
Proposed Settlement Class Counsel


Dated: January 31 2016

By: _____
Law Offices of Scot D. Bernstein,
A Professional Corporation
Scot Bernstein
Proposed Settlement Class Counsel

Dated: ___2/4___, 2016

By: _____
Foley and Lardner LLP
Nancy L. Stagg
Counsel for Defendants

## **TABLE OF EXHIBITS**

| | |
|---|---|
| Exhibit A | Claim Form |
| Exhibit B | Long-form Settlement Class Notice |
| Exhibit C | Postcard Settlement Class Notice |
| Exhibit D | Email Settlement Class Notice |
| Exhibit E | Press Release |
| Exhibit F | Newspaper/Parade Publication Notice |
| Exhibit G | Proposed Second Amended Complaint |
| Exhibit H | Proposed Preliminary Approval Order |
| Exhibit I | Proposed Final Approval Order and Judgment |

**<u>EXHIBIT A</u>**

**<u>CLAIM FORM</u>**

# EXHIBIT A

*Joyce Roberts v. Wyndham Hotels and Resorts, LLC, et al.*
United States Court for the Northern District of California, Case No. 12-cv-05083-PSG

| HOTEL RECORDING CASE SETTLEMENT CLAIM FORM |
| --- |

This Claim Form is for California residents who, while physically located in California, called one or more toll-free telephone numbers associated with Wyndham Rewards®, Wyndham Hotels and Resorts®, Wyndham Grand® Hotels and Resorts, Wyndham Garden® Hotels, Travelodge®, Ramada®, Knights Inn®, Wingate®, Days Inn®, Super 8®, Baymont®, Hawthorn®, Microtel®, or Tryp® between May 1, 2011 and March 23, 2012, inclusive, were routed to an Aegis call center,  spoke with a representative and were recorded without notice the call was being recorded.

 To receive your share of the settlement, **you must submit this completed Claim Form either online by accessing the Settlement website at** www.CARecordedCallsSettlement.com**, or  by regular mail to the following address, postmarked no later than                    , 2016**:

Hotel Call Recording Settlement Claims Administrator
c/o Rust Consulting
P.O. Box XXXX
City / State, XXXXX
Toll Free: 1-8XX-XXX-XXXX
Website: www.CARecordedCallsSettlement.com

Please note that the value of your settlement payment will be based on the number of qualified calls you made during the Class Period, May 1, 2011 through March 23, 2012, inclusive.  Defendants have a list of all telephone numbers associated with the calls that were recorded during the Class Period.  You should provide all possible telephone numbers you may have used to call Defendants' toll-free telephone numbers during the Class Period.

| **I.   Your Name and Address** |
| --- |

Please clearly print or type your information in the spaces below:

Name: _____

Street Address: _____

City: _____        State: _____        Zip Code: _____

Phone Number(s) used to make calls between May 1, 2011 and March 23, 2012, inclusive:

_____, _____, _____

| **II.        Release** |
| --- |

I understand that in exchange for the consideration provided for in this Settlement, upon entry of the Final Approval Order and Judgment, and as set forth more fully in the Settlement Agreement, I shall have fully, finally, irrevocably, and forever released Wyndham Hotels and Resorts, LLC, Wyndham Hotel Group, LLC, Aegis USA, Inc., now known as TPUSA-FHCS,Inc. , and, for

each, its past or present direct and indirect parents, affiliates and subsidiaries (whether or not wholly owned) and their respective directors, officers, employees, agents, insurers, shareholders, members, attorneys, advisors, consultants, representatives, partners, affiliates, related companies, parents, subsidiaries (whether or not wholly owned), joint ventures, divisions, predecessors, successors, and assigns and each of them (collectively, the "Released Parties") from any and all liabilities, claims, causes of action, damages (whether actual, compensatory, statutory, punitive or of any other type), penalties, costs, attorneys' fees, losses, or demands, whether known or unknown, existing or suspected or unsuspected, that were or reasonably could have been asserted based on the factual allegations contained in the action entitled *Joyce Roberts v. Wyndham Hotels & Resorts, LLC, et al.*,United States District Court for the Northern District of California case no. 12-cv-05083 PSG ("the Action"), or relate to or arise out of the alleged recording, monitoring, or eavesdropping upon telephone calls made to Defendants or any of the other Released Parties (except for calls to Howard Johnson toll free telephone numbers) prior to March 24, 2012 (collectively, the "Released Claims"). The Released Claims include, but are not limited to, claims that were or reasonably could have been asserted based on the factual allegations contained in the Action alleging violation of any law prohibiting or regulating the monitoring, recording or eavesdropping on telephonic calls without the consent of all parties, including but not limited to any claims under California Penal Code §§ 631, 632, 632.7 and 637.2. The Released Claims also include but are not limited to claims under any other California or federal statute, code, rule or regulation that regulates or restricts the monitoring, recording or eavesdropping on telephone calls.

| III. | Certification |
|------|---------------|

**By my signature below, I certify to my best honest belief, that I called a toll-free telephone number associated with Wyndham® Rewards, Wyndham Hotels and Resorts®, Wyndham Grand® Hotels and Resorts, Wyndham Garden® Hotels, Travelodge®, Ramada®, Knights Inn®, Wingate®, Days Inn®, Super 8®, Baymont®, Hawthorn®, Microtel®, or Tryp® at least once between May 1, 2011 and March 23, 2012, inclusive, while residing and physically located in California and spoke with a representative.**

Dated: _____/_____/_____

_____
Print Name

_____
Signature

## **EXHIBIT B**

## **LONG-FORM SETTLEMENT CLASS NOTICE**

# EXHIBIT B

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT
### *Joyce Roberts v. Wyndham Hotels and Resorts, LLC, et al.*
### United States District Court for the Northern District of California
### Case No. 12-cv-05083-PSG

### READ THIS NOTICE CAREFULLY
### YOUR LEGAL RIGHTS MAY BE AFFECTED

California residents who, while physically located in California, called one or more toll-free telephone numbers associated with **Wyndham Rewards®, Wyndham Hotels and Resorts®, Wyndham Grand® Hotels and Resorts, Wyndham Garden® Hotels, Travelodge®, Ramada®, Knights Inn®, Wingate®, Days Inn®, Super 8®, Baymont®, Hawthorn®, Microtel®, or Tryp®** between May 1, 2011 and March 23, 2012, inclusive, spoke with a representative and were recorded without notice, may be entitled to money from a class action settlement. Please read the rest of this Notice to find out more.

### YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT

| | |
|---|---|
| **Participate in the Settlement** | If you wish to receive a Settlement Payment, read this Notice for information on how to file a claim. If you do not file a Claim Form by [insert claim deadline], you will not receive a Settlement Payment. |
| **Exclude Yourself from the Settlement** | If you do not want to participate in the settlement, you must send a letter requesting exclusion postmarked no later than [insert deadline] or else you will be bound by the settlement. |
| **Object to the Settlement** | If you wish to object to the settlement, you must follow the directions in this Notice. |
| **Participate in the Hearing** | If you submit a timely objection to the settlement, you may also indicate in the objection whether you wish to appear in court and be heard at the time of the final fairness hearing. |
| **Do Nothing** | If you do nothing with respect to this Notice, you will not receive any Settlement Payment and you will be bound by the terms of the settlement including the release of claims described below. |

**THESE RIGHTS AND OPTIONS, INCLUDING THE DEADLINES BY WHICH TO EXERCISE THEM, ARE EXPLAINED IN THIS NOTICE BELOW**

## What is the Case About?

This class action case ("the Action") alleges that Wyndham Hotels and Resorts, LLC and Wyndham Hotel Group, LLC ("Defendants") violated California laws that prohibit the recording of telephone calls without notice to or consent of callers.  The case covers calls made by natural persons who were California residents and who, while physically located in California, called one or more toll-free telephone numbers associated with **Wyndham Rewards®, Wyndham Hotels and Resorts®, Wyndham Grand® Hotels and Resorts, Wyndham Garden® Hotels, Travelodge®, Ramada®, Knights Inn®, Wingate®, Days Inn®, Super 8®, Baymont®, Hawthorn®, Microtel®, or Tryp®** between May 1, 2011 and March 23, 2012, inclusive, were routed to a call center operated by a third-party vendor (Aegis), spoke with a representative and were recorded without notice.

## What is a Class Action?

In a class action, one or more people called Class Representatives (in this case Joyce Roberts) sue on behalf of people who have similar claims.

## Am I a Class Member?

You are a Class Member if you are a California resident and, while physically located in California, you called one or more toll-free telephone numbers associated with **Wyndham Rewards®, Wyndham Hotels and Resorts®, Wyndham Grand® Hotels and Resorts, Wyndham Garden® Hotels, Travelodge®, Ramada®, Knights Inn®, Wingate®, Days Inn®, Super 8®, Baymont®, Hawthorn®, Microtel®, or Tryp®** between May 1, 2011 and March 23, 2012, inclusive, were routed to an Aegis-operated call center, spoke with a representative and were recorded without notice.

**Please note that not all such calls were routed to an Aegis-operated call center.  Some calls were routed to other call centers operated by Defendants that provided a  call recording warning.  Defendants have records of all telephone numbers that were routed to Aegis-operated call centers and were recorded.  If you received notice of this proposed settlement by postcard or email, there are records indicating that you might be a member of the Class entitled to submit a Claim Form.  You may be a member even if you did not receive notice by postcard or email.  If you are not sure whether you qualify, you can contact the Claims Administrator by calling 1-8xx-xxx-xxxx or by email at [insert email address] to ask whether your telephone number or numbers appear on the list of Aegis-recorded calls.**

## Why is There a Settlement?

Both sides agreed to a settlement to avoid the uncertainty and cost of class certification and a trial and to provide benefits to Class Members more promptly.  The Court did not decide in favor of the Class Representative, Class Members or Defendants, and Defendants deny any liability or wrongdoing of any kind associated with the claims in this class action.

## What Can I Get From The Settlement?

Defendants have agreed to create a settlement fund of $7,325,000.  After class action notice and administration fees and costs, a service payment to the class representative, and Class Counsel's attorneys' fees and costs are deducted, the entire remaining amount will be divided up amongst all Class Members based on the number of qualified calls made by Class Members who submit

timely and valid Claim Forms. Although the actual amount paid out to individual Class Members will depend on the number of Class Members who submit timely and valid Claims Forms, based on claims rates in similar cases, it is estimated that each Class Member who submits a timely and valid Claim Form will receive at least **$150 per qualified call**, but not more than $5,000 per call, although the actual amount may be more or less than this.

### What Do I Need to Do To Receive a Settlement Payment?

**You must complete a Claim Form and return it to the Claims Administrator on time.** You may obtain a hard copy Claim Form from the Settlement Website, www.CARecordedCallsSettlement.com, by calling 1-8XX-XXX-XXXX, or by writing to the Claims Administrator at [address]. You also may submit a completed Claim Form online at the Settlement Website, www.CARecordedCallsSettlement.com. A Claim Form will not be considered timely unless it is returned to the Claims Administrator online or sent by mail postmarked no later than [date].

### What Am I Giving Up to Get Settlement Benefits or Stay In the Class?

Unless you exclude yourself, as described below, you will remain in the Class and be bound by the terms of the settlement and all of the Court's orders regardless of whether you submit a claim form. This means that you can't sue or be part of any other lawsuit against Defendants or other Released Parties (defined below) about the issues in this case. Staying in the Class also means that you agree to the following release of claims, which describes the legal claims that you give up:

**Release by the Settlement Class.** Upon entry of the Final Approval Order and Judgment, the Settlement Class Representative and each Settlement Class Member, and their respective heirs, assigns, successors, agents, attorneys, executors, and representatives, shall be deemed to have and by operation of this Agreement and the Final Approval Order and Judgment shall have fully, finally, irrevocably, and forever released Wyndham Hotels and Resorts, LLC, Wyndham Hotel Group, LLC , Aegis USA, Inc., now known as TPUSA-FHCS, Inc., and, for each, its past or present direct and indirect parents, affiliates and subsidiaries (whether or not wholly owned) and their respective directors, officers, employees, agents, insurers, shareholders, members, attorneys, advisors, consultants, representatives, partners, affiliates, related companies, parents, subsidiaries (whether or not wholly owned), joint ventures, divisions, predecessors, successors, and assigns and each of them (collectively, the "Released Parties") from any and all liabilities, claims, causes of action, damages (whether actual, compensatory, statutory, punitive or of any other type), penalties, costs, attorneys' fees, losses, or demands, whether known or unknown, existing or suspected or unsuspected, that were or reasonably could have been asserted based on the factual allegations contained in the Action, or relate to or arise out of the alleged recording, monitoring, or eavesdropping upon telephone calls made to Defendants or any of the other Released Parties (except for calls to Howard Johnson toll free telephone numbers) prior to March 24, 2012 (collectively, the "Released Claims"). The Released Claims include, but are not limited to, claims that were or reasonably could have been asserted based on the factual allegations contained in the Action alleging violation of any law prohibiting or regulating the monitoring, recording or eavesdropping on telephonic calls without the consent of all parties, including but not limited to any claims under California Penal Code §§ 631, 632, 632.7 and 637.2. The Released Claims also include but are not limited to claims under any other California or federal statute, code, rule or regulation that regulates or restricts the monitoring, recording or eavesdropping on telephone calls.

## When Can I Expect To Receive My Settlement Payment?

The Court will hold a hearing on [date], to decide whether to give final approval to the settlement.  If the settlement is finally approved, payments may be made as soon as 60 days after this date but, depending on what happens in the case, payments may be delayed. You will be kept informed of the progress of the settlement through the dedicated settlement website at www.CARecordedCallsSettlement.com.  Please be patient.

## Can I Exclude Myself From the Settlement?

If you don't want to receive benefits from this settlement, but you want to keep the right to sue Defendants or any of the Released Parties on your own at your own expense about the issues in this case, then you <u>must</u> take steps to exclude yourself from the settlement. This is also called "opting-out" of the settlement.  To exclude yourself from the settlement, you must send a letter by first class United States mail to the Claims Administrator, containing: (1) the title of the Action; (2) the full name, address, and telephone number of the person requesting exclusion; (3) a statement that you request to be excluded from the Settlement Class.  Also, you are requested but not required to provide: (4) a short statement of the reasons for the request; and (5) the telephone number(s) that you claim to have used in making a call covered by this class action settlement.  Be sure to include your name, address, telephone number, and signature. Your letter requesting exclusion from the settlement <u>must</u> be postmarked no later than [date] and mailed to:

Hotels Call Recording Settlement Exclusions
c/o Rust Consulting
P.O. Box XXXX
City / State, XXXXX

If you request exclusion from the settlement, you will not get any settlement benefits, and you cannot object to the terms of the settlement.  You will not be legally bound by anything that happens in this lawsuit.

