UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JOYCE ROBERTS, individually and on behalf of classes of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>WYNDHAM HOTELS AND RESORTS, LLC and WYNDHAM HOTEL GROUP, LLC,<br><br>Defendants. | Case No. 12-cv-05083-LB<br><br>**ORDER APPROVING CLASS-ACTION SETTLEMENT, DISMISSING CASE, AND ENTERING FINAL JUDGMENT**<br><br>Re: ECF Nos. 114 & 116 |

## INTRODUCTION

This lawsuit involves the defendants' alleged unlawful recording of telephone calls that were routed to certain call centers in violation of California statutes.[1] The court previously granted the plaintiff's unopposed motion for preliminary approval of the proposed class-action settlement.[2] The plaintiff moved for final approval of the settlement.[3] The court held a fairness hearing on

---

[1] Second Amended Complaint ("SAC") — ECF No. 107. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Order — ECF No. 106.

[3] Motion — ECF No. 116.

ORDER — No. 12-cv-05083-LB

October 27, 2016.[4] The court finds the settlement fair, adequate, and reasonable, and approves the final settlement, including fees, costs, and the incentive award to the named plaintiff.

## STATEMENT

### 1. The Lawsuit to Date

The plaintiff filed the lawsuit in state court, and the original defendants — Wyndham International, Inc., Wyndham Worldwide Operations, Inc., and Wyndham Hotels and Resorts, LLC — removed the case.[5] In October 2012, the court related the case to two other cases: *Roberts et al. v. Wyndham, Int'l et al.*, No. 12-cv-05180, and *Simpson v. Ramada Worldwide, Inc.*, No.12-cv-05209.[6] In November 2012, the court denied motions to dismiss and motions to strike class allegations in cases 12-cv-05180 and 12-cv-05083; the complaints and the motions to dismiss in both cases were nearly identical.[7]

In May 2013, the parties stipulated to the voluntary dismissal without prejudice of Wyndham International and Wyndham Worldwide Operations in this case and related case 12-cv-05180.[8] The parties in the related cases stipulated to the voluntary dismissal of the cases (Ms. Simpson with prejudice, Ms. Roberts without prejudice to her claims in this case, and the class members without prejudice).[9] In February 2015, after a contested motion, the plaintiff filed the First Amended Complaint.[10]

---

[4] Minute Order — ECF No. 123.
[5] Notice of Removal — ECF No. 1.
[6] Order Relating Cases — ECF No. 12.
[7] Order — ECF No. 23 at 1−2 & n.1 (citing the complaints and motions to dismiss in both cases).
[8] Stipulated Voluntary Dismissal and Order — ECF No. 40; Stipulated Voluntary Dismissal and Order, Case No. 12-cv-05180 — ECF No. 42.
[9] Stipulated Voluntary Dismissal and Order, Case No. 12-cv-05029 — ECF No. 41; Stipulated Voluntary Dismissal and Order, Case No. 12-cv-05180 — ECF No. 43; Stipulated Voluntary Dismissal and Order, Case No. 12-cv-05180 — ECF No. 45.
[10] Motion to Modify Scheduling Order — ECF No. 56; Opposition to Motion — ECF No. 59; Order — ECF No. 64; First Amended Complaint — ECF No. 65.

The parties' other litigation efforts included discovery, motions to exclude the plaintiff's experts, and a class-certification motion.[11] The parties had an initial mediation session in October 2014 and then — while awaiting the hearing on the fully briefed expert and class-certification motions — the parties mediated the case with the Honorable Louis M. Meisinger (Ret.), a former judge on the Los Angeles County Superior Court and a former Executive Vice President and General Counsel of The Walt Disney Company.[12] They then settled the case.[13] The plaintiff filed an unopposed motion for preliminary approval of the class-action settlement and for leave to file a Second Amended Complaint ("SAC") adding Wyndham Hotel Group, LLC as a named defendant.[14] The court granted leave to file the SAC and approved the settlement preliminarily.[15]

## 2.  The Settlement

The parties agreed to the following class definition (the "Settlement Class") for settlement purposes only:

> [A]ll natural persons who were California residents and who, while physically located in California: placed a call to one of Defendants' toll free telephone numbers at any time during the period from May 1, 2011 through March 23, 2012, inclusive; were routed to an Aegis-operated call center; spoke with a representative; and did not receive notice that their call was being recorded.[16]

Excluded from the Settlement Class are (1) all calls to Howard Johnson toll-free numbers during the class period (May 1, 2011 through March 23, 2012) because these calls are covered by the settlement in *Stone v. Howard Johnson Int'l, Inc.*, Case No. 12-cv-01684 PSG (MANx) (C.D. Cal.), and (2) persons who validly opt out of the settlement.[17] The defendants have a record of all

---

[11] Grover Decl. — ECF No. 114-1, ¶ 11; Motion to Exclude Expert Randall Snyder — ECF No. 78; Motion to Exclude Expert Anya Verkhovskaya — ECF No. 79; Motion to Certify Class — ECF No. 72.