## If I Don't Exclude Myself, Can I Sue the Defendants for the Same Thing Later?

No. Unless you exclude yourself, you <u>give up any right</u> to sue Defendants and any of the Released Parties for the claims that this settlement resolves.  If you have a pending lawsuit covering these same claims, speak to your lawyer in that case immediately. You must exclude yourself from this settlement to continue your own lawsuit.

## Do I Have a Lawyer in the Case?

The Court has appointed Eric A. Grover of Keller Grover LLP and Scot Bernstein of the Law Offices of Scot D. Bernstein, A Professional Corporation to represent you and other class members as Class Counsel. They will be paid from the settlement fund and you will not be charged for this. If you want to be represented by your own lawyer, you may hire one at your own expense.

## How Will the Lawyers and the Class Representatives Be Paid?

Class Counsel will ask the Court to approve payment of up to $1,831,250 (25% of the $7,325,000 settlement fund) in attorneys' fees and an additional amount for out-of-pocket costs, which is estimated not to exceed $50,000.  The fees would pay Class Counsel for investigating the facts, litigating the case, negotiating the settlement, and following through to make sure that its terms are carried out.  Class Counsel also will ask the Court to approve a payment of $15,000

to Joyce Roberts for her service as Class Representative. The Court may award less than these amounts. These amounts, along with the costs of settlement notice and administration, will be paid out of the $7,325,000 settlement fund. Class Counsel will file with the Court their motion for award of attorneys' fees, litigation costs, administration costs and Class Representative's service payment no later than [date]. After that date, you may view the motion on the settlement website.

## How Do I Tell the Court That I Don't Like the Settlement?

You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a larger settlement; the Court can only approve or deny the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue.

You must object to the proposed settlement in writing. All written objections and supporting papers must include: (1) the name and case number of the lawsuit *(Roberts v. Wyndham Hotels and Resorts, LLC, et al.,* USDC ND CA Case No. 12-cv-05083-PSG); (2) the objector's full name and postal address; (3) proof of the objector's membership in the Class; (4) all grounds for the objection including, if available, the factual and legal bases for the objection known to the objector or his or her counsel and the relief the objector is seeking; (5) the identity, postal address, and telephone number for all counsel who represent the objector, if any; and (6) a statement confirming whether the objector or the objector's counsel intends to appear personally at the final fairness hearing.

Objections must be submitted to the Court by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 450 Golden Gate Avenue, Box 36060, San Francisco, California 94012 or by filing them in person at any location of the United States District Court for the Northern District of California. Objections must be postmarked or submitted in person by [insert date] to be considered timely.

## What's the Difference Between Objecting and Excluding?

Objecting is telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. If you object, you may still submit a Claim Form to receive the benefits of the settlement in the event the objection is overruled and the settlement is approved. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you. You cannot both object to and exclude yourself from the settlement. Any persons who attempt both to object to and exclude themselves from the settlement will be deemed to have excluded themselves and will forfeit the right to object to or participate in the settlement or any of its terms.

## When and Where Will the Court Decide Whether to Approve the Settlement?

The Court will hold a final fairness hearing regarding the settlement at [time] on [date] at San Jose Courthouse, Courtroom 5 – 4th Floor, 280 South 1st Street, San Jose, California. At that hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to people who have asked to speak at the hearing. The Court also will decide how much to pay to Class Counsel and the Class Representatives. After the hearing, the Court will decide whether to approve the settlement. Class Counsel do not know how long those decisions will take.

The final fairness hearing date or time may be changed without further notice. Any change to the final fairness hearing date or time will be posted on the Settlement Website, www.CARecordedCallsSettlement.com, and on the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov.

### Do I Have to Come to the Hearing?

No. Class Counsel will answer questions the Court may have. But you are welcome to come at your own expense. If you submit an objection, you don't have to come to Court to talk about it. As long as you submit your written objection on time, the Court will consider it. You also may have your own lawyer attend at your own expense, but doing so is not necessary.

You may ask the Court for permission to speak at the final fairness hearing. To do so, you must submit an objection and include a statement that you intend to appear in the objection. You cannot speak at the hearing if you excluded yourself from the settlement.

### What Happens if I Do Nothing At All?

If you do nothing, you will remain in the Settlement Class and will be bound by the terms of the settlement and all of the Court's orders including the Release. This also means that you will not receive any settlement benefits and can't sue or be part of any other lawsuit against Defendants or the Released Parties about the issues in this case.

### Are There More Details About the Settlement?

This notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the Settlement Agreement and Release. You can get a copy of the Settlement Agreement and Release and other case documents through the Settlement Website, www.CARecordedCallsSettlement.com, by calling 1-8XX-XXX-XXXX, by writing to the Claims Administrator at [address], by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 280 South 1st Street, Room 2112, San Jose, California, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays. You also can contact Class Counsel:

| | |
|---|---|
| Eric A. Grover, Esq. | Scot Bernstein, Esq. |
| KELLER GROVER LLP | LAW OFFICES OF SCOT D. BERNSTEIN, |
| 1965 Market Street | A PROFESSIONAL CORPORATION |
| San Francisco, California 94103 | 101 Parkshore Drive, Suite 100 |
| Telephone: (415) 543-1305 | Folsom, California 95630 |
| Facsimile: (415) 543-7861 | Telephone: (916) 447-0100 |
| eagrover@kellergrover.com | Facsimile: (916) 933-5533 |
| | swampadero@sbernsteinlaw.com |

**PLEASE DO NOT CALL THE COURT, THE COURT CLERK'S OFFICE, DEFENDANTS OR DEFENDANTS' COUNSEL WITH ANY QUESTIONS RELATED TO THE SETTLEMENT.**

**EXHIBIT C**

**POSTCARD SETTLEMENT CLASS NOTICE**

# EXHIBIT C

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

# YOU MAY BE PART OF A HOTELS
# CLASS ACTION SETTLEMENT

### DEADLINES APPLY

## SUMMARY NOTICE OF CLASS ACTION SETTLEMENT

If you are a California resident who, while physically located in California, called one or more toll-free telephone numbers associated with **Wyndham Rewards®, Wyndham Hotels and Resorts®, Wyndham Grand® Hotels and Resorts, Wyndham Garden® Hotels, Travelodge®, Ramada®, Knights Inn®, Wingate®, Days Inn®, Super 8®, Baymont®, Hawthorn®, Microtel®, or Tryp®** between May 1, 2011 and March 23, 2012, inclusive, and were routed to a call center operated by a third-party vendor (Aegis),spoke with a representative and were recorded without notice , you may be entitled to money from a class action settlement.

A proposed $7,325,000 class action settlement has been reached in the lawsuit *Joyce Roberts v. Wyndham Hotels and Resorts, LLC, et al.,* USDC ND CA Case No. 12-cv-05083-PSG.  The lawsuit claims that Defendants' third party vendor recorded telephone calls of persons calling certain toll-free reservations and customer-service lines without telling callers that the calls may be recorded, allegedly in violation of California law.  Defendants have denied the claims.  Nonetheless, Defendants and the Class Representative have agreed to settle the dispute to avoid the uncertainty and costs of litigation.

This notice is only a summary.  You may obtain more complete information by visiting www.CARecordedCallsSettlement.com and viewing the full class notice, by writing to the address at the bottom of this notice, or by calling the Claims Administrator at 1-8xx-xxx-xxxx.

**What are my legal rights?**
Defendants' records show you might be a member of the settlement class.  To receive a settlement payment, you must submit a claim.  **It is expected that class members who submit a claim will receive at least $150 per qualified call, but not more than $5,000 per call.**  Whether or not you submit a claim, if the Court approves the settlement, and you do not take steps to exclude yourself from the settlement, you will be bound by all of the Court's orders.  This means you will not be able to make any claims against Defendants covered by the settlement.

If you wish to submit a claim, visit www.CARecordedCallsSettlement.com or contact the Claims Administrator at 1-8xx-xxx-xxxx to get a claim form.  The deadline to submit claims is [**insert date**].
If you do not wish to be a member of the settlement class, you must submit a letter to the Claims Administrator at the address below postmarked by [**insert date**].  If you request to be excluded from the settlement, you cannot submit a claim form. Visit the settlement website for more information.
If you wish to object to the settlement, you must do so by submitting your objection to the Court in person or postmarked by [insert date].  Visit the settlement website for more information.

**Hotels Recording Settlement Administrator**

**c/o Rust Consulting**
**P.O. Box XXXX**
**City, State zip code**
**1-8xx-xxx-xxxx**
**www.CARecordedCallsSettlement.com**

**<u>EXHIBIT D</u>**

**<u>EMAIL SETTLEMENT CLASS NOTICE</u>**

# EXHIBIT D

**NOTICE OF CLASS ACTION SETTLEMENT**

**From the United States District Court for the Northern District of California**

# You may be part of a Hotels
# Class Action Settlement
### DEADLINES APPLY

## SUMMARY NOTICE OF CLASS ACTION SETTLEMENT

If you are a California resident who, while physically located in California, called one or more toll-free telephone numbers associated with **Wyndham Rewards®, Wyndham Hotels and Resorts®, Wyndham Grand® Hotels and Resorts, Wyndham Garden® Hotels, Travelodge®, Ramada®, Knights Inn®, Wingate®, Days Inn®, Super 8®, Baymont®, Hawthorn®, Microtel®, or Tryp®** between May 1, 2011 and March 23, 2012, inclusive, and were routed to a call center operated by a third-party vendor (Aegis), spoke with a representative and were recorded without  notice , you may be entitled to money from a class action settlement.

A proposed $7,325,000 class action settlement has been reached in the lawsuit *Joyce Roberts v. Wyndham Hotels and Resorts, LLC, et al.,* USDC ND CA Case No. 12-cv-05083-PSG.  The lawsuit claims that Defendants' third party vendor recorded telephone calls of persons calling certain toll-free reservations and customer-service lines without telling callers that the calls may be recorded, allegedly in violation of California law. Defendants have denied the claims. Nonetheless, Defendants and the Class Representative have agreed to settle the dispute to avoid the uncertainty and costs of litigation.

This notice is only a summary. You may obtain more complete information by visiting www.CARecordedCallsSettlement.com and viewing the full class notice, by writing to the address at the bottom of this notice, or by calling the Claims Administrator at 1-8xx-xxx-xxxx.

**What are my legal rights?**
Defendants' records show you might be a member of the settlement class. To receive a settlement payment, you must submit a claim. **It is expected that class members who submit a claim will receive at least $150 per qualified call but not more than $5,000 per call.** Whether or not you submit a claim, if the Court approves the settlement, and you do not take steps to exclude yourself from the settlement, you will be bound by all of the Court's orders. This means you will not be able to make any claims against Defendants covered by the settlement.

If you wish to submit a claim, visit www.CARecordedCallsSettlement.com or contact the Claims Administrator at 1-8xx-xxx-xxxx to get a claim form.  The deadline to submit claims is [**insert date**].
If you do not wish to be a member of the settlement class, you must submit a letter to the Claims Administrator at the address below postmarked by [**insert date**].  If you request to be excluded from the settlement, you cannot submit a claim form. Visit the settlement website for more information.
If you wish to object to the settlement, you must do so by submitting your objection to the Court in person or postmarked by [insert date].  Visit the settlement website for more information.

**Hotels Recording Settlement Administrator**
**c/o Rust Consulting**
**P.O. Box XXXX**
**City, State zip code**
**1-8xx-xxx-xxxx**
**www.CARecordedCallsSettlement.com**

**EXHIBIT E**

**PRESS RELEASE**

# EXHIBIT E

[City, State], [Date of release] /Newswire/ -- The following statement is being issued by [lawfirm(s)] regarding the *Roberts v. Wyndham Hotels and Resorts, LLC, et al.* Settlement.

**If you are a California resident who, while physically located in California, called one or more toll-free telephone numbers associated with Wyndham Rewards®, Wyndham Hotels and Resorts®, Wyndham Grand® Hotels and Resorts, Wyndham Garden® Hotels, Travelodge®, Ramada®, Knights Inn®, Wingate®, Days Inn®, Super 8®, Baymont®, Hawthorn®, Microtel®, or Tryp® between May 1, 2011 and March 23, 2012, inclusive, spoke to a representative and were recorded without notice, you could receive money from a Class Action Settlement.**

A proposed $7,325,000 class action settlement has been reached in a lawsuit called *Joyce Roberts v. Wyndham Hotels and Resorts, LLC, et al.*, USDC ND CA Case No. 12-cv-05083-PSG.  The lawsuit claims that Defendants' third party vendor recorded telephone calls of persons calling certain toll-free reservations and customer-service lines without telling callers that the calls may be recorded allegedly in violation of California law.  Defendants have denied the claims.  Nonetheless, Defendants and the Class Representatives have agreed to settle the dispute to avoid the uncertainty and costs of litigation. The $7,325,000 settlement fund will pay eligible claims, notice and administration costs, attorneys' fees and expenses, and the named plaintiff's service award.

## Who is a class member?

**You are a Class Member if you are a California resident who, while physically located in California, called one or more toll-free telephone numbers associated with Wyndham Rewards®, Wyndham Hotels and Resorts®, Wyndham Grand® Hotels and Resorts, Wyndham Garden® Hotels, Travelodge®, Ramada®, Knights Inn®, Wingate®, Days Inn®, Super 8®, Baymont®, Hawthorn®, Microtel®, or Tryp® between May 1, 2011 and March 23, 2012, inclusive, were routed to a call center operated by a third-party vendor, spoke to a representative and were recorded without notice.**

## What are my legal rights?

To receive a settlement payment, eligible class members must submit a claim.  **It is expected that eligible class members who submit a timely and valid Claim Form will receive at least $150 per qualified call but no more than $5,000 per call.**  The amount of each individual settlement payment will depend on the total number of claims filed.

Whether or not you submit a claim, if the Court approves the settlement, and you do not take steps to exclude yourself from the settlement, you will be bound by all of the Court's orders. This means you will not be able to make any claims against Defendants or other Released Parties covered by the settlement.

If you wish to submit a claim, visit www.CARecordedCallsSettlement.com or contact the Claims Administrator at 1-8xx-xxx-xxxx to get a claim form.  The deadline to submit claims is [**insert date**].