[12] Grover Decl. — ECF No. 114-1, ¶ 14.

[13] Settlement Agreement — ECF No. 114-2.

[14] Motion for Preliminary Approval — ECF No. 100; Statement of Non-Opposition — ECF No. 102.

[15] Preliminary Approval Order — ECF No. 106 at 2–3.

[16] Settlement Agreement — ECF No. 114-2, ¶ 1(h).

[17] *Id.*

calls routed through the call-recording software at the Aegis-operated call centers during the class period; approximately 185,000 calls routed through the software were from 115,770 unique telephone numbers with California area codes.[18]

In summary form, the settlement is as follows.

The defendants will pay a "Gross Settlement Amount" of $7,325,000 to resolve the claims: (1) attorney's fees of $1,831,250 (or 25% of the Gross Settlement Amount) and costs of $66,997.05 for a total of $1,898,247.05; (2) $298,532.58 for the costs of notice and administration; (3) $15,000 for the Settlement Class Representative's enhancement award; and (4) the balance (estimated after additional costs and fees to be $5,111,220.37) will be distributed to Settlement Class Members who submit timely and valid claims.[19] The entire net settlement fund will be paid out to Settlement Class Members who submit timely and valid claims; there will be no reversion.[20] No Settlement Class Member will receive more than $5,000 per qualifying call.[21] In the event that checks are not cashed within 90 days after the last check is issued, any remaining amount of the net settlement fund will be paid to the *cy pres* beneficiary Privacy Rights Clearinghouse.[22]

In return for the settlement relief, the settlement agreement has a release, which generally is that class members who do not opt out of the settlement will release the defendants from all claims that are or could have been asserted in the SAC based on the facts and legal theories alleged in the SAC.[23] The release includes a waiver of California Civil Code section 1542.[24]

---

[18] *Id.* ¶¶ 1(h), 3.5, & 6.1.

[19] *Id.* ¶¶ 3.1–3.5, 3.8; Grover Decl. — ECF No. 114-1, ¶¶ 38, 72; Grover Supp. Decl. — ECF No. 116-1, ¶ 2.

[20] Settlement Agreement — ECF No. 114-2, ¶ 3.8.

[21] *Id.* ¶ 3.5.

[22] *Id.* ¶ 3.6.

[23] *Id.* ¶ 11.1.

[24] *Id.* ¶ 11.2.

The settlement agreement contains a provision that the court retains jurisdiction over the parties and all Settlement Class Members to enforce the terms of the Agreement, the final approval order, and the judgment.[25]

### 3. Notice to the Class

Under the settlement agreement, the defendants (1) compiled a list of the telephone numbers for potential class members, (2) ran the numbers through its databases for names, mailing addresses, and additional telephone numbers, and (3) provided the information and the number of calls to the call center from each number to the claims administrator, Rust Consulting, Inc.[26] The court previously approved Rust Consulting as the claims administrator, approved the form of notice and the notice plan, directed notice, and approved the claims process.[27]

Rust Consulting received a data file with 94,055 unique telephone numbers and related address information, where available.[28] Rust Consulting's responsibilities are in the settlement agreement and include (1) running reverse address searches, (2) verifying addresses through the U.S. Postal Service's National Change of Address (or a comparable) database, (3) providing notice to the class members by email, U.S. mail, a settlement website, an online banner advertising campaign, and print publication, (4) performing skip traces or otherwise attempting to locate a valid address or email address and providing notice to the updated address, (5) notifying claimants of any deficiencies in their claims forms and providing an opportunity to cure the deficiency, (6) handling inquiries, and (7) distributing funds and otherwise administering the settlement.[29] Rust Consulting complied with these procedures.[30] It mailed more than 96,300 postcard notices and more than 13,000 email notices.[31] Based on information provided by Rust, Kinsella Media — an advertising