If you do not wish to be a member of the settlement class, you must submit a letter to the Claims Administrator at the address below postmarked by [**insert date**].  If you opt-out you cannot submit a claim form. Visit the settlement website for more information.

If you wish to object to the settlement, you must do so by submitting your objection to the Court in person or postmarked by [insert date].  Visit the settlement website for more information.

A final hearing will be held on _____ at _____, to determine the fairness, reasonableness and adequacy of the proposed settlement and to award attorneys' fees and costs and plaintiff's service award.  The motion for attorneys' fees and costs and plaintiff's service award will be posted on the settlement website after it is filed.  You may attend the hearing, but you do not have to.

This is only a summary. For detailed information including, the full text of the Settlement Agreement, the Class Notice and the Claim Form, visit www.CARecordedCallsSettlement.com, call 1-8xx-xxx-xxxx, or write to: Settlement Administrator at Hotels Call Recording Settlement c/o Rust Consulting, P.O. Box _____, [city], [state and zip code].

# # #


_____

**Source:** [Lawfirm(s)]
**Media Contact(s):** Name, Lawfirm, Phone Number

**EXHIBIT F**

**NEWSPAPER/PARADE PUBLICATION NOTICE**

# EXHIBIT F

## U.S. District Court for the Northern District of California

## If you are a California resident and while located in California called Wyndham Rewards® or certain hotel brands, you could receive money from a Class Action Settlement

A proposed $7,325,000 class action settlement has been reached in a lawsuit called *Joyce Roberts v. Wyndham Hotels and Resorts, LLC, et al.,* USDC NDCA Case No. 12-cv-05083-PSG. The lawsuit claims that Defendants' third party vendor recorded telephone calls of persons calling certain toll-free reservations and customer-service lines without telling callers that the calls may be recorded, allegedly in violation of California law.  Defendants have denied the claims.  Nonetheless, Defendants and the Class Representatives have agreed to settle the dispute to avoid the uncertainty and costs of litigation. The $7,325,000 settlement fund will pay eligible claims, notice and administration costs, attorneys' fees and expenses, and the named plaintiff's service award.

### Who is a class member?
**You are a Class Member if you are a California resident who, while physically located in California, called one or more toll-free telephone numbers associated with Wyndham Rewards®, Wyndham Hotels and Resorts®, Wyndham Grand® Hotels and Resorts, Wyndham Garden® Hotels, Travelodge®, Ramada®, Knights Inn®, Wingate®, Days Inn®, Super 8®, Baymont®, Hawthorn®, Microtel®, or Tryp® between May 1, 2011 and March 23, 2012, inclusive, were routed to a call center operated by a third-party vendor (Aegis), spoke to a representative and were recorded without notice.**

### What are my legal rights?
To receive a settlement payment, eligible class members must submit a claim.  **It is expected that eligible class members who submit a timely and valid Claim Form will receive at least $150 per qualified call but not more than $5,000 per call.**  The amount of each individual settlement payment will depend on the total number of claims filed.

Whether or not you submit a claim, if the Court approves the settlement, unless you take steps to exclude yourself from the settlement, you will be bound by all of the Court's orders.  This means you will not be able to make any claims against Defendants or other Released Parties covered by the settlement.

If you wish to submit a claim, visit www.CARecordedCallsSettlement.com or contact the Claims Administrator at 1-8xx-xxx-xxxx to get a claim form.  The deadline to submit claims is [**insert date**].

If you do not wish to be a member of the settlement class, you must submit a letter to the Claims Administrator at the address below postmarked by [**insert date**].  If you opt-out you cannot submit a claim form. Visit the settlement website for more information.

If you wish to object to the settlement, you must do so by submitting your objection to the Court in person or postmarked by [insert date]. Visit the settlement website for more information.

A final hearing will be held on _____ at _____, to determine the fairness, reasonableness and adequacy of the proposed settlement and to award attorneys' fees and costs and plaintiff's service award. The motion for attorneys' fees and costs and plaintiff's service award will be posted on the settlement website after it is filed. You may attend the hearing, but you do not have to.

This is only a summary. For detailed information including, the full text of the Settlement Agreement, the Class Notice and the Claim Form, visit www.CARecordedCallsSettlement.com, call 1-8xx-xxx-xxxx, or write to: Settlement Administrator at Hotels Call Recording Settlement c/o Rust Consulting, P.O. Box _____, [city], [state and zip code].

**[Add website and toll-free number at bottom of publication]**

## **EXHIBIT G**

## **PROPOSED SECOND AMENDED COMPLAINT**

# EXHIBIT G

ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rjung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN,**
**A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California  95630
Telephone: (916) 447-0100
Fax: (916) 933-5533

Attorneys for Plaintiff
JOYCE ROBERTS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTICT OF CALIFORNIA

| | |
|---|---|
| JOYCE ROBERTS, individually and on behalf of classes of similarly situated individuals, | Case No.:  5:12-cv-05083-PSG |
| Plaintiff, | Hon. Magistrate Judge Paul S. Grewal |
| v. | CLASS ACTION |
| WYNDHAM HOTELS AND RESORTS, LLC; WYNDHAM HOTEL GROUP, LLC, | **[PROPOSED] SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| Defendants. | **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Joyce Roberts ("Plaintiff"), on behalf of herself and the two classes ("the Classes") of similarly situated individuals as defined below, alleges on information and belief and the investigation by counsel as follows:

## INTRODUCTION

1.      This class action lawsuit arises out of Defendants Wyndham Hotel and Resorts, LLC ("WHR") and Wyndham Hotel Group, LLC's ("WHG") (WHR and WHG referred to herein collectively as "Defendants" or "Wyndham") policy and practice of recording and/or intercepting and/or eavesdropping upon calls made or routed to certain call centers operated by Aegis USA, Inc., currently known as TPUSA-FHCS, Inc., ("Aegis") on behalf of and as a vendor for Wyndham. During the relevant time period, telephone calls to Wyndham-owned toll-free reservation, rewards, and customer service telephone numbers (collectively, Wyndham "toll-free telephone numbers"), which service Wyndham®-named hotels (Wyndham Hotels and Resorts®, Wyndham Grand® Hotels and Resorts, and Wyndham Garden® Hotels) as well as Wyndham-affiliated hotel brands Travelodge®, Ramada®, Howard Johnson®, Knights Inn®, Wingate®, Days Inn®, Super 8®, Baymont®, Hawthorn®, Microtel®, and Tryp®, and also Wyndham Rewards® were routed to one of four separate call centers located in Aberdeen, South Dakota; Saint John, New Brunswick, Canada; Manila, Philippines; and Tamil Nadu, India.  The Aberdeen and Saint John call centers were operated by Defendant WHG, while the Philippines and India call centers were operated by Aegis as a vendor on behalf of Wyndham.

2.      Before March 2012, WHG recorded incoming telephone calls to Wyndham toll-free telephone numbers routed to the Aberdeen and Saint John call centers based on pre-set recording schedules.  Under the recording schedules, WHG would record calls to certain toll-free numbers and/or customer service groups only during set hours of the day.  Before August 2011, callers who were routed to the Aberdeen and Saint John call centers during the pre-set "recording" hours and were recorded received a pre-recorded disclosure that their calls may be recorded.  Callers routed to the Aberdeen and Saint John call centers during "non-recording" hours and were not recorded received no warning or disclosure.  From August 2011 to the present, all callers who were routed to

1   the Aberdeen and Saint John call centers at any time received a a pre-recorded disclosure that their

2   calls may be recorded.

3   3.   Until March 23, 2012, no warning or disclosure was provided to any incoming callers

4   to Wyndham toll-free telephone numbers routed to the Philippines and India call centers that their

5   calls may be recorded.

6   4.   WHG owns numerous toll-free reservation, rewards, and customer service telephone

7   numbers, including 1-866-WYN-RWDS (1-866-996-7937) and other toll-free telephone numbers

8   which connect callers with Wyndham hotel brands, including Wyndham Hotels and Resorts®,

9   Wyndham Grand® Hotels and Resorts, Wyndham Garden® Hotels, Super 8®, Travelodge®, Howard

10  Johnson®, Ramada®, Baymont®, Day's Inn®, Knight's Inn®, Hawthorne®, Wingate®, Microtel®,

11  and Tryp®, as wells as Wyndham Rewards®.   Wyndham Rewards® is the loyalty program for all

12  Wyndham-owned hotel brands and is owned by WHG.   During the relevant time period through and

13  including March 23, 2012, some callers to Wyndham Rewards toll-free telephone numbers were

14  connected to one or more call centers operated by Aegis.   Also during the relevant time period

15  through and including March 23, 2012, numerous other toll-free telephone numbers related to

16  Wyndham hotel brands, including Wyndham Hotels and Resorts®, Wyndham Grand® Hotels and

17  Resorts, Wyndham Garden® Hotels, Super 8®, Travelodge®, Howard Johnson®, Ramada®,

18  Baymont®, Day's Inn®, Knight's Inn®, Hawthorne®, Wingate®, Microtel®, and Tryp®, also

19  connected callers to one or more call centers operated by Aegis.

20  5.   During the relevant time period through and including March 23, 2012, Defendants

21  intentionally and surreptitiously recorded and/or intercepted (i.e., monitored) telephone calls made to

22  Wyndham toll-free telephone numbers that were routed to the Aegis-operated Philippines and India

23  call centers.   Defendants did so without warning or disclosing to callers that their calls might be

24  recorded or intercepted/monitored.   (The terms "intercept" and "monitor" are used interchangeably in

25  this complaint.)

26  6.   Defendants' policy and practice of recording and intercepting telephone

27  conversations without the consent of all parties violates California's Invasion of Privacy Act (Penal

28  Code §§ 630, *et seq.*).   Specifically, Defendants' policy and practice violate Penal Code § 632.7,

which prohibits the recording or intercepting (i.e., monitoring) of a communication made from a cellular or cordless telephone without the consent of all parties to the communication, and Penal Code § 632, which similarly prohibits the recording or intercepting (i.e. monitoring) of a confidential communication made from a hardwired landline telephone without the consent of all parties to the communication.

7.     As a result of Defendants' violations, all individuals who called a Wyndham toll-free telephone number and were routed to an Aegis-operated call center during the relevant time period through and including March 23, 2012, and were recorded or monitored or eavesdropped upon by Defendants surreptitiously and without disclosure are entitled to an award of statutory damages and injunctive relief as set forth in Penal Code § 637.2.

**PARTIES**

8.     Plaintiff Joyce Roberts is an individual and a resident of Fremont, California, a city within the County of Alameda.

9.     Wyndham Hotels and Resorts, LLC ("WHR") is a wholly owned subsidiary of Defendant Wyndham Hotel Group, LLC, which in turn is a subsidiary of Wyndham Worldwide Corporation, a publicly-traded corporation.  WHR is a limited liability company organized under the laws of the State of Delaware with a principal place of business in Parsippany, New Jersey.  WHR is the franchisor of the 'Wyndham®' trademark and service mark to independent hotel owners and operators.  WHR systematically and continuously does business in California and with California residents.

10.     Wyndham Hotel Group, LLC ("WHG") is one of three business units and a subsidiary of Wyndham Worldwide Corporation, a publicly-traded corporation.  WHG is a limited liability company organized under the laws of the State of Delaware with a principal place of business in Parsippany, New Jersey.  WHG provides centralized reservation support for the Wyndham hotel brands, including Wyndham Hotels and Resorts®, Wyndham Grand® Hotels and Resorts, and Wyndham Garden® Hotels, Super 8®, Travelodge®, Howard Johnson®, Ramada®, Baymont®, Day's Inn®, Knight's Inn®, Hawthorne®, Wingate®, Microtel®, and Tryp®.  WHG also provides telephone support for Wyndham Rewards®.  WHG contracted with Aegis to provide call center

1    services in connection with all of the Wyndham hotel brands and Wyndham Rewards®.   WHG

2    systematically and continuously does business in California and with California residents.

3           11.     "Defendants" or "Wyndham" means and refers to Defendant WHG, Defendant WHR,

4    each and all of them.

5           12.     Plaintiff is informed and believes and on that ground alleges that, at all relevant times,

6    each Defendant was the principal, agent, partner, joint venturer, officer, director, controlling

7    shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in

8    interest of the other Defendant, and was engaged with the other Defendant in a joint enterprise for

9    profit, and bore such other relationships to the other Defendant so as to be liable for their conduct

10   with respect to the matters alleged below.   Plaintiff is informed and believes and on that ground

11   alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above,

12   and that each knew or should have known about and authorized, ratified, adopted, approved,

13   controlled, aided and abetted the conduct of all Defendants.

14                                  **JURISDICTION AND VENUE**

15          13.     This Court has subject matter jurisdiction over this action under California Penal Code

16   §§ 632, 632.7 and 637.2.

17          14.     This Court has personal jurisdiction over the parties because Defendants

18   systematically and continually have conducted business in the State of California.   Likewise,

19   Plaintiff's rights were violated in the State of California and her claims arose out of her contact with

20   Defendants from California.

21          15.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part

22   of the events or omissions giving rise to the claims occurred within this District.

23                         **FACTUAL ALLEGATIONS COMMON TO THE CLASS**

24          16.     Plaintiff is informed and believes and on that ground alleges that WHR is the owner of

25   the "Wyndham®"-named hotel brands, including Wyndham Hotels and Resorts®, Wyndham

26   Grand® Hotels and Resorts, and Wyndham Garden® Hotels.   WHG, the parent company of WHR,

27   owns the telephone numbers associated with and provides centralized reservation support to

28   Wyndham Rewards®, the Wyndham®-named hotel brands, and the following hotel brands operated

by various WHG subsidiaries: Super 8®, Travelodge®, Howard Johnson®, Ramada®, Baymont®, Day's Inn®, Knight's Inn®, Hawthorne®, Wingate®, Microtel®, Tryp®, and possibly others. During the relevant time period, WHG contracted with Aegis to handle customer service calls routed to Aegis-operated call centers in the Philippines and India.

17.     Plaintiff is informed and believes and on that ground alleges that, during the relevant time period, the toll-free reservation and customer service telephone numbers associated with each of Wyndham's hotel brands connected callers to one of the four call centers operated by Defendant WHG or its vendor, Aegis.  All Wyndham®-named hotels and Wyndham-affiliated hotels, including franchises, are required to participate in the toll-free telephone numbers.  Plaintiff is further informed and believes and on that ground alleges that the toll-free telephone numbers associated with Defendant WHG's Wyndham Rewards loyalty program connect callers to one of the four call centers operated by Defendant WHG or its vendor, Aegis.  Plaintiff is informed and believes and on that ground alleges that Defendants' employees or Aegis's employees at the four call centers receive incoming calls originating from within the United States, including from California callers.