---

[25] *Id.* ¶ 12.1.
[26] *Id.* ¶ 6.1; Rust Supp. Decl. — ECF No. 116-2, ¶ 1.
[27] Preliminary Approval Order — ECF 106, ¶¶ 8–21.
[28] Rust Decl. — ECF No. 114-6, ¶ 4.
[29] Settlement Agreement — ECF No. 114-2, ¶ 6-2–6.7, 7.1–7.8.
[30] Rust Decl. — ECF No. 114-6, ¶¶ 3–13.
[31] *Id.* ¶¶ 4–5.

and notification firm in Washington, D.C., specializing in class-action and bankruptcy notification programs — estimates that Rust reached more than 75% of the actual class by direct mail and 85% of California adults by the paid media program (with an average frequency of 1.6 times).[32]

Through August 30, 2016, the administration costs were $323,580.64, which is higher than the estimate of $275,000 because extra work that Russ performed on claims that likely are fraudulent.[33]

Settlement Class Members can submit claims forms by mail or online.[34] September 3, 2016 was the last date to submit a claims form.[35] As of September 11, 2016, 3,958 class members submitted valid claims covering 8,035 calls; Rust was still validating claims.[36] As of October 10, 2016, Russ validated approximately 3,535 claims covering 7,615 calls; the number of calls dropped from September because the September numbers had duplicate claims.[37] The approximate per-call value is $669.73 presently.[38] Russ was still validating calls and was scheduled to complete the validation process shortly.[39] As of September 12, 2016, 11 class members opted out, and no one objected to the settlement.[40] The parties propose that the court allow late but otherwise valid claims postmarked through the date the final approval order is entered.[41]

## ANALYSIS

**1. Jurisdiction**

This court has jurisdiction under 28 U.S.C. § 1332(d)(2).

---

[32] Uhlfelder Decl. — ECF No. 114-7, ¶ 9
[33] Rust Supp. Decl. — ECF No. 116-2, ¶ 10.
[34] Settlement Agreement — ECF No. 114-2, ¶¶ 3.5 & 7.1.
[35] *See* Preliminary Approval Order — ECF No. 106, ¶ 18; Grover Decl. — ECF No. 114-1, ¶ 33.
[36] Rust Supp. Decl. — ECF No. 116-2, ¶ 5.
[37] Rust Suppl. Decl. — ECF No. 122, ¶ 3.
[38] *Id.* ¶ 6.
[39] *Id.* ¶ 4.
[40] Rust Supp. Decl. — ECF No. 116-2, ¶¶ 6–7.
[41] Grover Supp. Decl. — ECF No. 116-1, ¶ 3.

**2. Certification of Class**

The court reviews the propriety of class certification under Federal Rule of Civil Procedure 23(a) and (b). When parties enter into a settlement before the court certifies a class, the court "must pay 'undiluted, even heightened, attention' to class certification requirements" because the court will not have the opportunity to adjust the class based on information revealed at trial. *Staton v. Boeing*, 327 F.3d 938, 952–53 (9th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Class certification requires the following: (1) the class must be so numerous that joinder of all members individually is "impracticable;" (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the person representing the class must be able to fairly and adequately protect the interests of all class members. Fed. R. Civ. P. 23(a); *Staton*, 327 F.3d at 953.

The court previously approved the certification of the settlement class preliminarily and for settlement purposes only.[42] The court now finds that the factors support class certification of the proposed classes for purposes of settlement. First, the class size makes joinder impracticable. Second, there are common issues regarding the alleged unlawful recording of calls. Third, the plaintiff's claims are typical of other class members' claims. *See Hanlon*, 150 F.3d at 1020 (claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical). Fourth, the named plaintiff is able to fairly and adequately protect the interests of all class members. The factors relevant to a determination of adequacy are (1) the absence of potential conflict between the named plaintiff and the class members, and (2) counsel chosen by the representative party who is qualified, experienced, and able to vigorously conduct the litigation. *Id*. The court is satisfied that the factors exist here: the named plaintiff has shared claims and interests with the class, and she retained qualified and competent counsel. *See Local*

---

[42] Preliminary Approval Order — ECF No. 106, ¶ 3.

ORDER — No. 12-cv-05083-LB                  7

*Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir. 1992).

Thus, the court finds (for settlement purposes only) that the proposed settlement class meets the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy: (1) the class is so numerous that joinder of all members is impracticable; (2) there are common questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). The court also finds (for settlement purposes only) that questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3); *Brown v. Hain Celestial Group, Inc.*, No. 11-CV-03082-LB, 2014 WL 6483216, at *15–20 (N.D. Cal. Nov. 18, 2014). The court certifies the proposed class under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only.