18.     Plaintiff is informed and believes and on that ground alleges that, at all relevant times through and including March 23, 2012, and without warning callers that their calls could be recorded or monitored, Defendants and their vendor, Aegis, intentionally used technology consisting of hardware and/or software to carry out a practice and policy of recording and/or intercepting (i.e., monitoring) and/or eavesdropping upon those calls that were made to Wyndham toll-free telephone numbers and routed to the Aegis-operated Philippines and India call centers.

19.     Plaintiff is informed and believes and on that ground alleges that Defendants' vendor's employees  at the Philippines and India call centers were directed, trained, and instructed to, and did, record and/or monitor and/or eavesdrop upon telephone calls between the Wyndham toll-free telephone numbers and callers, including California callers.

20.     During the relevant time period through and including March 23, 2012, Plaintiff called one or more Wyndham toll-free reservation telephone numbers numerous times from California using a hardwired landline and a cellular telephone.   Plaintiff called Wyndham toll-free reservation telephone numbers to inquire about hotel rates and/or to make reservations.  On numerous occasions,

Plaintiff's calls were routed to one or more of the Aegis-operated call centers and recorded without any warning to Plaintiff that her call would be recorded.

21.     During Plaintiff's telephone calls to Defendants and their vendor, Aegis, Defendants failed to disclose to Plaintiff that her telephone conversations were being recorded and/or monitored. Plaintiff did not give and could not have given consent for the telephone calls to be recorded, monitored or eavesdropped upon because she was unaware that Defendants and their vendor, Aegis, were engaged in that practice during the telephone calls.  Plaintiff is informed and believes and on that ground alleges that callers who called the Wyndham toll-free telephone numbers during the relevant time period through and including March 24, 2012 and were routed to one of the Aegis-operated call centers were not informed by Defendants or anyone else that their calls were being recorded and/or monitored and/or eavesdropped upon.  Thus, that recording and/or monitoring and/or eavesdropping necessarily occurred without the callers' knowledge or consent.

22.     Because there was no warning that calls would be recorded or monitored or eavesdropped upon, Plaintiff had a reasonable expectation that her telephone conversations with Defendants' vendor's employees were, and would remain, private and confined to the parties on the telephone.  That recording and/or monitoring and/or eavesdropping without her consent is highly offensive to Plaintiff and would be highly offensive to a reasonable person, including members of the proposed Plaintiff Classes.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action under Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and the class (the "Class") defined as follows:

All natural persons who were California residents and who, while physically located in California and using a cellular or cordless telephone: placed a call to one of Defendants' toll free telephone numbers at any time during the period from May 1, 2011 through March 23, 2012, inclusive; were routed to an Aegis-operated call center; spoke with a representative; and did not receive notice that their call was being recorded.  Excluded from the Class are all such calls to Howard Johnson® toll free telephone numbers during the Class Period, which calls are covered by the settlement in *Stone v. Howard Johnson*

*International, Inc.*, USDC CD CA Case No. 12-CV-01684 PSG (MANx).

24.     Plaintiff also brings this action on behalf of herself and the additional class (the "PC § 632 Class") defined as follows:

> All natural persons who were California residents and who, while physically located in California and using a hardwired landline telephone: placed a call to one of Defendants' toll free telephone numbers at any time during the period from May 1, 2011 through March 23, 2012, inclusive; were routed to an Aegis-operated call center; spoke with a representative; and did not receive notice that their call was being recorded.  Excluded from the PC §632 Class are all such calls to Howard Johnson® toll free telephone numbers during the Class Period, which calls are covered by the settlement in *Stone v. Howard Johnson International, Inc.*, USDC CD CA Case No. 12-CV-01684 PSG (MANx).

.

25.     The Class that Plaintiff seeks to represent and the PC § 632 Class that Plaintiff seeks to represent contain numerous members and are clearly ascertainable including, without limitation, by using the records of Defendants and their vendor, Aegis, and/or the telephone company records of Defendants and their vendor, Aegis, and/or other toll-free service providers' records regarding calls to the Wyndham toll-free telephone numbers routed to the Aegis-operated call centers to determine the size of the Class and the PC § 632 Class and to determine the identities of individual Class members and PC § 632 Class members.  Plaintiff reserves the right to amend or modify the Class and the PC § 632 Class definitions and to add subclasses or limitations to particular issues.

26.     By their unlawful actions, Defendants have violated Plaintiff's and the Class's and the PC § 632 Class's privacy rights under California's Invasion of Privacy Act, California Penal Code §§ 630 *et seq*.  The questions raised are, therefore, of common or general interest to the Class and the PC § 632 Class members, who have a well-defined community of interest in the questions of law and fact raised in this action.

27.     Plaintiff's claims are typical of those of the Class, as Plaintiff now suffers from the

same violations of the law as other putative Class members.  Similarly, Plaintiff's claims are typical of those of the PC § 632 Class, as Plaintiff now suffers from the same violations of the law as other putative PC § 632 Class members.  Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions to represent her and the Class and the PC § 632 Class, and Plaintiff will fairly and adequately represent the interests of the Class and the PC § 632 Class.

28.     This action may properly be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class and the PC § 632 Class are ascertainable.

**Numerosity**

29.     Based on information and belief, the Class and the PC § 632 Class consist of tens of thousands of individuals, making joinder of individual cases impracticable.

**Typicality**

30.     Plaintiff's claims are typical of the claims of all of the other members of the Class and the PC § 632 Class.  Plaintiff's claims and the Class and the PC § 632 Class members' claims are based on the same legal theories and arise from the same unlawful conduct, resulting in the same injury to Plaintiff and to all of the other Class and PC § 632 Class members.

**Common Questions of Law and Fact**

31.      There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members.  Those common questions of law and fact include, without limitation, the following:

     a.     Whether Defendants and their vendor, Aegis, had a policy or practice of recording and/or intercepting telephone calls made to the Wyndham toll-free telephone numbers that were routed to the Aegis-operated Philippines and India call centers;

     b.     Whether, on or before March 23, 2012, Defendants and their vendor, Aegis, had a policy or practice of not disclosing to callers who were routed to the Aegis-operated call centers that their calls might be recorded and/or monitored;

c.      Whether, on or before March 23, 2012, Defendants and their vendor, Aegis, had a policy or practice of not obtaining callers' consent to record and/or monitor telephone calls made to the Wyndham toll-free telephone numbers that were routed to the Aegis-operated call centers;

d.      Whether Defendants violated California Penal Code § 632.7 by recording and/or monitoring, without warning or disclosure, telephone conversations between callers using cellular and cordless telephones within California and the Wyndham toll-free telephone numbers;

e.      Whether Class members are entitled to statutory damages of $5,000 under Penal Code § 637.2 for each violation of Penal Code § 632.7.

32.     There are questions of law and fact common to the PC § 632 Class that predominate over any questions affecting only individual PC § 632 Class members.  Those common questions of law and fact include, without limitation, the following:

a.      Whether Defendants and their vendor, Aegis, had a policy or practice of recording and/or eavesdropping upon telephone calls made to the Wyndham toll-free telephone numbers that were routed to the Aegis-operated Philippines and India call centers;

b.      Whether, on or before March 23, 2012, Defendants and their vendor, Aegis, had a policy or practice of not disclosing to callers who were routed to the Aegis-operated call centers that their calls might be recorded and/or eavesdropped upon;

c.      Whether, on or before March 23, 2012, Defendants and their vendor, Aegis, had a policy or practice of not obtaining callers' consent to record and/or eavesdrop upon telephone calls made to the Wyndham toll-free telephone numbers that were routed to the Aegis- operated call centers;

d.      Whether Defendants violated California Penal Code § 632 by, without warning or disclosure, recording and/or eavesdropping upon telephone conversations

1                between callers using hardwired telephones within California and the

2                Wyndham toll-free telephone numbers;

3        e.        Whether PC § 632 Class members are entitled to statutory damages of $5,000

4                under Penal Code § 637.2 for each violation of Penal Code § 632.

5   **Adequacy**

6        33.    Plaintiff will fairly and adequately represent and protect the interests of the other

7 members of the Class and the PC § 632 Class.  Plaintiff has retained counsel with substantial

8 experience in prosecuting complex litigation and class actions.  Plaintiff and her counsel are

9 committed to prosecuting this action vigorously on behalf of the other Class and PC § 632 Class

10 members and have the financial resources to do so.  Neither Plaintiff nor her counsel have any

11 interests adverse to those of the other Class or PC § 632 Class members.

12   **Superiority**

13        34.    A class action is superior to other available methods for the fair and efficient

14 adjudication of this controversy because individual litigation of the claims of all Class and/or PC §

15 632 Class members is impracticable and questions of law and fact common to the Class and the PC §

16 632 Class predominate over any questions affecting only individual members of the Class and/or the

17 PC § 632 Class.  Even if every individual Class and/or PC § 632 Class member could afford

18 individual litigation, the court system could not.  It would be unduly burdensome to the courts if

19 individual litigation of the numerous cases were to be required.  Individualized litigation also would

20 present the potential for varying, inconsistent, or contradictory judgments and would magnify the

21 delay and expense to all parties and to the court system resulting from multiple trials of the same

22 factual issues.  By contrast, the conduct of this action as a class action with respect to some or all of

23 the issues will present fewer management difficulties, conserve the resources of the court system and

24 the parties and protect the rights of each Class and PC § 632 Class member.  Further, it will prevent

25 the very real harm that would be suffered by numerous putative Class and PC § 632 Class members

26 who simply will be unable to enforce individual claims of this size on their own, and by Defendants'

27 competitors, who will be placed at a competitive disadvantage as their reward for obeying the law.

28 Plaintiff anticipates no difficulty in the management of this case as a class action.

35.    The prosecution of separate actions by individual Class and PC § 632 Class members may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class and PC § 632 Class members not parties to those adjudications or that would substantially impair or impede the ability of those non-party Class or PC § 632 Class members to protect their interests.

36.    The prosecution of individual actions by Class and PC § 632 Class members would establish inconsistent standards of conduct for Defendants.

37.    Defendants have acted or refused to act in respects generally applicable to the Class and the PC § 632 Class, thereby making appropriate final and injunctive relief or corresponding declaratory relief with regard to members of the Class and/or the PC § 632 Class as a whole as requested herein.   Likewise, Defendants' conduct as described above is unlawful, is capable of repetition, and will continue unless restrained and enjoined by the Court.

## FIRST CAUSE OF ACTION

**Unlawful Recording and Intercepting of Communications against Defendants**

**(Violation of California Penal Code § 632.7)**

38.    Plaintiff incorporates each allegation set forth above as if fully set forth herein and further alleges as follows.

39.    Plaintiff participated in numerous telephone calls that she made to one or more Wyndham toll-free telephone numbers while within the State of California and that were routed to one of the Aegis-operated call centers.  Plaintiff used a cellular telephone to engage in at least some of those conversations.

40.    Plaintiff is informed and believes and on that ground alleges that, at all relevant times, Defendants and their vendor, Aegis, had a policy and practice of using hardware and/or software that enabled them to surreptitiously record and/or monitor conversations with Plaintiff and Class members who used cellular or cordless telephones to place calls to Wyndham's toll-free telephone numbers and were routed to one of the Aegis-operated call centers.

41.    Plaintiff is informed and believes and on that ground alleges that, at all relevant times through and including March 23, 2012, Defendants and their vendor, Aegis, had and followed a

policy and practice of intentionally and surreptitiously recording and/or monitoring Plaintiff's and Class members' cellular and cordless telephone calls that were placed to Wyndham's toll-free telephone numbers and routed to one of the Aegis-operated call centers.

42.     Because, at all relevant times before March 23, 2012, Defendants and their vendor, Aegis, had and followed a policy and practice of not disclosing to Plaintiff or Class members that their cellular and cordless telephone calls to the Wyndham toll-free telephone numbers that were routed to one of the Aegis-operated call centers were recorded and/or monitored, Defendants and their vendor, Aegis, did not obtain, and could not have obtained, Plaintiff's or Class members' express or implied advance consent to the recording or monitoring of those conversations.   As a result, Plaintiff and Class members had an objectively reasonable expectation that their calls were not being recorded and/or monitored.   That expectation and its objective reasonableness arise, in part, from the objective offensiveness of surreptitiously recording people's conversations, the absence of even a simple pre-recorded message as short as four simple words – "calls may be recorded" – and the ease with which such a message could have been put in place.   As the California Supreme Court has stated, "in light of the circumstance that California consumers are accustomed to being informed at the outset of a telephone call whenever a business entity intends to record the call, it appears equally plausible that, in the absence of such an advisement, a California consumer reasonably would anticipate that such a telephone call is not being recorded, particularly in view of the strong privacy interest most persons have with regard to the personal financial information frequently disclosed in such calls."   (See *Kearney v. Salomon Smith Barney* (2006) 39 Cal. 4th 95.)

43.     Defendants' conduct as described above violated California Penal Code § 632.7(a). Under Penal Code § 637.2, Plaintiff and Class members therefore are entitled to $5,000 in statutory damages per violation, even in the absence of proof of actual damages, the amount deemed proper by the California Legislature.   Plaintiff and Class members also are entitled to injunctive relief to enjoin further violations.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SECOND CAUSE OF ACTION**

**Unlawful Recording of and Eavesdropping upon Confidential Communications**

**against Defendants**

**(Violation of California Penal Code § 632)**

44.     Plaintiff incorporates each allegation set forth above as if fully set forth herein and further alleges as follows.

45.     Plaintiff participated in numerous telephone calls that she made to one or more Wyndham toll-free telephone numbers while within the State of California and that were routed to one of the Aegis-operated call centers.  Plaintiff used a hardwired landline telephone to engage in at least some of those conversations.

46.     Plaintiff is informed and believes and on that ground alleges that, at all relevant times, Defendants and their vendor, Aegis, had a policy and practice of using hardware and/or software that enabled them to surreptitiously record and/or monitor conversations with Plaintiff and PC § 632 Class members who used hardwired landline telephones to place calls to Wyndham's toll-free telephone numbers and were routed to one of the Aegis-operated call centers.