The court also approves the request to accept late but otherwise valid claims that are postmarked on or before the date of this final approval order.

### 3. Class Representative, Class Counsel, and Claims Administrator

The court confirms its prior appointment of Ms. Johnson as the class representative and the appointment of Rust Consulting as the claims administrator.[43] The court also confirms its prior appointment of Keller Grove LLP and the Law Offices of Scot D. Bernstein as class counsel for settlement purposes only.[44] *See* Fed. R. Civ. P. 23(a) & (g)(1). The court finds that they have sufficient qualifications, experience, and expertise in prosecuting class actions.

---

[43] Preliminary Approval Order — ECF No. 106, ¶¶ 7, 8.
[44] *Id.* ¶ 6.

### 4. Notice

As described above, the claims administrator provided notice to the members of the class in the form that the court had approved. The notice met all legal requisites: it was the best notice practicable, satisfied the notice requirements of Rule 23, adequately advised class members of their rights under the settlement agreement, met the requirements of due process, and complied with the court's order regarding notice.

### 5. Compliance with the Class Action Fairness Act

In February 2016, the defendants provided notice of the settlement and other information showing compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to the appropriate federal and state officials within ten days after the parties filed their settlement agreement with the court.[45] The notice met the requirements of 28 U.S.C. § 1715 and was made more than 90 days before the final approval hearing as required by 28 U.S.C. § 1715.

### 6. Approval of Settlement

Settlement is a strongly favored method for resolving disputes, particularly "where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see, e.g.*, *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). A court may approve a proposed class-action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiffs' fiduciary obligations to the class. *See Hanlon*, 150 F.3d at 1026–27. In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the

---

[45] Stagg Decl. — ECF No. 101.

proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted).

"Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832, *13 (N.D. Cal. Apr. 22, 2010); *see Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . ."); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

The court finds the settlement fair, reasonable, and adequate under the *Hanlon* factors.

First, the monetary value of the settlement is a fair compromise, given the litigation risks and uncertainties presented by continued litigation. In particular, the defendants have asserted defenses, including (1) California Penal Code § 632.7 "does not apply to calls answered by VoIP devices or computers," (2) "the California Invasion Privacy Act exempts call recording for 'service observing' purposes," and (3) "a class-wide damage award would violate the Due Process Clause."[46] They also argue that a class cannot be certified because the plaintiff cannot establish on a class basis which callers called the defendants' toll-free numbers, "which calls were made from cordless telephones, whether the caller[s] consented to the recording[s], and what type of device was used to answer the call[s]."[47] There is limited case law interpreting Section 632.7 in the class-action context, determining liability, and establishing methods of acceptable class-wide proof on issues such as which callers called Wyndham, their residency, their location at the time of the calls, and other issues in the last sentence.[48] The plaintiff disagrees with the defendants' arguments but recognizes the risks that attend class-action litigation and points out that it is unlikely that individual class members would file individual cases against the defendants given the maximum recovery under the statute of $5,000.[49]

---

[46] Grover Prelim. Decl. — ECF No. 100-1, ¶ 15.

[47] *Id.* ¶ 16.

[48] Grover Decl. — ECF No. 114-1, ¶ 65.

[49] Motion for Final Approval — ECF No. 116 at 18–19.

ORDER — No. 12-cv-05083-LB                   10

Second, the plaintiff notes that continued litigation is complex, expensive, and protracted.[50] A settlement thus ensures timely, substantial, and risk-free recovery for the class.[51]

Third, the settlement does not have a reversion and provides a good all-cash result to the class. The plaintiff summarizes other class-action settlements and notes that this one compares favorably to other recent phone-recording settlements that received final approval.[52]

Finally, the settlement is the product of serious, non-collusive, arm's-length negotiations and was reached after extensive discovery, motions practice, and mediation.

In sum, the court finds that viewed as a whole, the proposed settlement is sufficiently "fair, adequate, and reasonable" such that approval of the settlement is warranted. *See Officers for Justice v. Civil Serv. Comm'n of the City and Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). The court approves the settlement.

### 7. *Cy Pres* Award

In the event that settlement checks are not cashed within 90 days after the last check is issued, any remaining amount of the net settlement fund will be paid to the *cy pres* beneficiary Privacy Rights Clearinghouse.[53] This distribution accounts for and has a substantial nexus to the nature of the lawsuit, the objectives of the statutes, and the interests of the silent class members. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819-822 (9th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038-41 (9th Cir. 2011).