47.     Plaintiff is informed and believes and on that ground alleges that, at all relevant times through and including March 23, 2012, Defendants and their vendor, Aegis, had and followed a policy and practice of intentionally and surreptitiously recording and/or eavesdropping upon Plaintiff's and PC § 632 Class members' telephone calls that were placed to Wyndham toll-free telephone numbers and routed to one of the Aegis-operated call centers.

48.     Because, at all relevant times through and including March 23, 2012, Defendants and their vendor, Aegis, had and followed a policy and practice of not disclosing to Plaintiff or PC § 632 Class members that their telephone calls to Wyndham toll-free telephone numbers that were routed to one of the Aegis-operated call centers would be recorded and/or eavesdropped upon, Defendants and their vendor, Aegis, did not obtain, and could not have obtained, Plaintiff's or PC § 632 Class members' express or implied advance consent to the recording or eavesdropping of those conversations.

49.     Plaintiff is informed and believes and on that ground alleges that the telephone calls that were made to Wyndham toll-free telephone numbers and routed to one of the Aegis-operated call centers and were surreptitiously recorded and/or eavesdropped upon by Defendants and their vendor, Aegis, were "confidential communications" within the meaning of California Penal Code § 632(c) in that Plaintiff and PC § 632 Class members desired and expected the telephone communications as a whole (i.e., both sides of the conversation, taken together) to be confined to the parties to those calls and not recorded, monitored, and/or further disseminated.  Because Defendants and their vendor, Aegis,  never disclosed to them that their calls were being recorded and/or eavesdropped upon and their consent for recording and/or eavesdropping upon their calls never was sought, Plaintiff and PC § 632 Class members had an objectively reasonable expectation that their calls were not being recorded and/or eavesdropped upon.  That expectation and its objective reasonableness arise, in part, from the objective offensiveness of surreptitiously recording people's conversations, the absence of even a simple pre-recorded message as short as four simple words – "calls may be recorded" – and the ease with which such a message could have been put in place.  As the California Supreme Court has stated, "in light of the circumstance that California consumers are accustomed to being informed at the outset of a telephone call whenever a business entity intends to record the call, it appears equally plausible that, in the absence of such an advisement, a California consumer reasonably would anticipate that such a telephone call is not being recorded, particularly in view of the strong privacy interest most persons have with regard to the personal financial information frequently disclosed in such calls."  (See *Kearney v. Salomon Smith Barney* (2006) 39 Cal. 4th 95.)

50.     Defendants' conduct as described above violated California Penal Code § 632(a).  Under Penal Code § 637.2, Plaintiff and PC § 632 Class members therefore are entitled to $5,000 in statutory damages per violation, even in the absence of proof of actual damages, the amount deemed proper by the California Legislature.  Plaintiff and PC § 632 Class members also are entitled to injunctive relief to enjoin further violations.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff, on behalf of herself and members of the Class and the PC § 632 Class, prays for the following relief:

a.   An order certifying the Class and appointing Plaintiff representative of the Class, and appointing counsel for Plaintiff as lead counsel for the Class;

b.   An order certifying the PC § 632 Class and appointing Plaintiff as representative of the PC § 632 Class, and appointing counsel for Plaintiff as lead counsel for the PC § 632 Class;

c.   An order declaring that the actions of Defendants, as described above, violate California Penal Code § 632.7;

d.   An order declaring that the actions of Defendants, as described above, violate California Penal Code § 632;

e.   A judgment for and award of statutory damages to Plaintiff and the members of the Class and the PC § 632 Class pursuant to California Penal Code § 637.2;

f.   A permanent injunction under Penal Code § 637.2 enjoining Defendants from engaging in further conduct in violation of California Penal Code § 630, *et seq;*

g.   Payment of costs of the suit;

h.   Payment of attorneys' fees under California Code of Civil Procedure § 1021.5;

i.   An award of pre- and post-judgment interest to the extent allowed by law; and

j.   For such other or further relief as the Court may deem proper.

Respectfully submitted,

Dated: _____, 2016          **KELLER GROVER LLP**

_/s/_____

Eric A. Grover
Attorneys for Plaintiff

## **JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: _____, 2016                    **KELLER GROVER LLP**

_/s/_ _____

Eric A. Grover
Attorneys for Plaintiff

**EXHIBIT H**

**PROPOSED PRELIMINARY APPROVAL ORDER**

# EXHIBIT H

ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rjung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone:   (415) 543-1305
Facsimile:    (415) 543-7861

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN,**
  **A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California  95630
Telephone:   (916) 447-0100
Facsimile:    (916) 933-5533

Attorneys for Plaintiff
JOYCE ROBERTS

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE ROBERTS, individually and on behalf of classes of similarly situated individuals,<br><br>                          Plaintiffs,<br><br>         v.<br><br>WYNDHAM HOTELS AND RESORTS, LLC; and DOES 1 through 10, inclusive,<br><br>                          Defendants. | Case No:  5:12-cv-05083-PSG<br><br>Hon. Magistrate Judge Paul S. Grewal<br><br><u>CLASS ACTION</u><br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:      March 22, 2016<br>Time:     10:00 a.m.<br>Ctrm:    5, 4th Floor<br><br>Complaint Filed:   July 17, 2012<br>FAC Filed:       February 2, 2015 |

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

The Motion for Preliminary Approval of Class Action Settlement, filed by Plaintiff JOYCE ROBERTS ("Plaintiff") came on for hearing regularly in the above captioned court, the Honorable Paul S. Grewal presiding. All parties appeared by counsel of record.

Having fully received and considered the Plaintiff's motion, the Declarations of Eric A. Grover and Scot D. Bernstein, the Declaration of Alicia Gehring of Kinsella Media, the Settlement Agreement and Release ("Settlement Agreement") between Plaintiff and Defendant Wyndham Hotels and Resorts, LLC and proposed defendant Wyndham Hotel Group, LLC (collectively referred to as "Defendants"), the proposed Settlement Class Notices and Claim Form, and the arguments of counsel presented to the Court at the hearing of this motion, and with GOOD CAUSE APPEARING, the Court hereby rules as follows:

1.   The Court GRANTS Plaintiff's Motion for Preliminary Approval of Class Action Settlement.

2.   The Court GRANTS preliminary approval of the terms and conditions contained in the Settlement Agreement. The Court finds that the terms of the Settlement Agreement are within the range of possible approval at the final approval hearing. Unless otherwise provided in this Order, all capitalized terms shall have the same meaning as set forth in the Settlement Agreement.

3.   The Court FINDS that the following class should be preliminarily certified for settlement purposes only:

All natural persons who were California residents and who, while physically located in California: placed a call to one of Defendants' toll free telephone numbers at any time during the period from May 1, 2011 through March 23, 2012, inclusive; were routed to an Aegis-operated call center; spoke with a representative; and did not receive notice that their call was being recorded. Excluded from the Settlement Class are: (1) all such calls to Howard Johnson toll free telephone numbers during the Class Period, which calls are covered by the settlement in *Stone v. Howard*

*Johnson International, Inc.*, USDC CD CA Case No. 12-CV-01684 PSG (MANx); and (2) persons who validly opt out of the settlement.

The Court refers to the class just defined as the "Settlement Class."

4.      The Court APPROVES the filing of the proposed Second Amended Complaint and the adding of Wyndham Hotel Group, LLC as an additional defendant in this action for purposes of this settlement only.  The Second Amended Complaint shall be filed within five days of the date of this Order.  Defendants shall have 10 days thereafter to file an answer to the Second Amended Complaint.

5.      The Court FINDS that, for the purposes of approving this settlement only, the proposed Settlement Class meets the requirements for certification under Rule 23 of the Federal Rules of Civil Procedure: (a) the proposed Settlement Class is ascertainable and so numerous that joinder of all members of the Class are impracticable; (b) there are questions of law or fact common to members of the proposed Class; (c) the claims of the Named Plaintiff are typical of the claims of the members of the proposed Settlement Class and the Named Plaintiff are representative of the Settlement Class; (d) Plaintiff's Counsel Keller Grover LLP and Law Offices of Scot D. Bernstein, A Professional Corporation, will fairly and adequately protect the interests of the Settlement Class; and (e) a class action is superior to the other available methods for an efficient resolution of this controversy.

6.      The Court APPOINTS as Settlement Class Counsel Keller Grover LLP and Law Offices of Scot D. Bernstein, A Professional Corporation.

7.      The Court APPROVES Plaintiff Joyce Roberts as Settlement Class Representative.

8.      The Court APPROVES Rust Consulting as Claims Administrator for the purpose of this settlement and pursuant to the terms contained in the Settlement Agreement.  Rust Consulting is required to submit admissible evidence to support its request for payment as part of the final approval motion.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

9. The Court APPROVES the Long-form Settlement Class Notice, Settlement Class Notice Postcard, Settlement Class Email Notice, Publication Notice (collectively referred to as the Settlement Class Notices), press release and Claim Form, which are attached hereto as **Exhibits A, B, C, D, E, and F** respectively. The Court finds that the notice procedure set forth in the Settlement Agreement and described in the Declaration of Alicia Gehring of Kinsella Media, which includes the email distribution of the Settlement Class Email Notice, the U.S. mail distribution of the Settlement Class Notice Postcard, the publication of the Settlement Website, an online banner advertising campaign, publications in the newspapers specified in the Settlement Agreement in major California metropolitan regions and the California edition of Parade magazine, notice through TopClassActions.com and issuance of a press release, constitutes the best notice practicable under the circumstances and is in full compliance with the laws of the United States and the requirements of due process. The Court further finds that the Settlement Class Notices and Claim Form fully and accurately inform Class Members of all material elements of the Settlement Agreement, of each Class Member's right to submit a claim, of each Class Member's right to be excluded from the settlement, and of each Class Member's right to object to the settlement.

10. The Court DIRECTS Defendants to compile and, no later than 45 days after the date of this Order, provide to the Claims Administrator, in the manner described in the Settlement Agreement, the Potential Class Member Contact List.

11. The Court DIRECTS the Claims Administrator, after receiving the list from Defendant and no later than 60 calendar days after the entry of this Order, to: (1) run reverse directory searches in an effort to obtain the names and/or mailing addresses associated with each telephone number for which no name or mailing address was provided; and (2) run all mailing addresses through the United States Postal Service National Change Of Address (or comparable) database.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

12. The Court DIRECTS the Claims Administrator, no later than 50 days after the entry of this Order, to publish the Settlement Website on the Internet at the URL www.CARecordedCallsSettlement.com (or a similar URL if that one is not available)("Settlement Website") which shall set forth a summary of the terms of the settlement, state the means by which Settlement Class Members may communicate with the Claims Administrator (including, but not limited to, the Claims Administrator's business name, address, phone number, and e-mail address), contain a set of Frequently Asked Questions ("FAQs"), instructions on how to submit a Claim Form (both electronically and by mail) and the deadline associated therewith, instructions on how to object and opt-out of the settlement and the deadlines associated therewith, and a toll-free telephone number which Settlement Class members may call to reach the Claims Administrator for questions. The Settlement Website shall also provide, free of charge, a viewable, printable and downloadable copy, in PDF file format, of each of the following documents when they become available: the Settlement Agreement; the Second Amended Complaint; the Answer to the Second Amended Complaint; this order preliminarily approving the Class Action Settlement and certifying the Settlement Class; the Claim Form; the Long-form Settlement Class Notice; the Motion for an award of attorney's fees, litigation costs, administration costs, and the Settlement Class Representatives' enhancement award; and the Motion for Final Approval. The Settlement Website shall remain active for 180 calendar days after the Settlement Effective Date.

13. The Court DIRECTS the Claims Administrator to send the Settlement Class Email Notice to each of the email addresses provided in the Potential Class Member Contact List no later than 75 days after the entry of this Order.

14. The Court DIRECTS the Claims Administrator, no later than no later than 75 days after the entry of this Order, to (1) send the Settlement Class Notice Postcard via U.S. Mail to each mailing address in the Potential Class Member Contact List and

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

(2) send the Settlement Class Notice Postcard via U.S. Mail to additional mailing addresses that the Class Administrator was able to locate through reverse directory searches.

15.   The Court DIRECTS the Claims Administrator, no later than 50 days after the entry of this Order, to initiate the online banner advertising campaign, as set forth in the Settlement Agreement.   The Court further DIRECTS the Claims Administrator to ensure that notice of the settlement is posted on TopClassActions.com.

16.   The Court DIRECTS the Claims Administrator, between 75 and 90 days after the entry of this Order, to cause the Publication Notice to be published twice in the following publications, which are distributed throughout the counties of San Francisco, Alameda, Santa Clara, Monterey, Los Angeles, Orange, and San Diego: *San Francisco Weekly, East Bay Express, Metro Silicon Valley, Bay Area Report, Monterey County Weekly, San Diego Reader, Orange County Weekly,* and *LA Weekly* and once in Parade Magazine's California edition.

17.   The Claims Administrator shall take all other necessary actions in furtherance of obtaining correct mailing address information for Settlement Class Members, determining Settlement Class Members' payment amounts, receiving and processing Class Member opt-outs and objections, and other claims administration functions, as are specified in the Settlement Agreement.

18.   Settlement Class Members who wish to participate in the settlement shall completely fill out and sign (or electronically submit) a Claim Form in the manner provided for in the Settlement Agreement.   Claim Forms submitted by Class Members must be postmarked or received electronically no later than 165 days after entry of this Order, which also means no later than 90 calendar days after the date on which the Claims Administrator sends out the Settlement Class Notice Postcard and Settlement Class Email Notice.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

19. The Court APPROVES the proposed procedure for the Settlement Class Members to submit a request for exclusion from the settlement.  Any Settlement Class Member requesting exclusion from the settlement must mail a signed letter requesting exclusion from the settlement to the Claims Administrator so that it is postmarked no later than 165 days after entry of this Order, which also means no later than 90 calendar days after the date on which the Claims Administrator sends out the Postcard Settlement Class Notice and Email Settlement Class Notice.  Any Settlement Class Member who submits a valid and timely request for exclusion shall no longer be a member of the Settlement Class, shall be barred from participating in or objecting to this settlement, and shall receive no benefit from this settlement.

20. Any Settlement Class Member who does not submit a valid and timely request for exclusion from the Settlement Class will be bound by all proceedings, orders, and judgments in this action relating to the Settlement Agreement.