### 8. Attorney's Fees and Costs

Class counsel asks for $1,831,250 (or 25% of the fund) in attorney's fees and $66,997.05 in costs.[54]

---

[50] *Id.* at 19.

[51] *Id.*

[52] *Id.* at 20–22.

[53] Settlement Agreement — ECF No. 114-2, ¶ 3.6.

[54] Motion for Fees and Costs — ECF No. 114 at 9–10, 11.

Rule 23(h) of the Federal Rules of Civil Procedure provides: "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fee provisions included in proposed class-action settlements must be reasonable. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The court is not bound by the parties' settlement agreement as to the amount of attorney's fees. *See id.* at 942–43. The Ninth Circuit has instructed district courts to review class fee awards with special rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (quotation omitted).

When counsel recovers a common fund that confers a "substantial benefit" on a class of beneficiaries, counsel is "entitled to recover their attorney's fees from the fund." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). California fee-shifting statutes also authorize the award of fees. When a fee-shifting statute applies, courts may award fees on the lodestar method. *See California Practice Guide: Federal Civil Procedure Before Trial* § 10:870 (Rutter Group 2015) (collecting cases); *see PLCM Grp. v. Drexler*, 997 P.2d 511, 518 (Cal. 2000) (fee-setting inquiry under California law ordinarily begins with the lodestar); *Serrano v. Priest*, 569 P.2d 1303, 1316 n.23 (Cal. 1977). In common-fund cases, courts may calculate a fee award under either the "lodestar" or "percentage of the fund" method. *Id.*; *Hanlon*, 150 F.3d at 1029.

Where the settlement involves a common fund, courts typically award attorney's fees based on a percentage of the total settlement. The Ninth Circuit has established a "benchmark" that fees should equal 25% of the settlement, although courts diverge from the benchmark based on a variety of factors, including "the results obtained, risk undertaken by counsel, complexity of the issues, length of the professional relationship, the market rate, and awards in similar cases." *Morales v. Stevco, Inc.*, 2013 WL 1222058, *2 (E.D. Cal. Mar. 25, 2013); *see also Morris v.*

*Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee award); *Pacific Enterprises*, 47 F.3d at 379 (same); *State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

When determining the value of a settlement, courts consider the monetary and non-monetary benefits that the settlement confers. *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 972–74 (9th Cir. 2003); *Pokorny v. Quixtar, Inc.*, 2013 WL 3790896, *1 (N.D. Cal. July 18, 2013) ("The court may properly consider the value of injunctive relief obtained as a result of settlement in determining the appropriate fee."); *In re Netflix Privacy Litig.*, 2013 WL 1120801, *7 (N.D. Cal. Mar. 18, 2013) (settlement value "includes the size of the cash distribution, the *cy pres* method of distribution, and the injunctive relief").

Finally, Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available to class members rather than the actual amount that is ultimately claimed. *Young v. Polo Retail, LLC*, 2007 U.S. Dist. LEXIS 27269, *23 (N.D. Cal. Mar. 28, 2007) (citing *Williams v. MGM-Pathe Commc'ns Co.,* 129 F.3d 1026 (9th Cir. 1997) ("district court abused its discretion in basing attorney fee award on actual distribution to class" instead of amount being made available) (quoted language from *Young*)).

If the court applies the percentage method, it then typically roughly calculates the lodestar as a "cross-check to assess the reasonableness of the percentage award." *See*, *e.g.*, *Weeks v. Kellogg Co.*, 2013 WL 6531177, *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25, 48–49 (1977); *Fed-Mart Corp. v. Pell Enters.*, 111 Cal. App. 3d 215, 226–27 (1980); *Melnyk v. Robledo*, 64 Cal. App. 3d 618, 624 (1976); *Clejan v. Reisman*, 5 Cal. App. 3d 224, 241 (1970). "The lodestar . . . is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26 (2000). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id*.

Class counsel also are entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters.); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

Based on the declarations submitted by the plaintiff's counsel, the court finds that the lodestar is approximately $1,776,725 through August 17, 2016.[55] This does not account for time preparing the motion for final approval.[56] The billing rates are within normal and customary ranges for timekeepers with similar qualifications and experience in the San Francisco market. The rates counsel used are appropriate given the deferred and contingent nature of counsel's compensation. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2nd Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment . . . .") (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)); *In re Washington Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court has discretion to compensate delay in payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed during the course of litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement."). Counsel also submitted a sufficient breakdown of the attorneys' billing efforts for the court to reach its conclusion about the lodestar.