21. The Court further ORDERS that, as provided in the Settlement Agreement and under Federal Rule of Civil Procedure 23(e)(5), each Class Member shall be given a full opportunity to object to the Class Action Settlement.  As explained in the Settlement Class Notices, any Class Member seeking to object to the settlement shall submit the Objection to the Court no later than 165 calendar days after the entry of this Order.  To be considered by the Court, the objection must include: (1) a heading containing the name and case number of the Action; (2) the Settlement Class Member's name and postal address; (3) proof of the objector's membership in the Settlement Class in the form of a statement made under penalty of perjury; (4) a detailed statement of each objection, including, if available, the factual and legal basis for each objection; and (5) a statement of whether the Settlement Class Member intends to appear, either in person or through counsel, at the final approval hearing, and, if through counsel, a statement

identifying the counsel's name, postal address, telephone number, and email address.

22.    Class Counsel shall file a motion for approval of reasonable attorneys' fees, litigation costs, administration costs, and enhancement award for Plaintiff Joyce Roberts no later than 150 calendar days after the entry of this Order, which is 15 calendar days before the deadline by which Settlement Class Members may object to or opt out of the settlement.

23.    Class Counsel shall file a motion for final approval of the settlement by no later than 175 calendar days after entry of this Order, which is 20 calendar days before the first date that the final approval hearing may be scheduled.

24.    The Final Approval Hearing is scheduled for _____, 2016 at 10:00 a.m., which is at least 195 days from the entry of this Order, in Courtroom 5 of this Court's San Jose Courthouse, at which time the Court shall finally determine whether the settlement is fair, reasonable and adequate.  The date and time selected for the hearing must appear in the Settlement Class Notice and on the Settlement Website.

25.    Except as provided herein and as necessary to effectuate the Settlement Agreement, the action is hereby stayed in its entirety and all currently calendared events are hereby vacated unless and until the Court renders a final decision on approval of the settlement.

**IT IS SO ORDERED.**

Dated: _____, 2016

_____
PAUL S. GREWAL
United States Magistrate Judge

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

Respectfully submitted,

Dated:  February 16, 2016            **KELLER GROVER LLP**


                                     By:  _/s/ Eric A. Grover_____
                                          ERIC A. GROVER
                                          RACHAEL G. JUNG
                                          *Counsel for Plaintiff*
                                          JOYCE ROBERTS

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

# EXHIBIT I

# PROPOSED FINAL APPROVAL ORDER AND JUDGMENT

# EXHIBIT I

ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rjung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone:   (415) 543-1305
Facsimile:    (415) 543-7861

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN,**
  **A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California 95630
Telephone:   (916) 447-0100
Facsimile:    (916) 933-5533

Attorneys for Plaintiff
JOYCE ROBERTS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE ROBERTS, individually and on behalf of classes of similarly situated individuals,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>WYNDHAM HOTELS AND RESORTS, LLC; WYNDHAM HOTEL GROUP, LLC; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No:  5:12-cv-05083-PSG<br><br>CLASS ACTION<br><br>**[PROPOSED] ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND JUDGMENT**<br><br>Date:      _____, 2016<br>Time:    10:00 a.m.<br>Ctrm:    5, 4th Floor<br><br>Complaint Filed:   July 17, 2012<br>FAC Filed:       February 2, 2015<br>SAC Filed:       _____, 2016 |

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

The Court having granted preliminary approval of the parties' class action settlement on _____, 2016, and directed notice of the proposed settlement to all Settlement Class Members, having read and considered Plaintiff's Motion for Final Approval of Class Action Settlement and Judgment and supporting papers, including Defendants' Non-Opposition to Plaintiff's Motion for Final Approval of Class Action Settlement and Judgment, and upon consideration of argument presented on _____, 2016, and with GOOD CAUSE APPEARING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.      This Court has jurisdiction over the subject matter of this Action and all parties to this Action, including the Settlement Class Members, as defined in Section 1 of the Settlement Agreement and Release, and defendants Wyndham Hotels and Resorts, LLC and Wyndham Hotel Group, LLC ("Defendants").      Specifically, the members of the Settlement Class that are subject to this Final Order and Judgment are: All natural persons who were California residents and who, while physically located in California: placed a call to one of Defendants' toll free telephone numbers at any time during the period from May 1, 2011 through March 23, 2012, inclusive; were routed to an Aegis-operated call center; spoke with a representative; and did not receive notice that their call was being recorded. Excluded from the Settlement Class are all calls to Howard Johnson toll free telephone numbers during the Class Period, which calls are covered by the settlement in *Stone v. Howard Johnson International, Inc.*, USDC CD CA Case No. 12-CV-01684 PSG (MANx).   Excluded from the Settlement Class are the persons listed on Exhibit A hereto who timely requested to be excluded from the Settlement Class.

2.      The Court hereby finds that the notice of settlement, which was provided to all Settlement Class Members via email, U.S. mail, a settlement website, an online banner advertising campaign, and print publication, all as described in the

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

Agreement[1] and ordered by the Court, provided the date of the final fairness hearing, the manner in which Settlement Class Members could object to or participate in the settlement, and the manner in which Settlement Class Members could opt out of the class.  The Court finds that it was the best notice practicable under the circumstances, and complied fully with Federal Rule of Civil Procedure 23(c)(2)(B) and 23(e)(1), due process, and all other applicable laws.  The Court finds that the notice has also been given as required by 28 U.S.C. § 1715.  The Court further finds that a full and fair opportunity has been afforded to all Settlement Class Members to participate in the proceedings convened to determine whether the proposed settlement should be given final approval.  Any objections filed to the settlement are hereby overruled.

3.  The Court finds that the settlement is fair, reasonable, and adequate in all respects, and is the product of good faith, arms'-length negotiations between the parties, and fully complies with all applicable provisions of law.  Accordingly, the Court hereby finally and unconditionally approves the settlement, and specifically:

a. Approves the non-reversionary $7,325,000.00 Gross Settlement Amount as fair, reasonable, and adequate.  Within the deadline set forth in the Settlement Agreement, Defendant shall deposit $7,325,000.00 to fund all payments required by the Settlement Agreement and this Final Approval Order and Judgment;

b. Approves that from the Gross Settlement Fund, $_____ be paid to the named Plaintiff and Settlement Class Representative Roberts as a service award, which is justified by the time and effort expended by her on behalf of the Settlement Class and the risk she assumed in bringing this action;

c. Approves the payment from the Gross Settlement Fund of Settlement Class Counsel's attorneys' fee request of $1,831,250.00, which represents

---

[1] Unless otherwise provided in this Order, all capitalized terms shall have the same meaning as set forth in the Settlement Agreement and Release ("Settlement Agreement").

twenty-five percent of the Gross Settlement Amount and a multiplier of _____ on Settlement Class Counsel's actual lodestar of $_____ through _____, 2016.   The hourly rates used to arrive at Settlement Class Counsel's lodestar are consistent with market rates and reasonable in light of Settlement Class Counsel's skill, experience, and expertise.  The Court is further satisfied that the number of hours expended on the litigation is reasonable and that an award of fees to Class Counsel in the amount of $1,831,250.00 is reasonable and appropriate under the circumstances of this case;

d. Approves Settlement Class Counsel's request for reimbursement from the Gross Settlement Fund of litigation expenses of $_____;

e. Approves an additional payment from the Gross Settlement Fund to Rust Consulting, the Claims Administrator, of an amount not to exceed $_____, as final payment for the costs and expenses of administering the settlement;

f. Approves payment from the Net Settlement Fund of the amount determined by the Claims Administrator to be due to each Settlement Class Member who submitted a valid and timely Claim Form as specified in the Agreement; and

g. Approves the payment of any unused funds remaining in the Gross Settlement Amount, if any, and the funds represented by any uncashed settlement checks, to the designated cy pres recipient, Privacy Rights Clearinghouse.

4.    This Final Approval Order and Judgment applies to all claims or causes of action settled under the terms of the Settlement Agreement, and shall be fully binding with respect to all Settlement Class Members who did not properly request exclusion pursuant to the Preliminary Approval Order.  This Final Approval Order and Judgment shall have a res judicata effect and bar the named Plaintiff and each

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

Settlement Class Member from bringing any action asserting any "Released Claims" as provided in the Settlement Agreement.

5.      In addition, each Settlement Class Member has waived with respect to the Released Claims only any and all provisions, rights and benefits, which they now have or in the future may be conferred to them by section 1542 of the California Civil Code or any comparable statutory or common law provision of any other jurisdiction.

6. This document shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure. Final Judgment in this action is hereby entered. This action, including all claims asserted herein, is hereby dismissed with prejudice in all respects.

7. This Order is not, and shall not be construed as, an admission by Defendants of any liability or wrongdoing in this or in any other proceeding.

8. Without affecting in any way the finality of this judgment, this Court shall retain jurisdiction to enforce the terms of the Settlement Agreement and Release for one year from the date of this Final Approval Order and Judgment.

**IT IS SO ORDERED.**

Dated: _____, 2016

_____
PAUL S. GREWAL
United States Magistrate Judge

Respectfully submitted,

Dated:  January ___, 2016          **KELLER GROVER LLP**

By:   _/s/ *Eric A. Grover*_____
ERIC A. GROVER
RACHAEL G. JUNG

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

Exhibit 2

1  ERIC A. GROVER (SBN 136080)
   eagrover@kellergrover.com
2  RACHAEL G. JUNG (SBN 239323)
   rjung@kellergrover.com
3  **KELLER GROVER LLP**
   1965 Market Street
4  San Francisco, California 94103
   Telephone: (415) 543-1305
5  Facsimile: (415) 543-7861

6
   SCOT BERNSTEIN (SBN 94915)
7  swampadero@sbernsteinlaw.com
   **LAW OFFICES OF SCOT D. BERNSTEIN,**
8  **A PROFESSIONAL CORPORATION**
   101 Parkshore Drive, Suite 100
9  Folsom, California  95630
   Telephone: (916) 447-0100
10 Fax: (916) 933-5533

11 Attorneys for Plaintiff
   JOYCE ROBERTS

12

13                **UNITED STATES DISTRICT COURT**

14              **NORTHERN DISTICT OF CALIFORNIA**

15

16 JOYCE ROBERTS, individually and on        ) Case No.:  5:12-cv-05083-PSG
   behalf of classes of similarly situated   )
17 individuals,                               ) Hon. Magistrate Judge Paul S. Grewal
                                              )
18              Plaintiff,                    ) CLASS ACTION
                                              )
19 v.                                         ) **[PROPOSED] SECOND AMENDED**
                                              ) **COMPLAINT FOR DAMAGES AND**
20 WYNDHAM HOTELS AND RESORTS,                ) **INJUNCTIVE RELIEF**
   LLC; ~~WYNDHAM HOTEL GROUP, LLC;~~         )
21 ~~and DOES 1 through 10, inclusive~~,      )
                                              ) **DEMAND FOR JURY TRIAL**
22                                            )
                                              )
23              Defendants.                   )
   _____        )

24

25

26

27

28

~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES                                    1

**CLASS ACTION COMPLAINT**

Plaintiff Joyce Roberts ("Plaintiff"), on behalf of herself and the two classes ("the Classes") of similarly situated individuals as defined below, alleges on information and belief and the investigation by counsel as follows:

**INTRODUCTION**

1.      This class action lawsuit arises out of ~~Defendant Wyndham Hotels and Resorts, LLC's ("Defendant~~Defendants' Wyndham Hotel and Resorts, LLC ("WHR") and Wyndham Hotel Group, LLC's ("WHG")  (WHR and WHG referred to herein collectively as "Defendants" or "Wyndham") policy and practice of recording and/or intercepting and/or eavesdropping upon calls made or routed to certain call centers operated by Aegis USA, Inc., currently known as TPUSA-FHCS, Inc., ("Aegis") on behalf of and as ~~an agent~~a vendor for Wyndham.  During the relevant time period, telephone calls to Wyndham-owned toll-free reservation, rewards, and customer service telephone numbers (collectively, ~~Wyndham's~~Wyndham "toll-free telephone numbers"~~)~~"), which service Wyndham®-named hotels (Wyndham Hotels and Resorts®, Wyndham Grand® Hotels and Resorts, and Wyndham Garden® Hotels) as well as Wyndham-affiliated hotel brands Travelodge®, Ramada®, Howard Johnson®, Knights Inn®, Wingate®, Days Inn®, Super 8®, Baymont®, Hawthorn®, Microtel®, and Tryp®, and also Wyndham Rewards® were routed to one of four separate call centers located in Aberdeen, South Dakota; Saint John, New Brunswick, Canada; Manila, Philippines; and Tamil Nadu, India.  The Aberdeen and Saint John call centers were operated by Defendant W~~yndham, Hotel Group, LLC ("WHG"),~~ while the Philippines and India call centers were operated by Aegis as ~~an agent~~a vendor on behalf of Wyndham.

2.      Before March 2012, ~~Wyndham~~WHG recorded incoming telephone calls to ~~its~~Wyndham toll-free telephone numbers routed to the Aberdeen and Saint John call centers based on pre-set recording schedules.  Under the recording schedules, ~~Wyndham~~WHG would record calls to certain toll-free numbers and/or customer service groups only during set hours of the day.  Before August 2011, callers who were routed to the Aberdeen and Saint John call centers during the pre-set "recording" hours and were recorded received a pre-recorded disclosure that their calls may be

recorded.  Callers routed to the Aberdeen and Saint John call centers during "non-recording" hours and were not recorded received no warning or disclosure.  From August 2011 to the present, all callers who were routed to the Aberdeen and Saint John call centers at any time received a a pre-recorded disclosure that their calls may be recorded.

3.      Until March 2324, 2012, no warning or disclosure was provided to any incoming callers to Wyndham toll-free telephone numbers routed to the Philippines and India call centers that their calls may be recorded.

4.      WyndhamWHG owns numerous toll-free reservation, rewards, and customer service telephone numbers, including 1-866-WYN-RWDS (1-866-996-7937) and other toll-free telephone numbers which connect callers with Wyndham Rewards.hotel brands, including Wyndham Hotels and Resorts®, Wyndham Grand® Hotels and Resorts, Wyndham Garden® Hotels, Super 8®, Travelodge®, Howard Johnson®, Ramada®, Baymont®, Day's Inn®, Knight's Inn®, Hawthorne®, Wingate®, Microtel®, and Tryp®, as wells as Wyndham Rewards®.  Wyndham Rewards® is the loyalty program for all Wyndham-owned hotel brands and is owned by WHG.  During the relevant time period through and including March 2324, 2012, some callers to Wyndham Rewards toll-free telephone numbers were connected to one or more call centers operated by Aegis.  Also during the relevant time period through and including March 2324, 2012, numerous other toll-free telephone numbers related to Wyndham'sWyndham hotel brands, including, but not limited to, Wyndham Hotels &and Resorts®, Wyndham Grand® Hotels and Resorts, Wyndham Garden® Hotels, Super 8,®, Travelodge,®, Howard Johnson,®, Ramada,®, Baymont,®, Day's Inn.®, Knight's Inn,®, Hawthorne,®, Wingate,®, Microtel®, and Tryp Hotels,®, also connected callers to one or more call centers operated by Aegis.