The court concludes that a fee award at the 25% benchmark under the "percentage of the fund" approach is justified. *See Hanlon*, 150 F.3d at 1029. It is appropriate based on counsel's efforts and the substantial benefits to the class. It is similar to awards in other cases. It is supported by the lodestar cross-check, including a modest multiplier to reflect the results obtained, the efficiency of the litigation, the quality of the representation, and the contingent risk.

---

[55] Grover Decl. — ECF No. 114-1, ¶¶ 46–61; Bernstein Decl. — ECF No. 114-4, ¶¶ 3, 14.

[56] Grover Decl. — ECF No. 114-1, ¶¶ 48, 61; Bernstein Decl. — ECF No. 114-4, ¶ 3.

The court approves $66,997.05 as reimbursement for litigation expenses and $323,580.64 as the payment for the claims administration.

### 9. Service Award

District courts must evaluate proposed incentive awards individually, using relevant factors that include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59 (citation omitted). The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has] cautioned that awarding them should not become routine practice." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975–78). The Ninth Circuit also has emphasized that district courts "must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164.

The plaintiff described sufficiently the efforts of the named plaintiff for the more than four years of litigation, including consulting with counsel, discovery (including her two-day deposition), and otherwise participating in the litigation.[57] The court approves the $15,000 award.

## CONCLUSION

The court certifies the following class for settlement purposes only:

> All natural persons who were California residents and who, while physically located in California: placed a call to one of Defendants' toll free telephone numbers at any time during the period from May 1, 2011 through March 23, 2012,

---

[57] Roberts Declaration — ECF No. 114-5.

inclusive; were routed to an Aegis-operated call center; spoke with a representative; and did not receive notice that their call was being recorded.

Excluded from the Settlement Class are (1) all calls to Howard Johnson toll-free numbers during the class period (May 1, 2011 through March 23, 2012) because these calls are covered by the settlement in *Stone v. Howard Johnson Int'l, Inc.*, Case No. 12-cv-01684 PSG (MANx) (C.D. Cal.), and (2) persons who validly opt out of the settlement.

The court approves the class-action settlement for a total settlement amount of $7,325,000, which is allocated as follows: (1) $5,088,172.31 to the class members; (2) $1,831,250 for attorney's fees; (4) $66,997.05 for reimbursement of litigation expenses; (5) $323,580.64 to Rust Consulting for administration fees; and (6) $15,000 to Ms. Roberts as a service award for serving as the class representative. Within the deadline set in the settlement agreement, the defendants must deposit $7,325,000 with the claims administrator to fund all payments required by the settlement agreement and by this order. The court approves the request to accept late but otherwise valid claims that are postmarked on or before the date of this final approval order. The court approves the disbursement of unused funds of the net settlement fund to the *cy pres* beneficiary Privacy Rights Clearinghouse.

Pursuant to Federal Rule of Civil Procedure 23(c)(3), all class members who satisfy the class definition except for those class members who timely opted out are class members bound by this judgment and by the terms of the settlement agreement set forth at ECF No. 114-2.

Based on this final approval of the settlement, each settlement class member has released the defendants from the released claims as set forth in paragraphs 11.1 and 11.2 of the settlement agreement.[58] Except for proceedings to enforce the settlement agreement, they are enjoined from pursuing the released claims as set forth in paragraph 11.3 of the settlement agreement.[59]

---

[58] Settlement Agreement — ECF No. 114-2, ¶¶ 11.1−11.2.

[59] *Id.* ¶ 11-3.

Pursuant to paragraph 12.1 of the settlement agreement, the court retains jurisdiction over the parties and all Settlement Class Members to enforce the terms of the settlement agreement and this final approval order and judgment for a period of one year from the date of this order.[60]

The court dismisses the case with prejudice, and the defendants are hereby released from all further liability for the released claims.

This order is not an admission of liability by the defendants of any liability or wrongdoing in this or any other proceeding.[61]

The court finds that no reason exists for delay in ordering final judgment pursuant to Federal Rule of Civil Procedure 54(b) and thus directs the entry of judgment forthwith.

This disposes of ECF Nos. 114 and 116.

**IT IS SO ORDERED.**

Dated: October 27, 2016

_____
LAUREL BEELER
United States Magistrate Judge

---

[60] *Id.* ¶ 12-1 & Proposed Order — ECF No. 116-3 at 5, ¶ 9.
[61] Settlement Agreement — ECF No. 114-2, ¶¶ 13.1–13.2.