5.      During the relevant time period through and including March 2324, 2012, DefendantDefendants intentionally and surreptitiously recorded and/or intercepted (i.e., monitored) telephone calls made to Wyndham toll-free telephone numbers that were routed to the Aegis-operated Philippines and India call centers.  DefendantDefendants did so without warning or disclosing to callers that their calls might be recorded or intercepted/monitored.  (The terms "intercept" and

FIRSTSECOND AMENDED COMPLAINT FOR DAMAGES                                             3

"monitor" are used interchangeably in this complaint.)

6.     ~~Defendant's~~Defendants' policy and practice of recording and intercepting telephone conversations without the consent of all parties violates California's Invasion of Privacy Act (Penal Code §§ 630, *et seq.*).  Specifically, ~~Defendant's~~Defendants' policy and practice violate Penal Code § 632.7, which prohibits the recording or intercepting (i.e., monitoring) of a communication made from a cellular or cordless telephone without the consent of all parties to the communication, and Penal Code § 632, which similarly prohibits the recording or intercepting (i.e. monitoring) of a confidential communication made from a hardwired landline telephone without the consent of all parties to the communication.

7.     As a result of ~~Defendant's~~Defendants' violations, all individuals who called a Wyndham toll-free telephone number and were routed to an Aegis-operated call center during the relevant time period through and including March 23~~24~~, 2012, and were recorded or monitored or eavesdropped upon by ~~Defendant~~Defendants surreptitiously and without disclosure are entitled to an award of statutory damages and injunctive relief as set forth in Penal Code § 637.2.

## PARTIES

8.     Plaintiff Joyce Roberts is an individual and a resident of Fremont, California, a city within the County of Alameda.

9.     Wyndham Hotels and Resorts, LLC ("~~Wyndham~~WHR") is a wholly owned subsidiary of Defendant Wyndham Hotel Group, LLC, which in turn is a subsidiary of Wyndham Worldwide Corporation, a publicly-traded corporation.  WHR is a limited liability company organized under the laws of the State of Delaware with a principal place of business in Parsippany, New Jersey.  WHR is the franchisor of the 'Wyndham®' trademark and service mark to independent hotel owners and operators.  WHR systematically and continuously does business in California and with California residents.

~~9.~~10.   Wyndham Hotel Group, LLC ("WHG") is one of three business units and a subsidiary of Wyndham Worldwide Corporation, a publicly-traded corporation.  WHG is a limited liability company organized under the laws of the State of Delaware with a principal place of business in

Parsippany, New Jersey.  ~~Defendant~~WHG provides centralized reservation support for the Wyndham hotel brands, including Wyndham Hotels and Resorts®, Wyndham Grand® Hotels and Resorts, and Wyndham Garden® Hotels, Super 8®, Travelodge®, Howard Johnson®, Ramada®, Baymont®, Day's Inn®, Knight's Inn®, Hawthorne®, Wingate®, Microtel®, and Tryp®.  WHG also provides telephone support for Wyndham Rewards®.  WHG contracted with Aegis to provide call center services in connection with all of the Wyndham hotel brands and Wyndham Rewards®.  WHG systematically and continuously does business in California and with California residents.

~~10.~~11.  "~~Defendant~~Defendants" or "Wyndham" means and refers to Defendant ~~Wyndham~~WHG, Defendant WHR, ~~and the fictitiously named Defendants,~~ each and all of them.

~~11.~~12.  Plaintiff is informed and believes and on that ground alleges that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of ~~some or all of~~ the other Defendant~~s~~, and was engaged with ~~some or all of~~ the other Defendant~~s~~ in a joint enterprise for profit, and bore such other relationships to ~~some or all of~~ the other Defendant~~s~~ so as to be liable for their conduct with respect to the matters alleged below.  Plaintiff is informed and believes and on that ground alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, and that each knew or should have known about and authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all Defendants.

## JURISDICTION AND VENUE

~~12.~~13.  This Court has subject matter jurisdiction over this action under California Penal Code §§ 632, 632.7 and 637.2.

~~13.~~14.  This Court has personal jurisdiction over the parties because ~~Defendant~~Defendants systematically and continually ~~has~~have conducted business in the State of California.  Likewise, Plaintiff's rights were violated in the State of California and her claims arose out of her contact with ~~Defendant~~Defendants from California.

~~14.~~15.  Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District.

**FACTUAL ALLEGATIONS COMMON TO THE CLASS**

~~15.~~16.  Plaintiff is informed and believes and on that ground alleges that WHR is the owner of the "Wyndham®"-named hotel brands, including Wyndham Hotels and Resorts,®, Wyndham Grand® Hotels and Resorts, and Wyndham Garden® Hotels.  WHG, the parent company of WHR, owns the telephone numbers associated with and provides centralized reservation support to Wyndham Rewards®, the Wyndham®-named hotel brands, and the following hotel brands operated by various WHG subsidiaries: Super 8,®, Travelodge,®, Howard Johnson,®, Ramada,®, Baymont®, Day's Inn ~~, Baymont,~~®, Knight's Inn,®, Hawthorne,®, Wingate®, Microtel ~~Inn & Suites, Wingate,~~ ~~and~~ ®, Tryp ~~Hotels,~~®, and possibly others, ~~all are hotel brands owned by Defendant Wyndham.~~ ~~Plaintiff is further informed and believes and on that ground alleges that Wyndham operates~~ ~~Wyndham Rewards, a loyalty program associated with all of its branded hotels.~~  During the relevant time period, WHG contracted with Aegis to handle customer service calls routed to Aegis-operated call centers in the Philippines and India.

~~16.~~17.  Plaintiff is informed and believes and on that ground alleges that, during the relevant time period, the toll-free reservation and customer service telephone numbers associated with each of Wyndham's hotel brands connect~~ed~~ callers to one of the four call centers operated by Defendant WHG or its ~~agent~~vendor, Aegis.  All Wyndham®-named hotels and ~~related brand~~Wyndham-affiliated hotels, including franchises, are required to participate in the toll-free telephone numbers.  Plaintiff is further informed and believes and on that ground alleges that the toll-free telephone numbers associated with ~~Defendant's~~Defendant WHG's Wyndham Rewards loyalty program connect callers to one of the four call centers operated by Defendant WHG or its ~~agent~~vendor, Aegis.  Plaintiff is informed and believes and on that ground alleges that ~~Defendant's~~Defendants' employees ~~and~~ ~~agents~~or Aegis's employees at the four call centers receive incoming calls originating from within the United States, including from California callers.

~~17.~~18.  Plaintiff is informed and believes and on that ground alleges that, at all relevant times through and including March 23~~2~~4, 2012, and without warning callers that their calls could be recorded or monitored, ~~Defendant~~Defendants and ~~its~~their ~~agent~~their vendor, Aegis, intentionally used

technology consisting of hardware and/or software to carry out a practice and policy of recording and/or intercepting (i.e., monitoring) and/or eavesdropping upon those calls that were made to Wyndham toll-free telephone numbers and routed to the Aegis-operated Philippines and India call centers.

18.19.  Plaintiff is informed and believes and on that ground alleges that Defendant's Defendants' vendor's employees and agents at the Philippines and India call centers were directed, trained, and instructed to, and did, record and/or monitor and/or eavesdrop upon telephone calls between the Wyndham toll-free telephone numbers and callers, including California callers.

19.20.  During the relevant time period through and including March 2324, 2012, Plaintiff called the one or more Wyndham toll-free reservation telephone numbers numerous times from California using a hardwired landline and a cellular telephone.  Plaintiff called the Wyndham toll-free reservation telephone numbers to inquire about hotel rates and/or to make reservations.  On numerous occasions, Plaintiff's calls were routed to one or more of the Aegis-operated call centers and recorded without any warning to Plaintiff that her call would be recorded.

20.21.  During Plaintiff's telephone calls to Defendant Defendants and its their agent their vendor, Aegis, Defendant Defendants failed to disclose to Plaintiff that her telephone conversations were being recorded and/or monitored.  Plaintiff did not give and could not have given consent for the telephone calls to be recorded, monitored or eavesdropped upon because she was unaware that Defendant Defendants and its their agent their vendor, Aegis, were engaged in that practice during the telephone calls.  Plaintiff is informed and believes and on that ground alleges that callers who called the Wyndham toll-free telephone numbers during the relevant time period through and including March 24, 2012 and were routed to one of the Aegis-operated call centers were not informed by Defendant Defendants or anyone else that their calls were being recorded and/or monitored and/or eavesdropped upon.   Thus, that recording and/or monitoring and/or eavesdropping necessarily occurred without the callers' knowledge or consent.

21.22.  Because there was no warning that calls would be recorded or monitored or eavesdropped upon, Plaintiff had a reasonable expectation that her telephone conversations with

1   ~~Defendant's~~Defendants' ~~vendor's~~ employees ~~and agents~~ were, and would remain, private and

2   confined to the parties on the telephone.  That recording and/or monitoring and/or eavesdropping

3   without her consent is highly offensive to Plaintiff and would be highly offensive to a reasonable

4   person, including members of the proposed Plaintiff Classes.

**CLASS ACTION ALLEGATIONS**

6   ~~22.~~23.  Plaintiff brings this action under Rule 23 of the Federal Rules of Civil Procedure on

7   behalf of herself and the class (the "Class") defined as follows:

8   ~~All California residents~~persons who, ~~between~~ ~~at any time during the period from~~ ~~March~~

9   ~~1, 2011 and~~through ~~March 24~~23, 2012, inclusive, ~~called one or more of Wyndham's toll-~~

10   ~~free telephone numbers from~~using a cellular or cordless telephone ~~with a California area~~

11   ~~code~~ ~~while located within the State of California and whose calls were transferred to~~ ~~call~~

12   ~~centers in~~ ~~the Philippines~~ ~~and/~~or ~~India call centers operated by Aegis as an agent of~~

13   ~~Wyndham~~USA, Inc. ("Aegis")~~ and recorded without any warning or disclosure at the call~~

14   ~~outset, except for any calls~~ ~~that were~~ ~~specifically associated with the Howard Johnson~~

15   ~~Brand.®~~ ~~brand and are covered by the class settlement presented to the Court in~~ *~~Loren~~*

16   *~~Stone v. Howard Johnson International Inc. et al.~~*~~,~~ ~~USDC Central District of California,~~

17   ~~Case No. 2:12-cv-01684.~~

18   All natural persons who were California residents and who, while physically located in

19   California and using a cellular or cordless telephone: placed a call to one of Defendants'

20   toll free telephone numbers at any time during the period from May 1, 2011 through

21   March 23, 2012, inclusive; were routed to an Aegis-operated call center; spoke with a

22   representative; and did not receive notice that their call was being recorded.  Excluded

23   from the Class are all such calls to Howard Johnson® toll free telephone numbers during

24   the Class Period, which calls are covered by the settlement in *Stone v. Howard Johnson*

25   *International, Inc.*, USDC CD CA Case No. 12-CV-01684 PSG (MANx).

26

27   ~~23.~~24.  Plaintiff also brings this action on behalf of herself and the additional class (the "PC §

28

~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES                                                                8

1  632 Class") defined as follows:

2  ~~All California residents~~persons who, between~~at any time during the period from~~ March 1,

3  2011 and~~through~~ March 2423, 2012, inclusive, ~~called one or more of Wyndham's toll-~~

4  ~~free telephone numbers using a hardwired landline telephone~~ with a California area code

5  ~~while located within the State of California and whose calls were transferred to~~ call

6  ~~centers in~~ the Philippines and/or India call centers operated by Aegis as an agent of

7  ~~Wyndham~~USA, Inc. ("Aegis") ~~and recorded without any warning or disclosure at the call~~

8  ~~outset, except for any calls~~ that were ~~specifically associated with the Howard Johnson~~

9  ~~Brand® brand and are covered by the class settlement presented to the Court in~~ *Loren*

10 *~~Stone v. Howard Johnson International Inc. et al.~~,* ~~USDC Central District of California,~~

11 ~~Case No. 2:12-cv-01684~~ All natural persons who were California residents and who,

12 while physically located in California and using a hardwired landline telephone: placed a

13 call to one of Defendants' toll free telephone numbers at any time during the period from

14 May 1, 2011 through March 23, 2012, inclusive; were routed to an Aegis-operated call

15 center; spoke with a representative; and did not receive notice that their call was being

16 recorded.  Excluded from the PC §632 Class are all such calls to Howard Johnson® toll

17 free telephone numbers during the Class Period, which calls are covered by the settlement

18 in *Stone v. Howard Johnson International, Inc.*, USDC CD CA Case No. 12-CV-01684

19 PSG (MANx).

20 .

21     24.25.  The Class that Plaintiff seeks to represent and the PC § 632 Class that Plaintiff seeks

22 to represent contain numerous members and are clearly ascertainable including, without limitation, by

23 using the records of ~~Defendant~~Defendants and ~~its~~their ~~agent~~their vendor, Aegis, and/or the telephone

24 company records of ~~Defendant~~Defendants and ~~its~~their ~~agent~~their vendor, Aegis, and/or other toll-free

25 service ~~provider's~~providers' records regarding calls to the Wyndham toll-free telephone numbers

26 routed to the Aegis-operated call centers to determine the size of the Class and the PC § 632 Class

27 and to determine the identities of individual Class members and PC § 632 Class members.  Plaintiff

28

~~FIRST~~SECOND AMENDED COMPLAINT FOR DAMAGES                                                              9

reserves the right to amend or modify the Class and the PC § 632 Class definitions and to add subclasses or limitations to particular issues.

25.26. By ~~its~~their unlawful actions, ~~Defendant has~~Defendants have violated Plaintiff's and the Class's and the PC § 632 Class's privacy rights under California's Invasion of Privacy Act, California Penal Code §§ 630 *et seq.*  The questions raised are, therefore, of common or general interest to the Class and the PC § 632 Class members, who have a well-defined community of interest in the questions of law and fact raised in this action.

26.27. Plaintiff's claims are typical of those of the Class, as Plaintiff now suffers from the same violations of the law as other putative Class members.  Similarly, Plaintiff's claims are typical of those of the PC § 632 Class, as Plaintiff now suffers from the same violations of the law as other putative PC § 632 Class members.  Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions to represent her and the Class and the PC § 632 Class, and Plaintiff will fairly and adequately represent the interests of the Class and the PC § 632 Class.

27.28. This action may properly be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class and the PC § 632 Class are ascertainable.

**Numerosity**

28.29. Based on information and belief, the Class and the PC § 632 Class consist of tens of thousands of individuals, making joinder of individual cases impracticable.

**Typicality**

29.30. Plaintiff's claims are typical of the claims of all of the other members of the Class and the PC § 632 Class.  Plaintiff's claims and the Class and the PC § 632 Class members' claims are based on the same legal theories and arise from the same unlawful conduct, resulting in the same injury to Plaintiff and to all of the other Class and PC § 632 Class members.

**Common Questions of Law and Fact**

30.31. There are questions of law and fact common to the Class that predominate over any

questions affecting only individual Class members.   Those common questions of law and fact include, without limitation, the following:

    a.    Whether ~~Defendant~~Defendants and ~~its~~their ~~agent~~their vendor, Aegis, had a policy or practice of recording and/or intercepting telephone calls made to the Wyndham toll-free telephone numbers that were routed to the Aegis-operated Philippines and India call centers;

    b.    Whether, on or before March 23~~24~~, 2012, ~~Defendant~~Defendants and ~~its~~their ~~agent~~their vendor, Aegis, had a policy or practice of not disclosing to callers who were routed to the Aegis-operated call centers that their calls might be recorded and/or monitored;

    c.    Whether, on or before March 23~~24~~, 2012, ~~Defendant~~Defendants and ~~its~~their ~~agent~~their vendor, Aegis, had a policy or practice of not obtaining callers' consent to record and/or monitor telephone calls made to the Wyndham toll-free telephone numbers that were routed to the Aegis-operated call centers;

    d.    Whether ~~Defendant~~Defendants violated California Penal Code § 632.7 by recording and/or monitoring, without warning or disclosure, telephone conversations between callers using cellular and cordless telephones within California and the Wyndham toll-free telephone numbers;

    e.    Whether Class members are entitled to statutory damages of $5,000 under Penal Code § 637.2 for each violation of Penal Code § 632.7.

~~31.~~32.   There are questions of law and fact common to the PC § 632 Class that predominate over any questions affecting only individual PC § 632 Class members.   Those common questions of law and fact include, without limitation, the following:

    a.    Whether ~~Defendant~~Defendants and ~~its~~their ~~agent~~their vendor, Aegis, had a policy or practice of recording and/or eavesdropping upon telephone calls made to the Wyndham toll-free telephone numbers that were routed to the Aegis-operated Philippines and India call centers;

b.      Whether, on or before March 23~~24~~, 2012, ~~Defendant~~Defendants and ~~its~~their ~~agent~~their vendor, Aegis, had a policy or practice of not disclosing to callers who were routed to the Aegis-operated call centers that their calls might be recorded and/or eavesdropped upon;

c.      Whether, on or before March 23~~24~~, 2012, ~~Defendant~~Defendants and ~~its~~their ~~agent~~their vendor, Aegis, had a policy or practice of not obtaining callers' consent to record and/or eavesdrop upon telephone calls made to the Wyndham toll-free telephone numbers that were routed to the Aegis- operated call centers;

d.      Whether ~~Defendant~~Defendants violated California Penal Code § 632 by ~~recording and/or eavesdropping~~, without warning or disclosure, recording and/or eavesdropping upon telephone conversations between callers using hardwired telephones within California and the Wyndham toll-free telephone numbers;

e.      Whether PC § 632 Class members are entitled to statutory damages of $5,000 under Penal Code § 637.2 for each violation of Penal Code § 632.

**Adequacy**

~~32.~~33.  Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class and the PC § 632 Class.  Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions.   Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the other Class and PC § 632 Class members and have the financial resources to do so.  Neither Plaintiff nor her counsel have any interests adverse to those of the other Class or PC § 632 Class members.

**Superiority**

~~33.~~34.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class and/or PC § 632 Class members is impracticable and questions of law and fact common to the Class and the PC §

632 Class predominate over any questions affecting only individual members of the Class and/or the PC § 632 Class.   Even if every individual Class and/or PC § 632 Class member could afford individual litigation, the court system could not.   It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required.   Individualized litigation also would present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.   By contrast, the conduct of this action as a class action with respect to some or all of the issues will present fewer management difficulties, conserve the resources of the court system and the parties and protect the rights of each Class and PC § 632 Class member.   Further, it will prevent the very real harm that would be suffered by numerous putative Class and PC § 632 Class members who simply will be unable to enforce individual claims of this size on their own, and by ~~Defendant's~~Defendants' competitors, who will be placed at a competitive disadvantage as their reward for obeying the law.   Plaintiff anticipates no difficulty in the management of this case as a class action.

~~34.~~35.   The prosecution of separate actions by individual Class and PC § 632 Class members may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class and PC § 632 Class members not parties to those adjudications or that would substantially impair or impede the ability of those non-party Class or PC § 632 Class members to protect their interests.

~~35.~~36.   The prosecution of individual actions by Class and PC § 632 Class members would establish inconsistent standards of conduct for ~~Defendant~~Defendants.

~~36.~~37.   ~~Defendant has~~Defendants have acted or refused to act in respects generally applicable to the Class and the PC § 632 Class, thereby making appropriate final and injunctive relief or corresponding declaratory relief with regard to members of the Class and/or the PC § 632 Class as a whole as requested herein.   Likewise, ~~Defendant's~~Defendants' conduct as described above is unlawful, is capable of repetition, and will continue unless restrained and enjoined by the Court.

**FIRST CAUSE OF ACTION**

**Unlawful Recording and Intercepting of Communications against ~~Defendant~~Defendants**

**(Violation of California Penal Code § 632.7)**

~~37.~~38.  Plaintiff incorporates each allegation set forth above as if fully set forth herein and further alleges as follows.

~~38.~~39.  Plaintiff participated in numerous telephone calls that she made to one or more Wyndham toll-free telephone numbers while within the State of California and that were routed to one of the Aegis-operated call centers.  Plaintiff used a cellular telephone to engage in at least some of those conversations.

~~39.~~40.  Plaintiff is informed and believes and on that ground alleges that, at all relevant times, ~~Defendant~~Defendants and ~~its~~their ~~agent~~their vendor, Aegis, had a policy and practice of using hardware and/or software that enabled them to surreptitiously record and/or monitor conversations with Plaintiff and Class members who used cellular or cordless telephones to place calls to Wyndham's toll-free telephone numbers and were routed to one of the Aegis-operated call centers.

~~40.~~41.  Plaintiff is informed and believes and on that ground alleges that, at all relevant times through and including March 23~~24~~, 2012, ~~Defendant~~Defendants and ~~its~~their ~~agent~~their vendor, Aegis, had and followed a policy and practice of intentionally and surreptitiously recording and/or monitoring Plaintiff's and Class members' cellular and cordless telephone calls that were placed to Wyndham's toll-free telephone numbers and routed to one of the Aegis-operated call centers.

~~41.~~42.  Because, at all relevant times before March 23~~24~~, 2012, ~~Defendant~~Defendants and ~~its~~their ~~agent~~their vendor, Aegis, had and followed a policy and practice of not disclosing to Plaintiff or Class members that their cellular and cordless telephone calls to the Wyndham toll-free telephone numbers that were routed to one of the Aegis-operated call centers were recorded and/or monitored, ~~Defendant~~Defendants and ~~its~~their ~~agent~~their vendor, Aegis, did not obtain, and could not have obtained, Plaintiff's or Class members' express or implied advance consent to the recording or monitoring of those conversations.  As a result, Plaintiff and Class members had an objectively reasonable expectation that their calls were not being recorded and/or monitored.  That expectation and its objective reasonableness arise, in part, from the objective offensiveness of surreptitiously

recording people's conversations, the absence of even a simple pre-recorded message as short as four simple words – "calls may be recorded" – and the ease with which such a message could have been put in place.  As the California Supreme Court has stated, "in light of the circumstance that California consumers are accustomed to being informed at the outset of a telephone call whenever a business entity intends to record the call, it appears equally plausible that, in the absence of such an advisement, a California consumer reasonably would anticipate that such a telephone call is not being recorded, particularly in view of the strong privacy interest most persons have with regard to the personal financial information frequently disclosed in such calls."  (See *Kearney v. Salomon Smith Barney* (2006) 39 Cal. 4th 95.)

42.43.  ~~Defendant's~~Defendants' conduct as described above violated California Penal Code § 632.7(a).  Under Penal Code § 637.2, Plaintiff and Class members therefore are entitled to $5,000 in statutory damages per violation, even in the absence of proof of actual damages, the amount deemed proper by the California Legislature.  Plaintiff and Class members also are entitled to injunctive relief to enjoin further violations.

## SECOND CAUSE OF ACTION

### Unlawful Recording of and Eavesdropping upon Confidential Communications

### against ~~Defendant~~Defendants

### (Violation of California Penal Code § 632)

43.44.  Plaintiff incorporates each allegation set forth above as if fully set forth herein and further alleges as follows.

44.45.  Plaintiff participated in numerous telephone calls that she made to one or more Wyndham toll-free telephone numbers while within the State of California and that were routed to one of the Aegis-operated call centers.  Plaintiff used a hardwired landline telephone to engage in at least some of those conversations.

45.46.  Plaintiff is informed and believes and on that ground alleges that, at all relevant times, ~~Defendant~~Defendants and ~~its~~~~their agent~~their vendor, Aegis, had a policy and practice of using hardware and/or software that enabled them to surreptitiously record and/or monitor conversations

with Plaintiff and PC § 632 Class members who used hardwired landline telephones to place calls to Wyndham's toll-free telephone numbers and were routed to one of the Aegis-operated call centers.

46.47.  Plaintiff is informed and believes and on that ground alleges that, at all relevant times through and including March 2324, 2012, DefendantDefendants and itstheir agenttheir vendor, Aegis, had and followed a policy and practice of intentionally and surreptitiously recording and/or eavesdropping upon Plaintiff's and PC § 632 Class members' telephone calls that were placed to Wyndham toll-free telephone numbers and routed to one of the Aegis-operated call centers.

47.48.  Because, at all relevant times through and including March 2324, 2012, DefendantDefendants and itstheir agenttheir vendor, Aegis, had and followed a policy and practice of not disclosing to Plaintiff or PC § 632 Class members that their telephone calls to Wyndham toll-free telephone numbers that were routed to one of the Aegis-operated call centers would be recorded and/or eavesdropped upon, DefendantDefendants and itstheir agenttheir vendor, Aegis, did not obtain, and could not have obtained, Plaintiff's or PC § 632 Class members' express or implied advance consent to the recording or eavesdropping of those conversations.

48.49.  Plaintiff is informed and believes and on that ground alleges that the telephone calls that were made to Wyndham toll-free telephone numbers and routed to one of the Aegis-operated call centers and were surreptitiously recorded and/or eavesdropped upon by DefendantDefendants and itstheir agenttheir vendor, Aegis, were "confidential communications" within the meaning of California Penal Code § 632(c) in that Plaintiff and PC § 632 Class members desired and expected the telephone communications as a whole (i.e., both sides of the conversation, taken together) to be confined to the parties to those calls and not recorded, monitored, and/or further disseminated. Because DefendantDefendants and itstheir agenttheir vendor, Aegis,  never disclosed to them that their calls were being recorded and/or eavesdropped upon and their consent for recording and/or eavesdropping upon their calls never was sought, Plaintiff and PC § 632 Class members had an objectively reasonable expectation that their calls were not being recorded and/or eavesdropped upon. That expectation and its objective reasonableness arise, in part, from the objective offensiveness of

surreptitiously recording people's conversations, the absence of even a simple pre-recorded message as short as four simple words – "calls may be recorded" – and the ease with which such a message could have been put in place.   As the California Supreme Court has stated, "in light of the circumstance that California consumers are accustomed to being informed at the outset of a telephone call whenever a business entity intends to record the call, it appears equally plausible that, in the absence of such an advisement, a California consumer reasonably would anticipate that such a telephone call is not being recorded, particularly in view of the strong privacy interest most persons have with regard to the personal financial information frequently disclosed in such calls."   (See *Kearney v. Salomon Smith Barney* (2006) 39 Cal. 4th 95.)

49.50.   ~~Defendant's~~Defendants' conduct as described above violated California Penal Code § 632(a).   Under Penal Code § 637.2, Plaintiff and PC § 632 Class members therefore are entitled to $5,000 in statutory damages per violation, even in the absence of proof of actual damages, the amount deemed proper by the California Legislature.   Plaintiff and PC § 632 Class members also are entitled to injunctive relief to enjoin further violations.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and members of the Class and the PC § 632 Class, prays for the following relief:

a.      An order certifying the Class and appointing Plaintiff representative of the Class, and appointing counsel for Plaintiff as lead counsel for the Class;

b.      An order certifying the PC § 632 Class and appointing Plaintiff as representative of the PC § 632 Class, and appointing counsel for Plaintiff as lead counsel for the PC § 632 Class;

c.      An order declaring that the actions of ~~Defendant~~Defendants, as described above, violate California Penal Code § 632.7;

d.      An order declaring that the actions of ~~Defendant~~Defendants, as described above, violate California Penal Code § 632;

e.      A judgment for and award of statutory damages to Plaintiff and the members of the Class and the PC § 632 Class pursuant to California Penal Code § 637.2;

f.      A permanent injunction under Penal Code § 637.2 enjoining ~~Defendant~~Defendants from engaging in further conduct in violation of California Penal Code § 630, *et seq;*

g.      Payment of costs of the suit;

h.      Payment of attorneys' fees under California Code of Civil Procedure § 1021.5;

i.      An award of pre- and post-judgment interest to the extent allowed by law; and

j.      For such other or further relief as the Court may deem proper.

Respectfully submitted,

Dated: _____, 2016~~5~~                    **KELLER GROVER LLP**

*/s/* _____

Eric A. Grover
Attorneys for Plaintiff

## **JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: _____, 2016~~5~~                    **KELLER GROVER LLP**

*/s/* _____

Eric A. Grover
Attorneys for Plaintiff